1  Lars K. Evensen, Esq.
   Nevada Bar No. 8061
2  Joseph G. Went, Esq.
   Nevada Bar No. 9220
3  HOLLAND & HART LLP
   9555 Hillwood Drive, 2nd Floor
4  Las Vegas, NV  89134
   Phone: (702) 669-4631
5  Fax: (702) 669-4650
   LKEvensen@hollandhart.com
6
7  *Attorneys for 13th Street Property, LLC and*
   *13th Street Properties North, LLC*

8

9              THE UNITED STATES BANKRUPTCY COURT

10                    DISTRICT OF NEVADA

11 In re:                              Case No.:  BK-S-16-15388-mkn
                                       Chapter:    11
12
13 SUPERIOR LINEN, LLC,                **LIMITED OPPOSITION TO MOTION
                                       TO REJECT UNEXPIRED LEASE RE:**
14              Debtor.                **13TH STREET PROPERTY SUBLEASE**

15                                     **Hearing Date:  February 1, 2017
                                       Hearing Time: 9:30 a.m.**
16

17

18         13th Street Property, LLC, a Nevada limited liability company and 13th Street

19 Properties North, a Nevada limited liability company (collectively "13th Street"), by and

20 through their counsel of the law firm of Holland & Hart LLP, hereby submits this limited

21 opposition to Motion to Reject Unexpired Lease RE: 13th Street Property Sublease (the

22 "Opposition").

23         13th Street's Opposition is based upon the following Memorandum of Points and

24 Authorities, the Exhibits attached hereto and incorporated herein, the declaration of Perry "Bob"

25 Shirley (the "Shirley Dec.") filed contemporaneously with this Opposition, the pleadings and

26 papers on file with this Court, and any argument by counsel this Court may entertain.

27 / / /

28 / / /

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV  89134

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. SUMMARY

13th Street ask this Court, at a minimum, to continue Debtor's motion until such time as the Debtor seeks to confirm a plan, wherein feasibility is a central issue. Alternatively, the Court should deny the Debtor's motion at this time, without prejudice, to allow the Debtor to stabilize its financial condition, and not incur the additional monetary burden it would create by termination of the sublease. This result is justified, as there are material issues regarding the Debtor's business judgment in seeking to terminate the sublease.

Debtor suggest the termination is based on business judgment. Yet, this position is conclusory and unsupported. The Debtor fails explain or provide support as to how the termination of the sublease is its best business judgment, given that terminating the sublease: (1) adds an additional net monthly burden to the Debtor, (2) results in the Debtor incurring the costs and time to move the equipment from the Property to its Mitchell location; (3) results in the Debtor mothballing the 13th Street, leaving it subject to looting and vandalism, which would be the Debtor's burden to bear, and (4) terminates a lease with a putative potential competitor who pays Debtor's monthly rent; whose primary business is purportedly dry cleaning, is not yet operational, and will operate a facility that is 1/10th the size. These issue are especially concerning given the current financial free fall the Debtor remains in post-petition, as seen in its November 2016 Monthly Operating Report.

13th Street is owned by Bob and Susan Shirley who retired long ago. *See* Shirley Dec. The rents from the 13th Street Property are their primary source of income. *Id*. Based on history, a gap in payment of rents and occupancy of the Property is financially disastrous to the Shirley's. *Id*. 13th Street seeks a continuum of occupancy at the 13th Street facility through plan confirmation, which would allow 13th Street to mitigate some potential damages.

To be clear, 13th Street takes no firm position by and between the Debtor and its Subtenant. 13th Street's interest is in continuing to receive rents. Certainly, as a matter of law, the Debtor could, through plan confirmation, continue to lease the Property. However, if the Debtor subsequently rejects 13th Street's Lease, at plan confirmation, the extended vacancy

**HOLLAND & HART LLP**
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134

created by the rejection of the sublease at issue, severely restricts 13th Street's ability to mitigate its damages by finding a new tenant.

## II.  ADDITIONAL FACTS

13th Street owns property located at 125 S. 13th Street, Las Vegas, Nevada (the "Property").

There is no dispute regarding the 2010 Lease between Debtor and 13th Street, which is attached to the Declaration of Robert Smith Doc # 165, Exhibit 1 (the "Lease").  Pursuant to the Lease, the Lease expires in February 2020; approximately three years. *Id*.  The current base rental rate is $8,400 per month. *Id*.  Under the Lease, the Debtor is required to maintain the building and common area, maintain insurance, and pay utilities associate with the property. *Id*. Simple math reflects at three years remaining on the Lease, the face value of the lease is no less than $302,400.

In July 2011, the Debtor vacated the 13th Street property. *Shirley Dec*.  During this time, vandals stripped the building coolers, piping, electrical wiring, and caused other damages. *Id*. 13th Street believes if the Property is vacated, the same will occur again. *Id*.

On or about January 8, 2013, Superior and 13th Street entered into the First Amendment to 13th Street Laundry Triple Net (NNN) Lease Agreement ("1st Amend").  Attached hereto as **Exhibit A** is a true and correct copy of the 1st Amend.  This amendment to the Lease allowed flexibility for dry cleaning to be performed at the Property.

On July 14, 2014, Debtor sought and obtained from 13th Street a letter agreement ("Letter Agreement").  Attached hereto as **Exhibit B** is a true and correct copy of Debtor's Letter Agreement.  The Letter Agreement provided consent by 13th Street to Debtor to sublease the property to New Image Dry Cleaning, LLC, and to allow the subtenant to use the Property as a dry cleaner.

Through these transaction, upon information and belief, the subtenant intended to use the Property as a dry cleaner. *Shirley Dec.*

Upon information and belief, until very recently, the subtenant did not receive County or City approval to commence commercial dry cleaning. *Shirley Dec*

**HOLLAND & HART** LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134

3

In December 2015, 13th Street experienced a fire.  *Shirley Dec.*

Upon information and belief, 13th Street has or is nearly completely repaired from the fire.  *Shirley Dec.*

On September 30, 2016, the Debtor file its petition for bankruptcy protection.  *See* Doc #1.  Therefore, the Debtor's period of exclusivity - 120-days – runs on January 28, 2017.

On January 18, 2017, the Debtor filed its November 2016 Monthly Operating Report (" "November MOR").  *See* Doc #198, to assist the Court, a copy of the November MOR, pages 1 – 10 which constitutes Summary of information is attached hereto as **Exhibit C;** the remaining 64 pages of supporting documents were excluded for brevity but will be supplied on request. The Debtor has only $13,648 of cash on hand and account receivables of $1,301,236.  *Id.*, page 1.  In contrast, the November MOR shows Debtor having a <u>negative</u> profit of ($1,392,334) and post-petition <u>liabilities</u> in excess of $3,867,685.  *Id.*, page 1 (emphasis added).  Moreover, the cumulative net profits, for the case to date, is a loss of ($2,316,543).  *Id.*, page 3.

In the face of the Debtor's final free fall, post-petition, the Debtor does enjoy rental income associated with the Property of approximately $9,784 per month based on its sublease. *See November MOR*, page 9.

