LARSON & ZIRZOW, LLC
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
E-mail: zlarson@lzlawnv.com
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
E-mail: mzirzow@lzlawnv.com
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170
Fax: (702) 382-1169

Attorneys for Debtor

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>SUPERIOR LINEN, LLC,<br><br>Debtor. | Case No.: 16-15388-mkn<br>Chapter 11<br><br>Date: OST Pending<br>Time: OST Pending |

**DECLARATION OF ROBERT E. SMITH IN SUPPORT OF DEBTOR'S SECOND MOTION FOR AN ORDER: (I) AUTHORIZING SUPERPRIORITY POST-PETITION FINANCING; (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS; (III) APPROVING LOAN DOCUMENTS RELATING TO THE FOREGOING; (IV) GRANTING RELIEF FROM THE AUTOMATIC STAY; AND (V) GRANTING OTHER RELATED RELIEF**

I, Robert E. Smith, hereby declare as follows:

1. I am over the age of 18 and am mentally competent. I make this declaration in support of the *Second Motion for an Order: (I) Authorizing Superpriority Post-Petition Financing; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Approving Loan Documents Relating to the Foregoing; (IV) Granting Relief from the Automatic Stay; and (V) Granting Other Related Relief* (the "Motion") filed by Superior Linen, LLC, as debtor and debtor in possession (the "Debtor" or "Superior Linen").

2. I am the Debtor's Chief Financial Officer (the "CFO") and have worked in that capacity since October 2015. I started with Superior Linen in or about June 2013 and was CFO from that time until September 2014. From September 2014 to September 2015, Andrew P. Gasser

served as the company's CFO and I remained employed with the company as an analyst. Upon Mr. Gasser's departure from the company in September 2015, I retook my position as CFO of the company from October 2015 through the Petition Date. I am also the Debtor's designated responsible person in this Chapter 11 Case.

3. Based upon my experience and involvement with Superior Linen, I am readily familiar with Debtor's business, operational, and financial affairs. All facts set forth in this declaration are based upon my personal knowledge of the Debtor's operations and finances, information learned from my review of relevant documents maintained in the ordinary course of the Debtor's business and which are business records. If called upon to testify as to the contents of this declaration, I could and would do so consistently herewith.

**Relief Requested**

4. The Debtor seeks entry of an order on an immediate final basis: (i) authorizing additional post-petition financing of up to $750,000; (ii) granting liens and providing superpriority administrative expense priority pursuant to sections 364(c)(1) and 364(d) *pari passu* with the Original DIP Loan (as defined below); (iii) approving the Second DIP Loan Documents (as defined below); (iv) granting relief from the automatic stay pursuant to section 362 of the Bankruptcy Code; (v) granting other related relief.

5. The post-petition financing is a loan in the additional principal amount of $750,000 (the "Second DIP Loan") pursuant to: (i) the existing Secured Loan and Security Agreement (the "DIP Loan Agreement") between the Debtor, as borrower, and RD VII Investments, LLC ("RD VII"), as proposed lender (the "DIP Lender"), see ECF No. 150, Ex. 2, as modified by the First Amendment to Secured Loan and Security Agreement (the "First Amendment to DIP Loan Agreement") attached to the Motion as **Exhibit 1**; (ii) the existing Revolving Line of Credit Secured Promissory Note (the "DIP Note"), see id. Ex. 1, as modified by the First Amendment to Revolving Line of Credit Secured Promissory Note (the "First Amended DIP Note") attached to the Motion as **Exhibit 2**; (iii) the proposed form of order (the "Proposed Order") attached to the Motion as **Exhibit 3** (collectively, as may be amended, modified or supplemented, the "Second DIP Loan Documents").