As of the filing, Superior has not paid 13th Street the January rents.  *Shirley Dec.*

**III. ARGUMENT**

The Debtor, with Court approval, may assume or reject any executory contract or unexpired lease.  *See* 11 U.S.C. §365. The statute does not provide a standard to be applied in determining the propriety of the trustee's decision to assume or reject. *Collier on Bankruptcy*, 16th Edition, P 365.03[2].  Yet, the decision may have significant consequences for the estate. *Id*. Under the Code, most courts have applied a "business judgment" test to trustees' decisions to assume or reject contracts or leases.  *Id*.  The Court of Appeals for the Ninth Circuit has adopted an even broader reading of the business judgment rule.  *Id.*, citing *In re Pomona Valley Medical Group*, 476 F.3d 665 (9th Cir., 2007).  The Court held: In reviewing a rejection motion, the bankruptcy court should presume that the debtor in possession "acted prudently, on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV  89134

4

**HOLLAND & HART** LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134

bankruptcy estate" and should approve rejection **unless** the "*conclusion that rejection would be advantageous is so manifestly unreasonable that it could not be based on sound business judgment, but only on bad faith, or whim or caprice*." *Id*. (emphasis added).

Granted, the adverse effects on the other lease party (i.e. 13th Street) is not relevant unless the effect is so disproportionate to the estate's prospective advantage that it shows rejection could not be a sound exercise of business judgment. *See Collier on Bankruptcy*, 16th Edition, P 365.03[2].

Furthermore, *if the direct gain in value to the reorganized debtor does not make up in creditor recoveries* for the dilution in creditor recoveries resulting from the rejection damage claim, then absent some other consideration favoring rejection to facilitate the reorganization or to enhance value indirectly, the court may consider withholding approval of the rejection as manifestly unreasonable. *Id*. (emphasis added).

Debtor's November MOR, post-petition, shows the Debtor is in a financial free fall. The overriding business judgment issue before this Court, regarding the subject sublease, should be, does the requested rejection bring a financial benefit to the Debtor. As a preliminary point, rejecting the sublease, creates a claim[1] by the subleasee that dilutes the creditor pool. The Debtor offers nothing to support the rejection, creates a net greater value for creditors that are being diluted as a result of the requested rejection. Therefore, the Court should withhold approval of the Motion.

Debtor currently enjoys the subtenants <u>monthly</u> payment of approximately $9,784. These monies offset the Debtor's obligation 13th Street under the Lease. The Debtor is very clear, it does not intend to reject – at this time – the lease with 13th Street. Therefore, the Debtor would be subject to continuing to pay the lease payment to 13th Street; a net increase to Debtor's operational cost.

The Debtor indicates it is exercising its business judgment to (1) frustrate a potential upstart competing business, and (2) indicates it needs equipment for operations. *See* Doc #164,

---

[1] The Debtor seeks nunc pro tunc relief as of December 2017. It is unclear if the intent is to provide other creditors reduced dilution by employing 11 U.S.C. §502(b)(6) to the subleasee.

pg. 4-5, ¶14.  Yet, the Debtor provides no support or quantification as to how these issues create a net financial benefit to the Debtor in the face of a monthly increase of $9,784 to the Debtor, when the Debtor appears to be in financial free fall.

First, with regard to the upstart of a competing business, the Debtor fails to include the fact that the potential competitor has not operated in the Property for nearly a year, due to the fire, and the Lease related documents Superior entered regarding this potential competitor clearly suggest an intent to perform dry cleaning services at the facility versus laundry. Furthermore, the Debtor's facility at Mitchell is over 100,000 square feet in size, whereas Property is approximately 1/10th this size.  There is no support to suggest this potential upstart of a competing business, under business judgment, justifies an <u>immediate</u> net monthly increase of $9,784 to the Debtor.

Consider, as an option, that at the time of confirmation the Debtor could terminate the sublease of the upstart of a competing business, creating the same result, without incurring the monthly increase of $9,784 in the interim.  *Arguably*, the business decision to eliminate a competitor by removing its place of operation is the same if the Debtor terminated now, or at the time of confirmation.  By waiting, Debtor enjoys the benefit of the sublease's continued cash-flow to assist Debtor financially.

Second, with regard to the removal of equipment to the Mitchell property, assuming the Debtor needs the equipment to perform certain new contracts, there is no indication of the net profitability of said new contracts to justify the expense of (1) the <u>immediate</u> monthly increase of $9,784 to the Debtor and (2) the direct and immediate cost of relocating the equipment.

According to the November MOR, the Debtor had a cash balance of less than $14,000. Practically speaking, depending on the equipment the Debtor intends to move, can Debtor actually afford to make the move and make the equipment operational at the Mitchell property? No estimate is provided regarding the cost of the move or the resulting net benefit derived as a result.  The Debtor is clear it does not intend to use the equipment at the 13th Street Property, if the Court grants its termination of the sublease.  Therefore, moving equipment is a real and

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV  89134

immediate cost to the Debtor, that it would have to timely earn back to justify the expense, under reasonable business judgment.

According to the November MOR, Debtor does not have positive cash flow to make its lease payments of $9,784 to 13th Street upon termination of the sublease.[2]  Unfortunately, Debtor's inability to pay the Lease payment to 13th Street may be true whether the sublease is rejected or not.  The rejection of the sublease, at this time, only further compounds the Debtor's losses.

Taken together, if the Court finds the rejection is "…*manifestly unreasonable that it could not be based on sound business judgment, but only on bad faith, or whim or caprice*", it can deny the motion.  As noted above, there are clear financial impacts to the Debtor, if the Court grants the rejection at this time.  The November MOR suggests the Debtor is in a post-petition financial free fall.  Without further information, increasing the Debtor's net burden is unreasonable at this time and is unsound business judgment.

13th Street would suggest, the Debtor's motion, at this time, is a bit rash.  13th Street would further suggest, at a minimum, a decision on Debtor's motion should be <u>continued</u> until such time as the Debtor confirms a plan of reorganization, which includes an element of feasibility.  Alternatively, the Court could deny the Debtor's motion without prejudice, to allow the Debtor time to stabilize its financial free fall, and determine if terminating the sublease is a proper exercise of business judgment based on sound financial and logistical principals.

Finally, the effect on 13th Street – the Shirley's – is not relevant *unless* the effect is so disproportionate to the estate's prospective advantage.  Here the Debtor has not clearly presented the advantage created by terminating the sublease at this time.  Given the Debtor's financial free fall, there is a material question if the Debtor will (or has the ability to) pay the 13th Street's lease payments going forward.  Ultimately, if the Debtor rejects the 13th Street lease, 13th Street is an unsecured creditor with little chance of recovery.  Moreover, if the

---

[2] For example, based on the November MOR, Debtor received $9,784 in rent and had net cash on hand of $13,648.  Without said rent payment, Debtor would have had $3,864 cash on hand ($13,648 - $9,784) and would have been unable to pay the $9,784 in rent to 13th Street.

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV  89134

sublease is terminated – and it is clear the Debtor does not intend to operate at the 13th Street Property – the Property becomes vacant.   Without a continuum of tenancy it creates a substantial burden on13th Street to relet the property, as well as potential for vandalism. Therefore, granting Debtor's motion at this time disproportionately harms 13th Street, when the Debtor has failed to show any clear prospective advantage by terminating the sublease.

**IV. CONCLUSION**

The Debtor seeks to terminate a sublease.   There is no indication, that this relief will result in net positive cash flow to the Debtor.  For this Debtor, this is particularly important, as the Debtor appears to be in financial free fall post-petition.