2

**Additional Relevant Post-Petition Events**

6. From and after the Petition Date, the Debtor has undertaken significant efforts to stabilize its business, manage its cash flow, and review operations to improve efficiencies. First, in November 2016, the Debtor parted ways with its existing President, D.W. Doc Weiner, and promoted Chris McLemore to that role, who has extensive experience in the laundry-linen industry. Second, the Debtor has filed an application seeking to retain Province, Inc. ("Province") as financial advisors in order to assist with a potential sale of the business [ECF No. 119]. Province has been actively working to assist the Debtor in preparing financial projections and marketing materials and has actively begun to market the company's assets for sale to various potentially interested parties. Third, the Debtor is also in the process of analyzing and reviewing its existing linen/laundry customer contracts to assess profitability, including with certain existing customers regarding a termination of services as well as with new customers to bring in additional and more profitable business.

7. Debtor requires additional funds for various reasons. First, its Original DIP Loan was only projected to last through roughly January 2017, and thus the timeframe contemplated in that arrangement is nearly completion. Second, the following items varied from the original budget forecast in early October 2016 as provided with the Original DIP Loan: (a) the Debtor collected $171,000 less than original forecast principally due to an account with the Tropicana Las Vegas Hotel & Casino not being renewed, which accounted for $340,000 of collections through December 31, 2016; (b) payroll was $34,000 more than originally forecasted, which was due primarily to additional labor incurred in order to meet customer demands on a timely basis; (c) proposed utility provider deposits pursuant to section 366 of the Bankruptcy Code, which have now been resolved in the amount of $85,000 to the City of North Las Vegas and $50,000 to NV Energy; (d) retainers for professionals, including but not limited to the Committee. Third, the Debtor has other additional expenses such as additional insurance costs, potential adequate protection payments to the City of North Las Vegas for sewer connection fees, and other items necessary to maintain and improve operations.

8. The Debtor projects that the Second DIP Loan will sustain operations through

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

approximately March 31, 2017.  The Debtor historically experiences a seasonal reduction in its business during the Winter months and thus reduced profitability, whereas in the Spring and Summer months with the advent of pool season and the resulting increased linen usage by its hospitality customers, experiences substantially increased business and improved profitability.  The Debtor's projected receipts and expenses for the last few weeks of January 2017 through March 31, 2017 (the "<u>Budget</u>") is attached to the Motion as **Exhibit 4**.

### Debtor's Need for Additional Post-Petition Financing

9. The Debtor's ability to finance their operations post-petition is essential to the Debtor's ability to maximize the value of its estate.  The Debtor does not have sufficient liquid assets in its estate available to finance its operations post-petition on a go forward basis, at least at present, however, with the Second DIP Loan it believes it will be on the path toward cash flow profitability.  As such, in the absence of the Debtor obtaining credit pursuant to section 364 of the Bankruptcy Code, the Debtor's estate would suffer immediate and irreparable harm.  The preservation, maintenance, and enhancement of the value of the Debtor is of the utmost significance and importance to a successful restructuring or sale of the Debtor and/or its assets.

10. The Debtor needs approval of and access to the Second DIP Loan to fund the Chapter 11 Case and its operations.  The Debtor cannot meet its ongoing post-petition obligations unless it has the authorization to execute the Second DIP Loan Documents and access the proceeds of the Second DIP Loan.  In the absence of such access to funds, immediate and irreparable harm will result to the Debtor, its estate, and its creditors, rendering a reorganization or orderly sale and/or reorganization of Debtor impossible and thus compromising or even precluding any meaningful distribution to the Debtor's creditors.  The terms and conditions of the Second DIP Loan Documents, the Proposed Order, and the related relief requested herein are fair, reasonable, and in the best interests of the Debtor, its creditors, and its estate.