By terminating the sublease, the Debtor is going to increase its net monthly obligation, because it is no longer receiving offsetting rents from its subtenant.  As part of its reason for terminating the sublease, the Debtor seeks to move equipment, which would result in additional direct and immediate costs to the Debtor.   Given the Debtor's November MOR, it is not clear the Debtor has the ability to pay this immediate and on-going net increase in expenses and the cost to move the equipment.  This raises the question as to the Debtor's business judgment in seeking to terminate the sublease.   Seeking additional post-petition financing to address this financial burden is merely "robbing Peter to pay Paul" and is not a cure for unsound business judgment.

The Debtor also seeks to terminate the sublease to prevent an upstart competitor. Whether the Debtor terminates now or the future, it appears to produce the same result – the upstart competitor losses its facility and can no longer compete.  Also, given the nature and size of the Debtor's business versus the upstart competitor, there is a question if the threat is real. This raises the question as to the Debtor's business judgment of seeking the relief now in light of the financial impact on the Debtor, as well as the other creditors.

In short, this Court, at a minimum should continue Debtor's motion until such time as the Debtor seeks to confirm a plan, wherein feasibility is a central issue.  Alternatively, the Court should deny Debtor's motion at this time, without prejudice, to allow the Debtor to stabilize its financial condition, without incurring the additional burden.

**HOLLAND & HART LLP**
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134

1    Finally, granting this motion will result in an increase net burden on the Debtor and a

2    vacancy at the 13th Street facility.  The increase burden puts 13th Street in harm's way, as there

3    is a clear question as to whether the Debtor can continue to pay the rent and perform its other

4    obligations.  The Debtor offers nothing to quantify what, if any, net advantage the termination

5    would create to its benefit and the befit of creditors.  By creating a vacancy at the property, 13th

6    Street it creates a disproportionate disadvantage for 13th Street to preserve and relet the

7    Property; thus a continuum of operations at the property is preferred.

8    DATED this 18th day of January, 2017

9                                HOLLAND & HART LLP

10                                */s/ Lars K. Evensen, Esq.*

11                                Lars K. Evensen, Esq.
                                  Nevada Bar No. 8061
12                                Joseph G. Went, Esq.
                                  Nevada Bar No. 9220
13                                9555 Hillwood Drive, 2nd Floor
                                  Las Vegas, NV  89134
14

15                                *Attorneys for 13th Street Property, LLC and 13th*
                                  *Street Properties North, LLC*

16

17

18

19

20

21

22

23

24

25

26

27

28

**HOLLAND & HART LLP**
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV  89134

9

# CERTIFICATE OF SERVICE

1.     On the 18th day of January, 2017 I served the following document(s) *(specify)*:

**LIMITED OPPOSITION TO MOTION TO REJECT UNEXPIRED LEASE RE:**

**13TH STREET PROPERTY SUBLEASE**

2.     I served the above-named document(s) by the following means to the persons as

listed below*: (Check all that apply)*

☒     **a.     ECF System** *(You must attach the "Notice of Electronic Filing", or list all persons and addresses and attach additional paper if necessary)*

| | | |
|---|---|---|
| **BALTIC LINEN CO INC**<br>*Added: 11/08/2016*<br>*(Creditor)* | represented<br>by | **BRANDY L BROWN**<br>KUNG & ASSOCIATES<br>214 S. MARYLAND PKWY<br>LAS VEGAS, NV 89101<br>(702) 382 0883<br>(702) 382-2720 (fax)<br>bbrown@ajkunglaw.com<br>*Assigned: 11/08/16* |
| | | **MICHAEL S KOGAN**<br>KOGAN LAW FIRM APC<br>1849 SAWTELLE BLVD, STE 700<br>LOS ANGELES, CA 90025<br>(310) 954-1690<br>(310) 696 4646 (fax)<br>mkogan@koganlawfirm.com<br>*Assigned: 11/10/16*<br>*LEAD ATTORNEY* |
| | | **A.J. KUNG**<br>214 SOUTH MARYLAND PKWY,<br>STE A<br>LAS VEGAS, NV 89101<br>(702) 382-0883<br>(702) 382-2720 (fax)<br>ajkung@ajkunglaw.com<br>*Assigned: 11/08/16*<br>*LEAD ATTORNEY* |
| | | **KUNG & BROWN, PLC**<br>214 S. MARYLAND PKWY<br>LAS VEGAS, NV 89101<br>*Assigned: 11/10/16*<br>*LEAD ATTORNEY* |
| **CITY OF NORTH LAS VEGAS**<br>2250 LAS VEGAS BLVD N<br>N LAS VEGAS, NV 89030<br>*Added: 10/27/2016* | represented<br>by | **BLAKELEY E. GRIFFITH**<br>SNELL & WILMER L.L.P.<br>3883 HOWARD HUGHES PKWY,<br>STE 1100 |

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134

10

*(Creditor)*

LAS VEGAS, NV 89169
(702) 784-5200
(702) 784-5252 (fax)
bgriffith@swlaw.com
*Assigned: 01/06/17*

**ROBERT R. KINAS**
SNELL & WILMER LLP
3883 HOWARD HUGHES
PARKWAY #1100
LAS VEGAS, NV 89169
(702)784-5200
(702)784-5252 (fax)
rkinas@swlaw.com
*Assigned: 10/27/16*

**DTG LAS VEGAS, LLC**
*Added: 01/17/2017*
*(Creditor)*

represented
by

**MICHAEL A. SHAKOURI**
1875 CENTURY PARK EAST,
SUITE 1860
LOS ANGELES, CA 90067
mshakouri@goodkinlynch.com
*Assigned: 01/17/17*
*LEAD ATTORNEY*

**Icon Pac Nevada Owner Pool 3, Nevada, LLC**
Sylveser & Polednak, Ltd.
Allyson Noto, Esq.
1731 Village Center Circle
Las Vegas, NV 89134
702-952-5200
allyson@sylveserpolednak.com
*Added: 10/03/2016*
*(Creditor)*

represented
by

**ALLYSON R. NOTO**
SYLVESTER & POLEDNAK, LTD.
1731 VILLAGE CENTER CIRCLE
LAS VEGAS, NV 89134
allyson@sylvesterpolednak.com
*Assigned: 10/03/16*

**JEFFREY R. SYLVESTER**
1731 VILLAGE CENTER CIRCLE
LAS VEGAS, NV 89134
(702) 952-5200
(702) 952-5205 (fax)
jeff@sylvesterpolednak.com
*Assigned: 01/06/17*

**LARSON & ZIRZOW, LLC**
850 E. BONNEVILLE AVE.
LAS VEGAS, NV 89101
*Added: 12/14/2016*
*(Other Prof.)*

**MIDWEST COMMUNITY DEVELOPMENT
FUND VII, LLC**
c/o McDonald Carano Wilson LLP
2300 W. Sahara Avenue
Suite 1200
Las Vegas, NV 89102
702-873-4100
702-873-9966 (fax)
rworks@mcwlaw.com
*Added: 10/07/2016*

represented
by

**DAVID CURRY, JR.**
113 VINE STREET, SUITE 201
HOUSTON, TX 77002
*Assigned: 10/13/16*
*LEAD ATTORNEY*

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134

*(Creditor)*

**MATTHEW S. OKIN**
1113 VINE STREET, SUITE 201
HOUSTON, TX 77002
*Assigned: 10/13/16*
*LEAD ATTORNEY*

**AMANDA M. PERACH**
MCDONALD CARANO WILSON
2300 WEST SAHARA AVENUE
SUITE 1200
LAS VEGAS, NV 89102
702-873-4100
702-873-9966 (fax)
aperach@mcdonaldcarano.com
*Assigned: 01/06/17*