11. Debtor has been able to obtain additional financing in the aggregate maximum amount of $750,000 in the form of secured credit, allowable under section 364(b) as an administrative expense, and section 364(c)(1) and (d) as a secured expense.  The source of the proposed Second DIP Loan is the existing DIP Lender (RD VII Investments, LLC), whose owners

4

are also some of the, but certainly not all of the, members of the Debtor. In particular, RD VII is majority owned and controlled directly or indirectly by Rex Runzheimer and Darryl Hermann, who in the aggregate hold more than 75% of the membership interest therein. By contrast, Mr. Runzheimer only directly or indirectly holds 19.77% of the membership interest in the Debtor, and Mr. Hermann has no membership interest in the Debtor, and thus are not majority owners of and do not exercise majority control over the Debtor. Further, per the terms of the Debtor's operating agreement, which has been in effect since on or about December 24, 2014, responsibility for the Debtor's critical management decisions is shared among four (4) "Required Members," which are Fortuna Partners One, LLC (owned and controlled by Phillippe Pageu-Goyette), Little Current, LLC (owned and controlled by Fred Seto), BrightLight Holdings, LLC (owned and controlled by Richard Keister), and Mr. Runzheimer indirectly though his living trust. As such, critical management decisions of the Debtor are sufficiently diverse as well. Finally, day-to-day management of the Debtor is delegated to Robert Smith, the company's Chief Financial Officer, who is also the Debtor's designated responsible person in this Chapter 11 Case [ECF No. 62], as well as Mr. Keister. As such, although the Debtor and RD VII share some common members, management and control of both entities are sufficiently separate and ultimately and effectively independent.

### The Debtor Does Not Have an Alternative to the DIP Loan

12. While the value of the Debtor's assets and business exceed the Second DIP Loan amount, as set forth above, such assets are illiquid. Without the Second DIP Loan, the Debtor's ability to continue operating during its Chapter 11 Case will be jeopardized. Moreover, with the existing DIP Loan in place as already approved by the Court, alternative financing is simply not attainable or feasible. The Debtor exercised its best business judgment in negotiating the Second DIP Loan Documents and the Proposed Order.

13. The DIP Lender's offer to provide the Second DIP Loan as an administrative claim pursuant to section 364(b) and a superpriority priming lien loan pursuant to section 364(d), in an amount necessary to meet the Debtor's working capital needs on the terms, and within the time frame provided, simply cannot, in the Debtor's judgment, be matched by any third-party lender.

5

The DIP Lender has already performed all the due diligence necessary in connection with the DIP Loan and, thus, is well positioned to provide post-petition financing to the Debtor.

### The Business Judgment Standard and Good Faith

14. Approval of the Second DIP Loan will provide the Debtor with immediate and ongoing access to funds so that the Debtor can avoid harm to its estates and likely erosion of the value of their assets. Absent access to the Second DIP Loan, the Debtor will not have sufficient available sources of working capital and financing to successfully liquidate its assets, and tender a distribution to the Debtor's creditors through a plan of reorganization. The funds provided under the Second DIP Loan will enable the Debtor to prosecute its Chapter 11 Case in an orderly and reasonable manner that preserves and enhances the value of the estate.

15. The Debtor has exercised sound business judgment in determining that the proposed Second DIP Loan is appropriate and have satisfied the legal prerequisites to borrow under the Second DIP Loan Documents. Accordingly, the Debtor should be granted authority to borrow funds from the DIP Lender pursuant to section 364 of the Bankruptcy Code, and take the other actions contemplated herein.

16. The proposed Second DIP Loan is the result of good faith and arm's-length negotiations, with all parties represented by counsel. Although the DIP Lender is comprised of certain of the Debtor's members, the Debtor negotiated the Second DIP Facility solely in pursuit of the best interests of the Debtor and its estate. Additionally, the terms of the Second DIP Loan are fair and reasonable under the circumstances, and any extensions of credit thereunder are in good faith and advanced in an effort to foster a meaningful reorganization or sale process so as to maximize the value of the Debtor's assets, and thus the DIP Lender is entitled to the benefits and protections of section 364(e) of the Bankruptcy Code.

Dated: January 23, 2017.

    /s/ Robert E. Smith  
ROBERT E. SMITH

**LARSON & ZIRZOW, LLC**  
850 E. Bonneville Ave.  
Las Vegas, Nevada 89101  
Tel: (702) 382-1170   Fax: (702) 382-1169