**RYAN J. WORKS**
MCDONALD CARANO WILSON
LLP
2300 W. SAHARA AVE., SUITE
1200
LAS VEGAS, NV 89102
(702) 873-4100
(702) 873-9966 (fax)
rworks@mcdonaldcarano.com
*Assigned: 10/07/16*

**NEVADA PROPERTY 1 LLC DBA THE**
**COSMOPOLITAN OF LAS VEGAS**
WILLIAM M. NOALL, ESQ.
GARMAN TURNER GORDON LLP
650 White Dr. Suite 100                    represented
LAS VEGAS, NV 89119                         by
(725) 777-3000
(725) 777-3112 (fax)
*Added: 10/05/2016*
*(Creditor)*

**WILLIAM M. NOALL**
GARMAN TURNER GORDON
650 WHITE DR, STE 100
LAS VEGAS, NV 89119
725-777-3000
725-777-3112 (fax)
bknotices@gtg.legal
*Assigned: 10/05/16*

**MARK M. WEISENMILLER**
GARMAN TURNER GORDON LLP
650 WHITE DRIVE, SUITE 100
LAS VEGAS, NV 89119
(725) 777-3000
725-777-3112 (fax)
mweisenmiller@gtg.legal
*Assigned: 10/06/16*
*LEAD ATTORNEY*

**OFFICIAL UNSECURED CREDITORS**
**COMMITTEE**
c/o Morris Polich & Purdy, LLP
3800 Howard Hughes Parkway, Suite 500      represented
Las Vegas, NV 89169                         by
*Added: 10/24/2016*
*(Creditor Committee)*

**CANDACE C CARLYON**
MORRIS POLICH & PURDY, LLP
3800 HOWARD HUGHES PKWY,
STE 500
LAS VEGAS, NV 89169
(702) 862-8300
(702) 862-8400 (fax)
ccarlyon@mpplaw.com

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134

12

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134

*Assigned: 10/24/16*

**MATTHEW R. CARLYON**
MORRIS POLICH & PURDY, LLP
3800 HOWARD HUGHES PKWY,
STE 500
LAS VEGAS, NV 89169
702-862-8300
mcarlyon@mpplaw.com
*Assigned: 10/26/16*

**RD VII INVESTMENTS, LLC**
SCHWARTZ FLANSBURG PLLC
6623 LAS VEGAS BLVD, S., STE 300
LAS VEGAS
702-385-5544
sam@nvfirm.com
*Added: 10/01/2016*
*(Creditor)*

represented
by

**SAMUEL A. SCHWARTZ**
6623 LAS VEGAS BLVD. SO., STE
300
LAS VEGAS, NV 89119
(702) 385-5544
(702) 385-2741 (fax)
sam@nvfirm.com
*Assigned: 10/01/16*

**SUPERIOR LINEN, LLC**
4501 MITCHELL ST.
NORTH LAS VEGAS, NV 89081
Tax ID / EIN: 27-1719434
*Added: 09/30/2016*
*(Debtor)*

represented
by

**MATTHEW C. ZIRZOW**
LARSON & ZIRZOW
850 E. BONNEVILLE AVE.
LAS VEGAS, NV 89101
702-382-1170
702-382-1169 (fax)
mzirzow@lzlawnv.com
*Assigned: 09/30/16*

**U.S. TRUSTEE - LV - 11**
300 LAS VEGAS BOULEVARD S.
SUITE 4300
LAS VEGAS, NV 89101
USTPRegion17.lv.ecf@usdoj.gov
*Added: 09/30/2016*
*(U.S. Trustee)*

represented
by

**J MICHAL BLOOM**
300 LAS VEGAS BLVD S #4300
LAS VEGAS, NV 89101
(702) 388-6600
j.michal.bloom@usdoj.gov
*Assigned: 10/17/16*

☐    **b.    United States mail, postage fully prepaid** *(List persons and addresses. Attach additional paper if necessary)*

☐    **c.    Personal Service** *(List persons and addresses. Attach additional paper if necessary)*

I personally delivered the document(s) to the persons at these addresses:

☐    For a party represented by an attorney, delivery was made by handing the document(s) to the attorney or by leaving the documents(s) at the attorney's office with a clerk or other person in charge, or if no one is in charge by leaving the documents(s) in a conspicuous place in the office.

☐    For a party, delivery was made by handing the document(s) to the party or by leaving the document(s) at the person's dwelling house or usual place of abode with someone of suitable age and discretion residing there.

13

☐ **d.** **By direct email (as opposed to through the ECF System)** *(List persons and email addresses. Attach additional paper if necessary)*

Based upon the written agreement of the parties to accept service by email or a court order, I caused the document(s) to be sent to the persons at the em ail add resses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☐ **e.** **By fax transmission** *(List persons and fax numbers. Attach additional paper if necessary)*

Based upon the written agreement of the p arties to accept service by fax transmission or a court order, I faxed the document(s) to the persons at the fax numbers listed below. No error was reported by the fax machine that I used . A copy of the record of the fax transmission is attached.

☐ **f.** **By messenger** *(List persons and addresses. Attach additional paper if necessary)*

☐ I served the document(s) by placing them in an envelope or package addressed to the persons at the addresses listed below and providing them to a messenger for service.

*(A declaration by the messenger must be attached to this Certificate of Service).*

**I declare under penalty of perjury that the foregoing is true and correct.**

**DATED this 18th day of January, 2017**

*/s/ Alexis Stajkowski*
_____
SIGNATURE OF DECLARANT

# Exhibit A

# Exhibit A

## FIRST AMENDMENT TO 13TH STREET LAUNDRY TRIPLE NET (NNN) LEASE AGREEMENT

This First Amendment to 13th Street Laundry Triple Net (NNN) Lease Agreement ("Amendment"), dated as this __ day of December, 2012, by and between 13th Street Property LLC and 13th Street Properties North LLC (collectively "Landlord") and Superior Linen LLC ("Tenant" and together with Landlord, individually, a "Party" and collectively, the "Parties").

### WITNESSETH

WHEREAS, Landlord and Tenant are parties to that certain 13th Street Laundry Triple Net (NNN) Tenant Lease Agreement ("Lease");

WHEREAS, Tenant desires to perform dry cleaning services as an additional permitted use pursuant to the terms and provisions of the Lease; and

WHEREAS, Landlord desires to grant the additional permitted use pursuant to the terms and conditions hereof; and

WHEREAS, the Parties desire to amend the Lease Agreement in other respects as set forth herein.

NOW THEREFORE, based upon the foregoing, and in consideration of the mutual agreements, covenants, and conditions as contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto agree that the original Lease Agreement shall be amended as follows:

### AMENDMENT

1.    **Definitions.** Capitalized terms in this Amendment shall have the meaning prescribed to such terms in the Lease, unless otherwise defined herein.

2.    **Amendments to the Lease.** The Lease is hereby amended as follows

(a)    Article 1.7 of the Lease is hereby deleted in its entirety and replaced with the following:

ARTICLE 1.7 **TENANT'S PERMITTED USES:** Commercial Laundry and Dry Cleaning.

(b)    Article 6.1 of the Lease is hereby deleted in its entirety and replaced with the following:

ARTICLE 6.1 **"Tenant's Permitted Use"** Tenant shall be entitled to use, occupy and sublet the Property for operating a commercial laundry and dry cleaning facility in accordance

with applicable law. The Property is leased to Tenant solely for the Tenant's Permitted Use and for no other use whatsoever. Tenant shall not use or suffer to be used the Property, or any portion thereof, for any other purpose or purposes whatsoever, without Landlord's written consent therefore first had and obtained, which consent may be withheld in Landlord's sole and absolute discretion.

6.1.1 <u>Dry Cleaning Processing</u>. Tenant further agrees that notwithstanding Tenant's obligations as specifically set forth in Article 6.2 hereof, Tenant covenants and agrees that it shall not use the chemical substance tetrachloroethylene, also known as perchloroethylene ("PERC"), in processing the dry cleaning, but shall utilize hydro-carbon based processing for all dry cleaning on the Property.

6.1.2 <u>Change in Solvents</u>. Any and all dry cleaning solvents used by Tenant at the Property shall be approved in advance by Landlord in writing, which approval shall be granted or denied in Landlord's reasonable discretion. If Tenant intends to change any dry cleaning solvent it uses at the Property, Tenant must first notify Landlord in writing and Landlord must give Tenant approval in writing prior to any such change, which approval shall be granted or denied in Landlord's reasonable discretion.

6.1.3 <u>Spill Containment</u>. Any and all dry cleaning machinery and systems and dry cleaning solvent at the Property shall be placed, at all times, on a spill containment pan or pans designed and constructed to eliminate leaks and spills of dry cleaning solvents and other Hazardous Materials or shall be designed by the manufacturer of such machinery and systems to include such spill containment pan or pans as part of the machinery or system.

3.    <u>Full Force and Effect</u>. Except as specifically set forth herein, the terms and conditions of the Lease shall remain in full force and effect, and are hereby ratified and affirmed.

4.    <u>Ratification</u>. Landlord and Tenant each hereby represent and warrant to the other that (i) the execution and delivery of this Amendment has been fully authorized by all necessary corporate or limited liability company action and (ii) the person executing this Amendment has the requisite authority to do so and has the authority and power to bind Landlord or, as the case may be, Tenant on whose behalf such party has signed.

5.    <u>Conflict</u>. In the event of any conflict between the terms of this

2

Amendment and the terms of the Lease, it is expressly agreed that the terms of this Amendment shall control.

6.    <u>Counterparts</u>. This Amendment may be executed in any number of counterparts, each of which shall be deemed an original, but all of which when taken together shall constitute one and the same instrument. A facsimile or electronic form of an original signature shall be deemed an original signature.

7.    <u>Governing Law</u>. This Amendment shall be governed by and construed under the law of the State of Nevada.

[Remainder of Page Intentionally Left Blank; Signatures to Follow]

**IN WITNESS WHEREOF**, Landlord and Tenant have caused this Amendment to be executed as of the day and year first above written.

AGREED:

LANDLORD

13TH STREET PROPERTY LLC and 13TH STREET PROPERTIES NORTH LLC, Nevada limited liability companies

By: _Perry B Shirley Jr_

Perry B. Shirley, Jr., their Managers

Executed at _January 6ᵗʰ 2013_   On _____

Address
_3634 Darren Thornton Way   LV, NV 8912_

TENANT

SUPERIOR LINEN LLC, A Nevada Limited Liability Company

By: _____

Name: _Duke Der W/Khaz_

Its: _Pek Cusert_

Executed at _____   On _____

Address _____

_January 8ᵗʰ_

5915698_3.DOCX

# Exhibit B

# Exhibit B



# SUPERIOR

July 1, 2014

Re: Approval to sublet 125 S. 13th Street property to New Image Dry Cleaning, LLC.

This approval should be used as consent by Landlord to allow Tenant (Superior Linen, LLC) to sublet part or all of the premises, located at 125 S. 13th Street under lease 13th STREET LAUNDRY TRIPLE NET (NNN) TENANT LEASE AGREEMENT 125 S. 13th Street Las Vegas, Nevada 89101 to New Image Dry Cleaning, LLC.

Landlord further understands and consents to the Subtenants' Permitted Use as a dry cleaner. *Subtenant must secure written approval by Landlord for the use of any Dry Cleaning Solvents.*

Further, this consent does not relieve Tenant of its obligations under 13th STREET LAUNDRY TRIPLE NET (NNN) TENANT LEASE AGREEMENT 125 S. 13th Street Las Vegas, Nevada 89101.

Landlord

Tenant

4501 Mitchell St., North Las Vegas, NV 89081
(702) 643-5690

# Exhibit C

# Exhibit C

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEVADA

| | |
|---|---|
| In re: Superior Linen, LLC | Case No. _____16-15388-mkn_____ |
| | **CHAPTER 11**<br>**MONTHLY OPERATING REPORT**<br>**(GENERAL BUSINESS CASE)** |

### SUMMARY OF FINANCIAL STATUS

MONTH ENDED: ___Nov-16___     PETITION DATE: ___9/30/2016 17:09___

1. Debtor in possession (or trustee) hereby submits this Monthly Operating Report on the Accrual Basis of accounting (or if checked here ___ the Office of the U.S. Trustee or the Court has approved the Cash Basis of Accounting for the Debtor).
   Dollars reported in ___$1___

| | | End of Current Month | End of Prior Month | As of Petition Filing |
|---|---|---|---|---|
| 2. | **Asset and Liability Structure** | | | |
| | a. Current Assets | $4,553,894 | $5,442,305 | $13,901,523 |
| | b. Total Assets | $9,085,326 | $14,114,659 | |
| | c. Current Liabilities | $3,107,685 | $2,561,304 | $6,909,904 |
| | d. Total Liabilities | $24,973,496 | $24,031,829 | $22,894,484 |

| | | Current Month | Prior Month | Cumulative (Case to Date) |
|---|---|---|---|---|
| 3. | **Statement of Cash Receipts & Disbursements for Month** | | | |
| | a. Total Receipts | $1,546,090 | $1,700,290 | $3,246,380 |
| | b. Total Disbursements | $1,570,578 | $1,555,625 | $3,126,202 |
| | c. Excess (Deficiency) of Receipts Over Disbursements (a - b) | ($24,488) | $144,665 | $120,178 |
| | d. Cash Balance Beginning of Month | $38,136 | $38,136 | $38,136 |
| | e. Cash Balance End of Month (c + d) | $13,648 | $182,801 | $158,314 |

| | | Current Month | Prior Month | Cumulative (Case to Date) |
|---|---|---|---|---|
| 4. | **Profit/(Loss) from the Statement of Operations** | ($1,392,334) | ($924,210) | ($1,392,334) |
| 5. | **Account Receivables (Pre and Post Petition)** | $1,301,236 | $1,484,112 | |
| 6. | **Post-Petition Liabilities** | $3,867,685 | $2,561,304 | |
| 7. | **Past Due Post-Petition Account Payables (over 30 days)** | $0 | $0 | |

At the end of this reporting month:

| | | Yes | No |
|---|---|---|---|
| 8. | Have any payments been made on pre-petition debt, other than payments in the normal course to secured creditors or lessors? (if yes, attach listing including date of payment, amount of payment and name of payee) | | X |
| 9. | Have any payments been made to professionals? (if yes, attach listing including date of payment, amount of payment and name of payee) | | X |
| 10. | If the answer is yes to 8 or 9, were all such payments approved by the court? | | N/A |
| 11. | Have any payments been made to officers, insiders, shareholders, relatives? (if yes, attach listing including date of payment, amount and reason for payment, and name of payee) | X | |
| 12. | Is the estate insured for replacement cost of assets and for general liability? | X | |
| 13. | Are a plan and disclosure statement on file? | | X |
| 14. | Was there any post-petition borrowing during this reporting period? | X | |

15. Check if paid: Post-petition taxes ___X___ ;    U.S. Trustee Quarterly Fees ___X___ ; Check if filing is current for: Post-petition tax reporting and tax returns: ___X___ .
    (Attach explanation, if post-petition taxes or U.S. Trustee Quarterly Fees are not paid current or if post-petition tax reporting and tax return filings are not current.)

I declare under penalty of perjury I have reviewed the above summary and attached financial statements, and after making reasonable inquiry believe these documents are correct.

Date: ___11/21/2016 0:00___

_____
Responsible Individual

Revised 1/1/98

| Date | Amount | Name | Reason |
|------|--------|------|--------|
| | | | |
| Summary: Q#11 | | | |
| 11/2/2016 | $ 2,427.00 | BrightLight Holdings, LLC (Rick Keister) | Reimburse Travel expenses for ownership governance |
| 11/2/2016 | $ 1,543.00 | BrightLight Holdings, LLC (Rick Keister) | Reimburse Travel expenses for ownership governance |
| 11/14/2016 | $ 3,950.00 | BrightLight Holdings, LLC (Rick Keister) | Reimburse Travel expenses for ownership governance |
| 11/23/2016 | $ 3,117.00 | BrightLight Holdings, LLC (Rick Keister) | Reimburse Travel expenses for ownership governance |
| | | | |
| 11/10/2016 | $ 4,615.38 | Robert Smith - CFO | Payroll |
| 11/10/2016 | $ 10,076.92 | DW Doc Wiener - President / COO | Payroll |
| 11/23/2016 | $ 4,615.38 | Robert Smith - CFO | Payroll |
| 11/23/2016 | $ 10,958.59 | Chris McLemore - New President / COO | Payroll - This payment was not reviewed in time to be corrected and is in error. Mr. McLemore's salary is $120k per year and was corrected in December. |

## STATEMENT OF OPERATIONS
### (General Business Case)
For the Month Ended _____ 11/30/16 _____

| | Current Month | | | | Cumulative | Next Month |
|---|---|---|---|---|---|---|
| Actual | Forecast | Variance | | | (Case to Date) | Forecast |
| | | | | Revenues: | | |
| $1,134,526 | | $1,134,526 | 1 | Gross Sales | $2,397,382 | |
| $4,810 | | ($4,810) | 2 | less: Sales Returns & Allowances | $8,911 | |
| $1,129,716 | $0 | $1,129,716 | 3 | Net Sales | $2,388,471 | $0 |
| $1,814,501 | | ($1,814,501) | 4 | less: Cost of Goods Sold        (Schedule 'B') | $3,199,226 | |
| ($684,785) | $0 | ($684,785) | 5 | Gross Profit | ($810,755) | $0 |
| | | $0 | 6 | Interest | | |
| | | $0 | 7 | Other Income: | | |
| | | $0 | 8 | recovered after w/o receivable in 2011 | $4,803 | |
| | | $0 | 9 | | | |
| ($684,785) | $0 | ($684,785) | 10 | Total Revenues | ($805,952) | $0 |
| | | | | Expenses: | | |
| $15,308 | | ($15,308) | 11 | Compensation to Owner(s)/Officer(s) | $47,841 | |
| $24,151 | | ($24,151) | 12 | Salaries | $51,699 | |
| $950 | | ($950) | 13 | Commissions | $16,358 | |
| | | $0 | 14 | Contract Labor | | |
| | | | | Rent/Lease: | | |
| | | | 15 | Personal Property | $1,411 | |
| $35,510 | | ($35,510) | 16 | Real Property | $69,964 | |
| $12,253 | | ($12,253) | 17 | Insurance | $24,506 | |
| $25,000 | | ($25,000) | 18 | Management Fees | $50,000 | |
| $335,844 | | ($335,844) | 19 | Depreciation / Amortization | $669,182 | |
| | | | | Taxes: | | |
| $5,048 | | ($5,048) | 20 | Employer Payroll Taxes | $11,293 | |
| | | $0 | 21 | Real Property Taxes | | |
| $4,121 | | ($4,121) | 22 | Other Taxes -PP | $9,027 | |
| $130 | | ($130) | 23 | Other Selling | $5,310 | |
| $23,974 | | ($23,974) | 24 | Other Administrative | $45,546 | |
| $185,729 | | ($185,729) | 25 | Interest | $374,882 | |
| $11,375 | | ($11,375) | 26 | Other Expenses:    Benefits | $19,559 | |
| $0 | | $0 | 27 | Bad Debt | $16,645 | |
| $5,833 | | ($5,833) | 28 | Accrual for Audit | $11,666 | |
| $689 | | ($689) | 29 | R&M of Building | $5,852 | |
| $4,640 | | ($4,640) | 30 | Travel / Meals - Ownership Governance | $11,018 | |
| $16,993 | | ($16,993) | 31 | Legal | $16,993 | |
| | | $0 | 32 | | | |
| | | $0 | 33 | | | |
| | | $0 | 34 | W/O Siena loan deposit - Bank loan fees | $26,515 | |
| $707,548 | $0 | ($707,548) | 35 | Total Expenses | $1,485,266 | $0 |
| ($1,392,334) | $0 | ($1,392,334) | 36 | Subtotal | ($2,291,218) | $0 |
| | | | | Reorganization Items: | | |
| | | $0 | 37 | Professional Fees | ($25,000) | |
| | | $0 | 38 | Provisions for Rejected Executory Contracts | | |
| | | $0 | 39 | Interest Earned on Accumulated Cash from Resulting Chp 11 Case | | |
| | | $0 | 40 | Gain or (Loss) from Sale of Equipment | | |
| | | $0 | 41 | U.S. Trustee Quarterly Fees | ($325) | |
| | | $0 | 42 | | | |
| $0 | $0 | $0 | 43 | Total Reorganization Items | ($25,325) | $0 |
| ($1,392,334) | $0 | ($1,392,334) | 44 | Net Profit (Loss) Before Federal & State Taxes | ($2,316,543) | $0 |
| | | | 45 | Federal & State Income Taxes | | |
| ($1,392,334) | $0 | ($1,392,334) | 46 | Net Profit (Loss) | ($2,316,543) | $0 |

Attach an Explanation of Variance to Statement of Operations (For variances greater than +/- 10% only):

Revised 1/1/98

## Liabilities and Equity
### (General Business Case)

**Liabilities From Schedules**

    **Post-Petition**

        **Current Liabilities**

| | | | |
|---|---|---|---|
| 30 | Salaries and wages | | $193,944 |
| 31 | Payroll taxes | | $90,427 |
| 32 | Real and personal property taxes | | |
| 33 | Income taxes | | |
| 34 | Sales taxes | | $6,978 |
| 35 | Notes payable (short term) | | |
| 36 | Accounts payable (trade) | A | $322,604 |
| 37 | Post Petition Interest | | $327,198 |
| 38 | Personal property lease arrearage | | |
| 39 | Accrued professional fees | | $25,000 |
| 40 | Current portion of long-term post-petition debt (due within 12 months) | | |
| 41 | Other: Accrued Vacation | | $130,255 |
| 42 | City North Las Vegas Permit | | $828,619 |
| 43 | 2016 GAAP accruals | | $1,182,660 |
| 44 | **Total Current Liabilities** | | $3,107,685 |
| 45 | **Long-Term Post-Petition Debt, Net of Current Portion** | | $760,000 |
| 46 | **Total Post-Petition Liabilities** | | $3,867,685 |

    **Pre-Petition Liabilities (allowed amount)**

| | | | |
|---|---|---|---|
| 47 | Secured claims | F | $18,526,961 |
| 48 | Priority unsecured claims | F | $0 |
| 49 | General unsecured claims | F | $2,578,849 |
| 50 | **Total Pre-Petition Liabilities** | | $21,105,811 |
| 51 | **Total Liabilities** | | $24,973,496 |

    **Equity (Deficit)**

| | | | |
|---|---|---|---|
| 52 | Retained Earnings/(Deficit) at time of filing | | ($9,810,798) |
| 53 | Capital Stock | | |
| 54 | Additional paid-in capital | | |
| 55 | Cumulative profit/(loss) since filing of case | | ($2,316,543) |
| 56 | Post-petition contributions/(distributions) or (draws) | | |
| 57 | Warrants un-exercised | | $307,946 |
| 58 | Market value adjustment | | ($4,068,775) |
| 59 | **Total Equity (Deficit)** | | ($15,888,170) |
| 60 | **Total Liabilities and Equity (Deficit)** | | $9,085,326 |
| | | | ($0) |

## BALANCE SHEET
### (General Business Case)
#### For the Month Ended _____11/30/16_____

| | Assets | From Schedules | Market Value |
|---|---|---|---|
| | **Current Assets** | | |
| 1 | Cash and cash equivalents - unrestricted | | $103,217 |
| 2 | Cash and cash equivalents - restricted | | |
| 3 | Accounts receivable (net) | A | $1,301,236 |
| 4 | Inventory | B | $2,976,101 |
| 5 | Prepaid expenses | | $71,547 |
| 6 | Professional retainers | | $0 |
| 7 | Other:  Loss charges / misc. | | $101,792 |
| 8 | | | |
| 9 | **Total Current Assets** | | $4,553,894 |
| | **Property and Equipment (Market Value)** | | |
| 10 | Real property | C | $0 |
| 11 | Machinery and equipment | D | $2,106,700 * |
| 12 | Furniture and fixtures | D | $22,679 |
| 13 | Office equipment | D | $0 |
| 14 | Leasehold improvements | D | $288,690 |
| 15 | Vehicles | D | $7,000 * |
| 16 | Other: | D | |
| 17 | | D | |
| 18 | | D | |
| 19 | | D | |
| 20 | | D | |
| 21 | **Total Property and Equipment** | | $2,425,070 |
| | **Other Assets** | | |
| 22 | Loans to shareholders | | $86,895 |
| 23 | Loans to affiliates | | |
| 24 | Net of Amortization - Advantage, Inc. loan fee | | $43,630 |
| 25 | Net of Amortization - Commissions & Contract Sign-on bonus | | $594,091 |
| 26 | Net of Amortization - City Permit for water / Sewer | | $1,124,490 |
| 27 | Security Deposits | | $257,257 |
| 28 | **Total Other Assets** | | $2,106,363 |
| 29 | **Total Assets** | | $9,085,326 |

**NOTE:**

Indicate the method used to estimate the market value of assets (e.g., appraisals; familiarity with comparable market prices, etc.) and the date the value was determined.

\* Appraisal dated 4/8/16 by Gordon Bros. using Orderly liquidated Value.

# SCHEDULES TO THE BALANCE SHEET
### (General Business Case)

### Schedule A
### Accounts Receivable and (Net) Payable

| Receivables and Payables Agings | Accounts Receivable [Pre and Post Petition] | Accounts Payable [Post Petition] | Past Due Post Petition Debt |
|---|---|---|---|
| 0 -30 Days | $1,066,376 | $322,604 | |
| 31-60 Days | $120,656 | $0 | |
| 61-90 Days | $35,450 | $0 | $0 |
| 91+ Days | $101,843 | $0 | |
| Total accounts receivable/payable | $1,324,324 | $322,604 | |
| Allowance for doubtful accounts | $23,088 | | |
| Accounts receivable (net) | $1,301,236 | | |

### Schedule B
### Inventory/Cost of Goods Sold

| Types and Amount of Inventory(ies) | Inventory(ies) Balance at End of Month | Cost of Goods Sold | |
|---|---|---|---|
| | | Inventory Beginning of Month | |
| | | Add - | |
| Retail/Restaurants - | | Net purchase | |
| Product for resale | $0 | Direct labor | $1,294,545 |
| | | Manufacturing overhead | $543,926 |
| Distribution - | | Freight in | |
| Products for resale | $0 | Other: | |
| | | Add Loss Charges Accrued / Billed | ($23,969) |
| Manufacturer - | | | |
| Raw Materials | $0 | | |
| Work-in-progress | $0 | Less - | |
| Finished goods | $0 | Inventory End of Month | |
| | | Shrinkage | |
| Other - Explain | $2,976,101 | Personal Use | |
| Net Book Linen (Linen used for rental income) | | | |
| | | Cost of Goods Sold | $1,814,501 |
| TOTAL | $2,976,101 | | |

**Method of Inventory Control**
Do you have a functioning perpetual inventory system?
    Yes _____    No _x_
How often do you take a complete physical inventory?

| | |
|---|---|
| Weekly | _____ |
| Monthly | x |
| Quarterly | _____ |
| Semi-annually | _____ |
| Annually | _____ |

Date of last physical inventory was      11/30/2016 0:00

Date of next physical inventory is      12/31/2016 0:00

**Inventory Valuation Methods**
Indicate by a checkmark method of inventory used.

Valuation methods -
| | |
|---|---|
| FIFO cost | __ |
| LIFO cost | __ |
| Lower of cost or market | __ |
| Retail method | __ |
| Other | __ |
|   Explain | |

Revised 1/1/98

## Schedule C
### Real Property

| Description | Cost | Market Value |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| Total | $0 | $0 |

## Schedule D
### Other Depreciable Assets

| Description | Cost | Market Value |
|---|---|---|
| Machinery & Equipment - | | |
| Various | $8,203,810 | $2,106,700 |
| | | |
| | | |
| Total | $8,203,810 | $2,106,700 |
| | | |
| Furniture & Fixtures - | | |
| Miscellaneous | $105,526 | $22,679 |
| | | |
| Total | $105,526 | $22,679 |
| | | |
| Office Equipment - | | |
| | | |
| Total | $0 | $0 |
| | | |
| Leasehold Improvements - | | |
| Miscellaneous | $369,980 | $288,690 |
| | | |
| Total | $369,980 | $288,690 |
| | | |
| Vehicles - | | |
| Step Side Truck (purchased used 4/4/12) | $7,625 | $7,000 |
| | | |
| Total | $7,625 | $7,000 |

Revised 1/1/98

## Schedule E
### Aging of Post-Petition Taxes
#### (As of End of the Current Reporting Period)

| Taxes Payable | 0-30 Days | 31-60 Days | 61-90 Days | 91+ Days | Total |
|---|---|---|---|---|---|
| **Federal** | | | | | |
| Income Tax Withholding | $20,341 | | | | $20,341 |
| FICA - Employee | $22,542 | | | | $22,542 |
| FICA - Employer | $22,542 | | | | $22,542 |
| Unemployment (FUTA) | $588 | | | | $588 |
| Income | | | | | $0 |
| Other (Attach List) | | | | | $0 |
| **Total Federal Taxes** | $66,013 | $0 | $0 | $0 | $66,013 |
| **State and Local** | | | | | |
| Income Tax Withholding | | | | | $0 |
| Unemployment (UT) | $4,937 | | | | $4,937 |
| Disability Insurance (DI) | | | | | $0 |
| Empl. Training Tax (ETT) | | | | | $0 |
| Sales | | | | | $0 |
| Excise | | | | | $0 |
| Real property | | | | | $0 |
| Personal property | | | | | $0 |
| Other (CEP) | $120 | | | | $120 |
| Other (Bond) | $1,445 | | | | $1,445 |
| **Total State & Local Taxes** | $6,502 | $0 | $0 | $0 | $6,502 |
| **Total Taxes** | $72,515 | $0 | $0 | $0 | $72,515 |

## Schedule F
### Pre-Petition Liabilities

| List Total Claims For Each Classification - | Claimed Amount | Allowed Amount (b) |
|---|---|---|
| Secured claims  (a) | $18,526,961 | $18,526,961 |
| Priority claims other than taxes | | $0 |
| Priority tax claims | | |
| General unsecured claims | $2,578,849 | $2,578,849 |

(a)   List total amount of claims even it under secured.

(b)   Estimated amount of claim to be allowed after compromise or litigation. As an example, you are a defendant in a lawsuit alleging damage of $10,000,000 and a proof of claim is filed in that amount. You believe that you can settle the case for a claim of $3,000,000. For Schedule F reporting purposes you should list $10,000,000 as the Claimed Amount and $3,000,000 as the Allowed Amount.

## Schedule G
### Rental Income Information
#### Not applicable to General Business Cases

## Schedule H
### Recapitulation of Funds Held at End of Month

| | Account 1 | Account 2 | Account 3 | Account 4 | Account 5 |
|---|---|---|---|---|---|
| Bank | B of A | B of A | B of A | NSB | NSB |
| Account Type | Checking | Checking | Checking | Checking | Checking |
| Account No. | 8576 | 8589 | 8592 | 7106 | 7114 |
| Account Purpose | Operating | Payroll / PR Taxes | Owners | Operating | Payroll / PR Taxes |
| Balance, End of Month | $58,225 | $33,250 | $54,388 | $0 | $0 |
| Total Funds on Hand for all Accounts | $145,864 | | | | |

Attach copies of the month end bank statement(s), reconciliation(s), and the check register(s) to the Monthly Operating Report.

Revised 1/1/98

## STATEMENT OF CASH RECEIPTS AND DISBURSEMENTS
### Increase/(Decrease) in Cash and Cash Equivalents
**For the Month Ended    11/30/16**

| | | Actual Current Month | Cumulative (Case to Date) |
|---|---|---|---|
| | **Cash Receipts** | | |
| 1 | Rent/Leases Collected | $9,784 | $19,599 |
| 2 | Cash Received from Sales | $1,336,306 | $2,516,289 |
| 3 | Interest Received | | |
| 4 | Borrowings | $200,000 | $710,000 |
| 5 | Funds from Shareholders, Partners, or Other Insiders | | |
| 6 | Capital Contributions | | |
| 7 | Misc. | | $492 |
| 8 | | | |
| 9 | | | |
| 10 | | | |
| 11 | | | |
| 12 | **Total Cash Receipts** | $1,546,090 | $3,246,380 |
| | **Cash Disbursements** | | |
| 13 | Payments for Inventory | $141,755 | $280,927 |
| 14 | Selling | | |
| 15 | Administrative | | |
| 16 | Capital Expenditures | $0 | $152,611 |
| 17 | Principal Payments on Debt | | |
| 18 | Interest Paid | | |
| | Rent/Lease: | | |
| 19 | Personal Property | $96,812 | $96,812 |
| 20 | Real Property | $45,294 | $89,563 |
| | Amount Paid to Owner(s)/Officer(s) | | |
| 21 | Salaries | $30,266 | $65,914 |
| 22 | Draws | | |
| 23 | Commissions/Royalties | $12,595 | $12,595 |
| 24 | Expense Reimbursements | $7,299 | $8,789 |
| 25 | Other | | |
| 26 | Salaries/Commissions (less employee withholding) | $603,298 | $1,326,219 |
| 27 | Management Fees | | |
| | Taxes: | | |
| 28 | Employee Withholding | $123,801 | $248,871 |
| 29 | Employer Payroll Taxes | $74,586 | $152,690 |
| 30 | Real Property Taxes | | |
| 31 | Other Taxes- $30120 Modified Business Tax; $16,871 Sales tax | $46,991 | $92,347 |
| 32 | Other Cash Outflows: | | |
| 33 | Outside Production | $147,517 | $253,410 |
| 34 | Benefits - Healthcare | $35,844 | $72,697 |
| 35 | Insurance - Business / WC | $20,990 | $42,364 |
| 36 | Production Supplies | $67,719 | $86,361 |
| 37 | Misc. -Util.($10k) G&A ($13k), Misc. ($13k), R&M ($66k), Rentals, Tel/Intrt ($8k) | $115,810 | $144,032 |
| 38 | **Total Cash Disbursements:** | $1,570,578 | $3,126,202 |
| 39 | **Net Increase (Decrease) in Cash** | ($24,488) | $120,178 |
| 40 | **Cash Balance, Beginning of Period** | $38,136 | $38,136 |
| 41 | **Cash Balance, End of Period** | $13,648  * | $158,314 |

Revised 1/1/98

12:02 PM
12/09/16

# Superior Linen, LLC
## Reconciliation Summary
### 10050 · BofA - Operating Account *8576, Period Ending 11/30/2016

|  | Nov 30, 16 |
| --- | --- |
| **Beginning Balance** | 90,136.82 |
| **Cleared Transactions** | |
| Checks and Payments - 220 ite... | -728,632.50 |
| Deposits and Credits - 48 items | 696,720.90 |
| **Total Cleared Transactions** | -31,911.60 |
| **Cleared Balance** | **58,225.22** |
| **Uncleared Transactions** | |
| Checks and Payments - 17 items | -44,146.05 |
| **Total Uncleared Transactions** | -44,146.05 |
| **Register Balance as of 11/30/2016** | **14,079.17** |
| **New Transactions** | |
| Checks and Payments - 80 items | -277,570.02 |
| Deposits and Credits - 8 items | 110,000.00 |
| **Total New Transactions** | -167,570.02 |
| **Ending Balance** | **-153,490.85** |