LARSON & ZIRZOW, LLC
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
E-mail: zlarson@lzlawnv.com
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
E-mail: mzirzow@lzlawnv.com
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170
Fax: (702) 382-1169

Attorneys for Debtor

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re: | Case No.: BK-S-16-15388-mkn |
| | Chapter 11 |
| SUPERIOR LINEN, LLC, | |
| Debtor. | Date: May 30, 2017 |
| | Time: 2:00 p.m. |

**SUPPLEMENT TO MOTION FOR APPROVAL PURSUANT TO:**
**(I) 11 U.S.C. §§ 105(a), 363, AND 365 AND FED. R. BANKR. P. 2002, 6004, 6006,**
**9007 AND 9014 AUTHORIZING (A) SALE FREE AND CLEAR OF ALL LIENS,**
**CLAIMS, ENCUMBRANCES AND INTERESTS; (B) ASSUMPTION AND**
**ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED**
**LEASES, AND DESIGNATION RIGHTS; AND (II) APPROVAL OF**
**SETTLEMENT AND RELEASE AGREEMENT PURSUANT TO**
**FED. R. BANKR. P. 9019 WITH THE CITY OF NORTH LAS VEGAS**

Superior Linen, LLC, a Nevada limited liability company, as debtor and debtor in possession (the "Debtor"), hereby supplement its previously filed *Motion for Approval Pursuant to: (I) 11 U.S.C. §§ 105(a), 363, and 365 and Fed. R. Bankr. P. 2002, 6004, 6006, 9007 and 9014 Authorizing (A) Sale Free and Clear of All Liens, Claims, Encumbrances and Interests; et al.* (the "Sale Motion") [ECF No. 437],[1] to supplement certain of the exhibits attached to the Sale Motion. The Sale Motion had attached to it the following exhibits: **Exhibit 1** - Sale Order;

---

[1] Unless otherwise indicated, all capitalized terms herein shall have the same meaning as set forth in the Sale Motion and the attachments thereto.

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

**Exhibit 2** - APA; **Exhibit 3** - North Las Vegas Settlement Agreement.  Attached hereto are the following supplements and/or revisions to those exhibits:

   **Exhibit A**:    The Disclosure Schedules to the APA (part of Exhibit 2 of the Sale Motion).

   **Exhibit B**:    A *revised* North Las Vegas Settlement Agreement (Exhibit 3 to the Sale Motion) in redline form and modified from what was previously attached to the Sale Motion reflecting the removal of the Landlord (Icon Pac Nevada Owner Pool 3, Nevada LLC) as a party to the agreement, as well as other changes negotiated between the Debtor, the Buyer, and the City as the remaining parties thereto.  This exhibit also includes the Exhibits to the North Las Vegas Settlement Agreement (including Exhibit 1 - Monthly Payment Schedule, Exhibit 2 - Extinguishment & Release and Exhibit 3 - Confession of Judgment and Guaranties).

   **Exhibit C**:    First Amendment to APA (the "First Amendment").

   The Debtor has attempted to keep all principal parties in this Chapter 11 Case reasonably advised of the status of all negotiations and documentation by informally circulating drafts of all of the foregoing documents over the last few weeks, however, certain matters remain the subject of continuing negotiations and objections, and thus the Debtor reserves the right to further modify all of the foregoing to address those matters and/or potentially resolve objections.  In particular, negotiations regarding certain parts of the APA, the First Amendment, and the Sale Order continue and the Debtor will attempt to file whatever additional documents it can as quickly as time will allow prior to the sale hearing.

   DATED:  May 28, 2017.

By:   /s/ Matthew C. Zirzow
      LARSON & ZIRZOW, LLC
      ZACHARIAH LARSON, ESQ.
      Nevada Bar No. 7787
      MATTHEW C. ZIRZOW, ESQ.
      Nevada Bar No. 7222
      850 E. Bonneville Ave.
      Las Vegas, Nevada 89101

      Attorneys for Debtor

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

2

# EXHIBIT A

# ASSET PURCHASE AGREEMENT

## DISCLOSURE SCHEDULES

## SECTION 1.01(b):
### FIXED ASSETS

[Open item – Discrepancies need to be discussed with/explained to Buyer]

Fixed Assets located at Mitchell Property.

| QTY | DESCRIPTION | MANUFACTURER | MODEL | SERIAL |
|---|---|---|---|---|
| 1 | (1998) 12-Compartment Continuous Tunnel Washer, to Include: Milnor Stainless Steel Incline Conveyor; (3) Milnor 4-Compartment Continuous Batch Washers; Milnor Laundry Press; Milnor Incline Load Conveyor; Milnor Shuttle Conveyor; (5) Milnor Natural Gas Fired Double Batch Dryers; Milnor Reuse Water Tank Assembly; Milnor Flow Lifter Tank; Milnor Splitter Tank; Milnor Controls; Milnor Inverter Drive; Milnor Control Center. | Milnor | (7603954M) w/ Incline Load Conveyor, COINC11; Washers, Model's 76039S4F, 76039S4L & 76039S4M; Laundry Press, MP1603 R; Load Conveyor, CONW306 (H 35.5'W x Approx. 21'L); Shuttle Conveyor, COSH0112; Batch Dryers, 64058TG1; Tank Assembly, ReUseWat; Lifter Tank, FlowLift; Splitter Tank, SPLI Flow; Controls, Mentor; Inverter Box; Control Center, "Belbow"; | (7094002) w/ Incline Load Conveyor, S/N AAG/0201072601, (2002); Washers, S/N's ABK/7094001, ABK/7094002 & ABK/7094004, (1998); Laundry Press, S/N AAB/0201030901, (2002); Load Conveyor, S/N-AAOn094060, (1998); Shuttle Conveyor, S/N AAB/0201071901, (2002); Batch Dryers, S/N's AAB/0200982401, AAB/0200987201, AAB/0200987101, AAB/0200982501 & AAB/0200982301, (2002); Water Tank Assembly, S/N AAJn7094040, (1998); Flow Lifter Tank, S/N AAHn094042, (1998); Splitter Tank, S/N AAHn094041, (1998); Controls, S/N 7094001, (1998); Inverter Drive Box, S/N AADn094076, (1998); Control Center, S/N AAA/0200959201, (2002). |
| 1 | (2001) 15-Compartment Continuous Tunnel Washer, (450-Lbs./Hr.) to Include: Lavatec Stainless Steel Incline Conveyor; Lavatec Water Extraction Press; (5) Lavatec Batch Washers, Lavatec Shuttle Conveyor, (5) Lavatec Steam Type Double Batch Dryers (2,050,000-BTU/Hr.), , Lavatec Controls, Lavatec 36"W x Approx. 60' Off-Load Conveyor, Fiberglass Lint Collection System. | Lavatec | Incline Conveyor 36"W x Approx. 40'L, Model LT 50 X 15 CT 110-Lb; Press, Model LP571 110-Lb; Batch Washer, Model LI150 350-Lb.; Shuttle Conveyor, Model DHF 10.24 2 x 440-Lb.; Dryers, Model TT 756-D 450-Lb.; Controls, Model 150; ULTRAX. | Press, S/N 571.0959, (2006); Batch Washer, S/N 50.466, 50465, 50466, 50467, 50468 & 50469; Shuttle Conveyor, S/N 100.1208, (2001); Dryers, S/N's 756.0483, 756.0484, 756.0485, 756.0486 & 756.0487, (2001); Controls, S/N 150.0426, (2001); |

| | | | | |
|---|---|---|---|---|
| 1 | (2003) 16-Compartment, 200- Lb. Continuous Tunnel Washer, to include: Stainless Steel Natural Gas Fired Steam Type, 3,915,000-BTU/Hr., Lavatec Incline Conveyor, Lavatec Water Extraction Press, Lavatec Elevator Lift, Lavatec Controls, | Lavatec | (LT-90X16-BT) w/ Incline Conveyor 36"W x Approx. 40'L, 4PALC-90-301; Press Model LP583 200-Lb.; Controls, Model 150-LT90X16-BT; Shuttle Lift typr 150 | (90.007) w/ Incline Conveyor 28-301528; Press, S/N 583.0106, (2003/2010); Controls, S/N 90.007, (2003); Shuttle Lift, S/N 150.0587. |
| 1 | Washer - Type Ex30C | Wascomat #1 | 686252768 | 0012000156930986252768 |
| 1 | Washer - | B&C #2 | HE-60-A2-24ANN-ABA | 006971 |
| 1 | Ridgid Mount Open-Pocket Washer Extractor, (2009), 125-Lb. Capacity, 19.2 Cu. Ft. Cylinder Volume; with 10-Hp Motor & Controls | Unimac #3 | UW125PVQU | 06092593003226   9 |
| 1 | Washer – 135lb | Unimac #4 | UF135PVQU30001 | 3060192413 |
| 1 | Washer – 85lb | Unimac #5 | UW85PVQU20001 | 0995068714 |
| 1 | Ridgid Mount Open-Pocket Washer Extractor, (2005), 140-Lb. Capacity, 42" Cylinder Dia., 26" Cylinder Depth. 20.8 cu. Ft. Cylinder Volume ,33 & 40 RPM Wash Speeds, 10-Hp Motor & Controls | Milnor #6 | 42026V6J | AAQ/0502421101 |
| 2 | Ridgid Mount Open-Pocket Washer Extractors, (2002), 125-Lb. Capacity, 19.2 cu. Ft. Cylinder Volume; with 10-Hp Motor & Controls | Unimac #7 & #8 | UW125PVQU 50002 | 090219340 & 090219341 |
| 1 | 450 lb. open pocket washer extractor (1999) | Brim #9 | 4523020030 | 459808100 |
| 1 | 450lb., Open-Pocket Washer Extractor, (2009), 48" Door Opening, 136.75" Max. Tilting Height, 68" Cylinder Dia., 36" Cylinder Depth,75.6 cu. Ft. Cylinder Volume, 25 -32 RPM Wash Speeds , 40-Hp Motor & Controls | Milnor #10 | 68036F5N | AAB/0903779601 |
| 6 | Spreaders/Feeders | Sager | 08 AC | 40331 |

3

| | | | |
|---|---|---|---|
| 1 | Natural Gas Industrial Dryer, (2003),310-Lb.Max. Capacity, 62.5" Tumbler Dia., 60" Tumbler Depth, 106.5 cu. Ft. Tumbler Volume,36.75" x 43" Door Opening, 1,125,000 Btu/Hr. Opening, | American Dryer Corporation #7 | 310 | 48 1214 |
| | Dryer | Kenmore #1 | Elite | |
| | Dryer | Cissell #2 | L36CD36G | 2145-384 |
| | Dryer | Cissell #3 | L44CD42G | 12508-390 |
| | Dryer | Cissell #4 | L44AD42G | 246 |
| 1 | Natural Gas Industrial Dryer, (2001), 125-Lb. Max. Capacity, 44" Tumbler Dia., 41" Tumbler Depth, 36.1 cu. Ft. Tumbler Volume,26.875" Door Opening, 300,000 Btu/Hr. | Cissell #5 | H0125G | 2012014574 |
| | Dryer | Cissell #6 | L44CD426 | 12507-390 |
| 1 | 4501b.Gas Heated Drver with Stainless Steel Lint Trao | Consolidated #8 | 194GP | |
| 1 | 800mm Dia.3-Roll Flatwork Ironer,(2001), 3,000mm Working Width; with Jensen Draping Stacker Single Storage Bar Draping Stacker; Jensen Silverline Plus Automatic Folder/Crossfolder, S/N 551240 , (2001); & PLC Controls | Jensen | Jenroll EX8 | 650353 |
| 1 | 1,300mm Dia. 2-Roll Flatwork Ironer, (2004); with Chicago Belt Spreader; Chicago Skyline 2000 S-10-2000 120" 2-Lane Automatic Folder/Crossfolder,S/N 53077 5/05, (2005), 80 to 200 FPM & PLC Controls | Chicago | Century 5200 Cent1152ST | 52000 5/04 |
| 1 | 1,300mm Dia. 2-Roll Flatwork Ironer, (2006); with Chicago Belt Spreader·& PLC Controls | Chicago | Century 5200 Cent1152ST | 53315 1/6 |

| | | | | |
|---|---|---|---|---|
| 3 | Rebuilt, 8 roll Steam Heated Ironers | American | Hypro's | |
| 1 | 42"W x 71"1_ Small Piece Folder, (2004), with Jensen Compact Plus Sin11le Stora11e Bar Stacker·& PLC Controls | Jensen | Butterfly | 37-6148-CP |
| 1 | 36"W x 72"L Small Piece Folder (2005) | Chicago # | Air Chicago | 53098 5/05 |
| 1 | Folder | Chicago #1 | Air Chicago | 56419 5/08 |
| 2 | 36"W x 72"L Small Piece Folder, (2005) | Chicago #2 & #3 | Air Chicago | 53316 7/05 & 53317 7/05 |
| 1 | 36"W x 72"L Small Piece Folder, (2008} | Chicago #4 | Air Chicago | 56281 3/08 |
| 2 | 120" 2-Lane Automatic Folder/Crossfolder, (2008). 80 to 200 FPM; with Chicago King Edge 120" 2-Lane Automatic Spreader/Feeder, S/N 54606 12/06, (2006), 30 to 150 FPM; Chicago Max Stack Stacker; & PLC Controls | Chicago | Skyline 2000 S- 16-2000 | 56280 3/08 |
| 1 | 100" to 140" Blanket Folder/Crossfolder, (2005), Maximum Speed: 200-F PM 878 to 1 285 Blankets/Hr. ·with Larae Piece Stacker | Lavatec | Lavafold | BFORV0501021 |
| 1 | blanket folder (1993) | Lavatec | b200 | b200r109313 |
| 1 | 2000 Automatic Folder / Cross folder w Jensen single storage Bar draping stacker | Jensen | Silverline Plus | 551190 |
| 1 | 2005 Automatic Small piece folder 36 x 72 | Chicago | | 53099 |
| 1 | 5-Lane Stack-n-Store w/ Siemens Controls | Laundry List | invoice M7718 | ST092314 |
| 1 | Hydraulic Dump Hopper with 28"W x Approximately 30'L Power Belt Conveyor | Speed Check Conveyor #2 | | |
| 1 | 30"W x 36'L Soiled Linen Sort Conveyor with Platform | Hvtrol #1 | TL | 137795 |
| 1 | New Vertical Cart Dumper | Speed Check | SCCD | |
| 1 | Slider Bed Model 700SB | Sierra Conveyor | 141386 | |
| 1 | Slider Bed for 42" 65' Conveyor | Sierra Conveyor | 141464 | |

| | | | |
|---|---|---|---|
| 1 | Waste Water Treatment System, To Include: T.E.A. 19023 Plate & Frame Heat Exchanger; T.E.A. Custom Designed & Fabricated System 2000 Waste Water Recovery Unit; 48" x 17" Plate Pack with (107) Plates; 375-Gallon Holding Tank; & 7,000-Gallon Cold Water Tank | TEA | |
| 1 | Waste Water Heat Recovery System; with Plate & Frame Heat Exchanger, (1986), with 54-Plates | Thermal Engineering of Arizona (T.E.A .) | TS-5m |
| 1 | 1O" to 18.5'W Taper x 50"L Steam Type Tapered Laundry Presses, (1992) | American Ajax | 554-C | 295402811191 |
| 1 | Double Buck Steam Type Laundry Press, (2000) | Unipress | *CRD* | 311321 |
| 1 | Heat Sealing Machine | Texasomation Products | ES32 | 475 |
| 1 | Steam Type Sleeve Press, (2001) | Unipress | ucs | 156010 |
| 1 | 2000 Steam type dbl buck laundry press | UniPress | CRD | 0031321 |
| 1 | 2000 Steam Type Collar & Cuff Press | UniPress | 3TZP | 0054780 |
| 1 | 1981 Steam Type Dbl Pants Legger Press 24 x 42, w Finishing Iron | American Ajax | 2442 | 260136361181 |
| 1 | 2011 Natural Gas Right Hand Wide Body Steam Tunnel Finisher, 900 garments/hr. | Colmac | CFS-1200 G/S RH | 110896GPF0180 |
| | Sewing Machine - Hercules Clutch | | FS-500H | ???????????? |
| | Sewing Machine - Yamata | | DOL12H | ??????????? |
| | Spotting Board | | VSE-A | 38040684 |
| | Vacuum Pump | | RP-5 | 872552 |
| 1 | Water Softener | Kibler | Dual | |
| 2 | Polishing softeners | Anco | 2atm3672-2par | |
| | Water Softener System - 2 tanks | | | |
| 1 | NEW, 600-Hp Natural Gas Fired Boiler, | Superior | | |
| 1 | Direct Contact Water Heating Stack Economizer, (2011) | Thermal Engineering of Arizona <T.E.A .) | DC-2 Supermizer | |
| 1 | Hot water tank 70.5 x | | | |

6

| | | | | |
|---|---|---|---|---|
| | 96" | | | |
| 1 | Hot water tank 72 x 108" | | | |
| 1 | 2002 Triple pumping hot water system | TEA | PBB150BBA | PCB-02-2558 |
| 1 | 7,000 GALLON FIBERGS TANK | Justin Tanks | | |
| 2 | 1OOhp Air Compressor with 3500oal. Air Receiver and New Air Dryer | Atlas Copco | | |
| 1 | Skid mounted rotary air compressor | Gardner Denver | | |
| 1 | 4,900-Lb. LPG Fork Lift Truck (1973) with 188" Maximum Lift Hight | Clark | C500-55 | 355-2200-2560 |
| 4 | Scales | Avery Weigh-Tronix | | 14080939, 14080942, 14080513 |
| | Scales | Avery Weigh-Tronix | DSL 4848-05 | 78349, 78350, 78434 |
| 1 | PO KS3037 | Brim Laundry Machine | | |
| 1 | Main Electrical switch board, 5 sections,3,000 amp, 480/277 | Sylvania | 3000A | |
| 1 | Transformer,500 kva, 3 phase, w 800-amp heavy duty switch | Siemens | 3f3y500ftp1 | |
| 1 | Transformer, 75 kva w/ 200 amp safety switch | Acme | | |
| 5 | Transformer, 30 kva w/ 60-100 amp safety switch | | | |
| 3 | Lift Tables; with (12) Wire Carts (Hand Fold) | Norman | | |
| 1 | Lot of Miscellaneous Office Furniture & Business Machines | | | |
| 1 | Lot of Miscellaneous Factory & Support Equipment | | | |
| 1 | Lot of misc. shop equip | | | |

|  | 40" Sliding Sealing Drawer, (2011) | Felrap | Felrapper Console F-240 |
|---|---|
| 1 | 120" 2-Lane Automatic Cornerless Spreader/Feeder, (2005), 30 to 150 FPM | Chicago | Eddie Maxx |
| 700+ | Miscellaneous Laundry Carts |
|  | Polishing Softeners | Anco |
| 1 | 2012 refrigerated Air dryer | Atlas Copco |
| 10 | Large Portable Cooling Fans for production workers | Port-Cool |

| | | | |
|---|---|---|---|
| 2 | Forenta Presses | | |
| 1 | Forenta Puff Iron | | |
| 1 | Taylor Dunn Utility Cart | | |
| 1 | Conveyor (48x60) \| Roach | | |
| 1 | Conveyor (48x50) \| Hytrol | | |
| *1* | *Steam Tunnel* | *Colmac* | *s/n 40907CFF0214* |
| *1* | *125lb. Conventional Washer* | *Milnor* | *s/n AAJ0201068601* |
| *1* | *300lb. Dryer* | *Milnor* | *s/n 567311* |
| *1* | *Dryer* | *Huebsch* | *s/n MTCK 9306003724* |
| *1* | *Hot Water Storage Tank* | | *72 x 108"* |

*Tenant's List of Equipment (Addendum IV) from "13th Street Laundry Triple Net (NNN) Tenant Lease Agreement 125 S. 13th Street Las Vegas, Nevada 89101", to the extent they are present, including:(items in excess $999)*

*Assorted Carts*

| | | |
|---|---|---|
| *1* | *1979 Washex 46/110* | *Washex* |
| *1* | *1985 Omega Folder* | *Braun* |
| *1* | *CLM 400GPLT* | |
| *1* | *Super Sylon Ironer* | *American* |
| *2* | *10hp Air Compressors* | |
| *2* | *Dry-cleaning Presses* | *Ajax* |
| *2* | *25hp Boilers* | *Parker* |
| *2* | *125lb. Washer Extractors* | *Unimac* |
| *2* | *85lb. Washer Extractors* | *Unimac* |
| *2* | *Collar & Cuff presses* | *Unipress* |
| *1* | *1994 Sigma RTF Folder* | *Braun* |
| *1* | *Mushroom & Sleever* | *Excelsior* |
| *1* | *70hp. Boiler* | *Parker* |
| *1* | *50hp. Water Heater* | *IEA* |
| *1* | *Double Buck* | *Unipress* |

8

1        1995 GMC Truck

*Miscellaneous other equipment valued less than $1,000*

The equipment set forth in the above table for this Section 1.01(b) of the Disclosure Schedules that appear in "***bold italic font***" are being conveyed "as-is" and "where-is" to Buyer without any representation or warranty from Seller as to Seller's right, title or interest in and to the above designated personal property and equipment and that it is free and clear of Encumbrances.

All of Seller's right, title and interest, if any, for all personal property and equipment purchased from 13th Street Property, LLC and 13th Street Properties North, LLC pursuant to that certain 13th Street Laundry (NNN) Tenant Lease Agreement, dated as of February 2010, including but not limited to those items as listed in Addendum IV therein are being conveyed "as-is" and "where-is" to Buyer without any representation or warranty from Seller as to Seller's right, title or interest in and to the above designated personal property and equipment and that it is free and clear of Encumbrances.

All of Seller's right, title and interest, if any, for all of Seller's right, title and interest, if any, to any and all personal property and equipment set forth in the alleged sublease between Seller and Max Enterprises, LLC allegedly dated as of February 17, 2014, including but not limited to the 5 pieces of equipment listed in section 1 thereof" are being conveyed "as-is" and "where-is" to Buyer without any representation or warranty from Seller as to Seller's right, title or interest in and to the above designated personal property and equipment and that it is free and clear of Encumbrances.

## SECTION 1.01(c) Customer Contracts:

1.    Avi Resort and Casino, a Fort Mojave Indian Tribe Corporation, agreement dated June 19, 2015.
2.    B B + B, LLC, d/b/a Oscar's Beef Booze Broads*
3.    Bayshore Suites, LLC, Linen Services Agreement dated April 17, 2014.
4.    Cafe Latte*
5.    Golden Gate Casino, LLC, d/b/a Golden Gate Hotel & Casino Laundry Services Agreement dated August 3, 2016.
6.    THI of Nevada II at Desert Lane, LLC d/b/a Horizon Specialty Hospital of Henderson Laundry Services Agreement dated August 8, 2015.
7.    Ike Gaming, Inc., d/b/a El Cortez Hotel and Casino, agreement dated December 18, 2013, as amended.
8.    Jean Development Company, LLC, d/b/a Gold Strike Hotel and Gambling Hall Laundry Services Agreement dated August 1, 2015.
9.    LVGV, LLC, d/b/a M Resort Spa & Casino Laundry Services Agreement dated February 1, 2015.
10.   Marnell Gaming, LLC (f/b/o Colorado Belle Gaming, LLC and Edgewater Gaming, LLC) Laundry Services Agreement dated March 24, 2014.
11.   Vegas Hospital Care, LLC d/b/a Mountain's Edge Hospital, agreement dated March 26, 2015
12.   Pioneer Hotel and Gambling Hall, a Nevada corporation, agreement dated May 20, 2014.
13.   Plaza Hotel And Casino, LLC, d/b/a Plaza, a Nevada limited liability company, agreement dated August 13, 2011.
14.   R.B. Properties Inc., contracting as Bilbray Industries Inc., Linen Services Agreement dated August 19, 2014.
15.   Riverside Resort and Casino, LLC, a Nevada limited liability company, agreement dated July 1, 2016.
16.   The Primmadonna Company, LLC, d/b/a Primm Valley Resort & Casino, Buffalo Bill's Resort & Casino, and Whiskey Pete's Hotel & Casino, a Nevada limited liability company, agreement dated February 2013, NO SPECIFIC DATE INCLUDED, as amended.
17.   The Service Companies, Inc.*
18.   Top Golf USA Las Vegas, LLC Rental Services Agreement dated March 21, 2016.

**All of the foregoing customer contracts constitute Designated Contracts under Section 1.09 of the Agreement.**

**\* Copy has not been provided to Buyer**

## SECTION 1.01(d) INVENTORY AND SUPPLIES:

| Inventory Description | Number of Items | Identifying Number: |
|---|---|---|
| **NEW AND USED LINEN** | See attached schedule on following page. | LOT |

The a quantities of Inventory set forth herein are not exact counts as may exist on the Closing Date, but do represent the result of Seller's last count of Inventory prior to the Closing Date

The following Inventory is owned by Customers:

Primm Valley inventory is COG.

Sapphires pool towels and wipers

| Quantity (ea.) | BATH TOWEL WHITE 27x50 KEY | BATH TOWEL WHITE 27x54 KEY | HAND TOWEL WHITE 16x30 KEY | HAND TOWEL WHITE PIANO KEY | WASH CLOTH WHITE 13x13 | BATH MAT SHEET QUEEN MICRO T-180 | KING SHEET 110x120 | KING SHEET QUEEN WHITE STRIPE | QUEEN SHEET WHITE EBONY 100x106 | PILLOW CASE WHITE STD 42x46 | BATH MAT GLASS TOWEL WHITE | GLASS TOWEL RED STRIPE | PILLOW SOP KING WHITE STRIPE | HAND TOWEL BATH RUG | KING FITTED | QUEEN FITTED | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Aul | 7343 | | 5778 | 6997 | 2241 | | | 5856 | | 8563 | 3483 | | | | | | 28,875 |
| Mandalla | 2808 | | 15375 | 14669 | 607 | 23374 | 3095 | 24609 | 10949 | 9200 | 3242 | 7348 | | | | | 108,179 |
| Cosmo | 13400 | | 16568 | 15622 | 23374 | | | | 5731 | 6449 | 6660 | | 14465 | 467 | 508 | 763 | 142,353 |
| Crown | 1435 | | 3759 | 5375 | 2261 | | | 4607 | | 1505 | 1502 | | | | | | 27,287 |
| Golden Gate | 5900 | 993 | 3275 | 1567 | | 1230 | 911 | 2939 | 3173 | 556 | | | 7055 | 162 | 108 | 106 | 4,166 |
| El Coran | | 3413 | 4159 | 4275 | | | 1682 | | 1529 | 1877 | | | 84819 | | | | 28,116 |
| Plaza | 6417 | 6827 | 835 | 454 | | 7082 | | 2242 | 7411 | 3067 | | | | 542 | 508 | 293 | 50,558 |
| Gold Strike | 2683 | 3823 | | | 22090 | | | | | 5322 | | | | | | | 20,694 |
| | 52042 | 4196 | 34788 | 80965 | 1337 | 904 | 7563 | 854 | 5551 | 37242 | 10693 | 42767 | 27835 | 7588 | 10809 | 43912 |
| M Resort | 3823 | 5395 | 3961 | 1337 | 904 | 2563 | 854 | 5551 | 8270 | | | | | | | 26,287 |

| **Hospital Linen Inventory Numbers** | **Amount** |
|---|---|
| 5150 - Pillowcase | 12116 |
| 5201 - Sheet, Hospital | 14865 |
| 5230 - Sheet, Draw | 4263 |
| 5250 - Sheet, Knitted Contour | 4058 |
| 5256 - Blue Gurney Sheets | 2461 |
| 5310 - Blanket, Thermal White | 3895 |
| 5311 - Blanket, Thermal Blue | 2169 |
| 5312 - Blanket, Thermal Green | 204 |
| 5313 - Blanket, Thermal Raspberry | 345 |
| 5350 - Blanket, Bath | 9786 |
| 5401 - Pad, Incontinent | 1457 |
| 5520 - Washcloth | 16433 |
| 5530 - Towel, Bath | 15110 |
| 5710 - Gown, Patient | 641 |
| 5713 - Gown, Patient Oversize | 693 |
| 5720 - Gown, Patient IV/Telemetry | 3792 |
| 5721 - Gown, Patient IV/Telemetry Oversize | 464 |
| 5820 - Towel, Surgery Misty Green | 2675 |
| 6075 - Pant, Pajama Adult XLarge | 346 |
| 6401 - TOWEL, MICROFIBER | 3019 |
| 6407 - Mop, Wet Microfiber Blue String Mop | 422 |
| 6410 - Mop, Flat Microfiber 18" | 3182 |
| 6410 - TOWEL, CLEANING BLUE | 4173 |
| 6412 - Mop, Wet Medium 16 oz | 464 |
| 6550 - Towel, Dish | 1522 |

| **Food and Beverage Linen Inventory Numbers** | **Amount** |
|---|---|
| 0900 - BAR TOWEL WIPER | 17207 |
| 0900 - WIPER | 13295 |
| 0901 - BAR TOWEL WHITE | 8390 |
| 0902 - UTILITY TOWEL RED | 7241 |
| 0903 - UTILITY TOWEL BLUE | 8914 |
| 0903 - UTILITY TOWEL BLUE | 5114 |
| 0904 - GLASS TOWEL RED STRIPE | 8763 |
| 0908 - DUST MOP 24" | 29 |
| 0910 - APRON BIB WHITE | 1430 |
| 0911 - APRON  BLACK BIB | 975 |
| 0920 - APRON BISTRO WHITE | 111 |
| 0921 - APRON BISTRO BLACK | 84 |
| 0930 - APRON 4-WAY WHITE | 184 |

13

| | |
|---|---|
| 0931 - APRON 4-WAY BLACK | 37 |
| 1000 - NAPKIN WHITE WAVE (CTN) | 2772 |
| 1000 - NAPKINS WHITE | 8413 |
| 1002 - 52X52 TABLE TOP WHITE | 1696 |
| 1003 - 52X120 TABLE TOP WHITE | 1150 |
| 1004 - 62X62 TABLE TOP WHITE | 805 |
| 1005 - 72X72 TABLE TOP WHITE | 575 |
| 1006 - 90X90 TABLE TOP WHITE | 556 |
| 1006 - TABLE CLOTH 72X72 BLK/WHT CHECK | 312 |
| 1007 - 120" ROUND WHITE | 305 |
| 1008 - 132" ROUND WHITE | 316 |
| 1009 - 90" ROUND WHITE | 115 |
| 1010 - NAPKINS BLACK | 17020 |
| 1012 - 52X52 TABLE TOP BLACK | 225 |
| 1013 - 52X120 TABLE TOP BLACK | 695 |
| 1014 - 62X62 TABLE TOP BLACK | 365 |
| 1015 - 72X72 TABLE TOP BLACK | 995 |
| 1016 - 90X90 TABLE TOP BLACK | 720 |
| 1017 - 120" ROUND BLACK | 355 |
| 1018 - 132" ROUND BLACK | 317 |
| 1019 - 90" ROUND BLACK | 71 |
| 1020 - NAPKINS BROWN | 2481 |
| 1021 - TABLE CLOTH 42X42 BROWN | 312 |
| 1022 - TABLE CLOTH 52X52 BROWN | 225 |
| 1023 - TABLE CLOTH 52X114 BROWN | 451 |
| 1024 - TABLE CLOTH 62X62 BROWN | 285 |
| 1025 - TABLE CLOTH 72X72 BROWN | 270 |
| 1026 - TABLE CLOTH 85X85 BROWN | 296 |
| 1028 - TABLE CLOTH 130" ROUND BROWN | 252 |
| 1029 - TABLE CLOTH 54X72 BROWN | 450 |
| 1029 - TABLE CLOTH 90" ROUND BROWN | 132 |
| 1030 - NAPKINS RED | 4071 |
| 1032 - TABLE CLOTH 52X52 RED | 225 |
| 1033 - TABLE CLOTH 52X114 RED | 80 |
| 1036 - TABLE CLOTH 85X85 RED | 290 |
| 1040 - NAPKINS BURGUNDY | 4639 |
| 1042 - TABLE CLOTH 52X52 BURGUNDY | 527 |
| 1043 - TABLE CLOTH 52X114 BURGUNDY | 670 |
| 1044 - TABLE CLOTH 61X61 BURGUNDY | 612 |
| 1045 - TABLE CLOTH 72X72 BURGUNDY | 0 |
| 1046 - TABLE CLOTH 85X85 BURGUNDY | 1478 |
| 1050 - NAPKINS RUST | 1600 |
| 1052 - TABLE CLOTH 52X52 RUST | 50 |

14

| | |
|---|---|
| 1053 - TABLE CLOTH 52X114 RUST | 15 |
| 1056 - TABLE CLOTH 85X85 RUST | 60 |
| 1060 - NAPKIN FOREST GREEN | 11950 |
| 1062 - TABLE CLOTH 52X52 FOREST GREEN | 50 |
| 1063 - TABLE CLOTH 52X114 FOREST GREEN | 450 |
| 1066 - TABLE CLOTH 85X85 FOREST GREEN | 430 |
| 1070 - NAPKINS PURPLE | 514 |
| 1072 - TABLE CLOTH 52X52 PURPLE | 75 |
| 1072 - TABLE CLOTH 62X62 PURPLE | 35 |
| 1072 - TABLE CLOTH 72X72 PURPLE | 0 |
| 1073 - TABLE CLOTH 52X114 PURPLE | 48 |
| 1076 - TABLE CLOTH 85X85 PURPLE | 93 |
| 1080 - NAPKIN LAVENDER | 618 |
| 1082 - TABLE CLOTH 52X52 LAVENDER | 36 |
| 1083 - TABLE CLOTH 52X114 LAVENDER | 20 |
| 1086 - TABLE CLOTH 85X85 LAVENDER | 160 |
| 1090 - NAPKINS GOLD | 4100 |
| 1092 - TABLE CLOTH 52X52  GOLD | 50 |
| 1092 - TABLE CLOTH 62X62 GOLD | 30 |
| 1093 - TABLE CLOTH 52X114 GOLD | 35 |
| 1094 - TABLE CLOTH 72X72 GOLD | 15 |
| 1096 - TABLE CLOTH 85X85 GOLD | 72 |
| 1100 - NAPKINS IVORY | 412 |
| 1102 - 52X52 TABLE TOP IVORY | 585 |
| 1103 - 52X120 TABLE TOP IVORY | 736 |
| 1104 - 62X62 TABLE TOP IVORY | 553 |
| 1105 - TABLE CLOTH 61X61 IVORY ELM (GT) | 496 |
| 1106 - 90X90 TABLE TOP IVORY | 506 |
| 1106 - TABLE CLOTH 72X72 IVORY ELM (GT) | 384 |
| 1107 - 120" ROUND IVORY | 65 |
| 1108 - 132" ROUND IVORY | 205 |
| 1109 - 90" ROUND IVORY | 120 |
| 1110 - NAPKIN HOT PINK | 317 |
| 1120 - NAPKIN LIGHT PINK | 245 |
| 1122 - TABLE CLOTH 52X52 LIGHT PINK | 43 |
| 1123 - TABLE CLOTH 52X114 LIGHT PINK | 40 |
| 1126 - TABLE CLOTH 85X85 LIGHT PINK | 24 |
| 1130 - NAPKIN NAVY | 900 |
| 1130 - NAPKIN ROYAL BLUE | 3000 |
| 1132 - TABLE CLOTH 52X52 NAVY | 147 |
| 1132 - TABLE CLOTH 52X52 ROYAL BLUE | 125 |
| 1133 - TABLE CLOTH 52X114 NAVY | 29 |
| 1133 - TABLE CLOTH 52X114 ROYAL BLUE | 457 |

| | |
|---|---|
| 1136 - TABLE CLOTH 85X85 NAVY | 36 |
| 1136 - TABLE CLOTH 85X85 ROYAL BLUE | 495 |
| 1140 - NAPKIN LT BLUE | 418 |
| 1142 - TABLE CLOTH 52X52 LIGHT BLUE | 25 |
| 1143 - TABLE CLOTH 52X114 LIGHT BLUE | 16 |
| 1146 - TABLE CLOTH 85X85 LIGHT BLUE | 36 |
| 1150 - NAPKIN CADET BLUE | 118 |
| 1152 - TABLE CLOTH 52X52 CADET BLUE | 0 |
| 1153 - TABLE CLOTH 52X114 CADET BLUE | 30 |
| 1156 - TABLE CLOTH 85X85 CADET BLUE | 90 |
| 1160 - NAPKIN MAZE | 400 |
| 1162 - TABLE CLOTH 52X52 MAZE | 25 |
| 1163 - TABLE CLOTH 52X114 MAZE | 20 |
| 1166 - TABLE CLOTH 85X85 MAZE | 30 |
| 1170 - NAPKIN STONE GREY | 102 |
| 1172 - TABLE CLOTH 52X52 STONE GREY(DARK) | 0 |
| 1173 - TABLE CLOTH 52X114 STONE GREY(DARK) | 10 |
| 1176 - TABLE CLOTH 85X85 STONE GREY(DARK) | 20 |
| 1180 - NAPKIN PEACH | 600 |
| 1183 - TABLE CLOTH 52X114 PEACH | 50 |
| 1190 - NAPKIN SEAFOAM | 427 |
| 1192 - TABLE CLOTH 52X52 SEAFOAM | 125 |
| 1192 - TABLE CLOTH 62X62 SEAFOAM | 60 |
| 1193 - TABLE CLOTH 52X114 SEAFOAM | 30 |
| 1194 - TABLE CLOTH 72X72 SEAFOAM | 0 |
| 1196 - TABLE CLOTH 85X85 SEAFOAM | 107 |
| 1200 - NAPKIN RED WHITE CHECK | 500 |
| 1202 - TABLE CLOTH 52X52 RED WHITE CHECK | 105 |
| 1203 - TABLE CLOTH 52X114 RED WHITE CHECK | 25 |
| 1206 - TABLE CLOTH 85X85 RED WHITE CHECK | 90 |
| 1210 - NAPKIN TURQUOISE | 300 |
| 1220 - NAPKIN YELLOW | 288 |
| 1230 - NAPKIN SANDLEWOOD | 3164 |
| 1230 - NAPKIN SANDLEWOOD DIAMOND WEAVE | 2593 |
| 1231 - NAPKIN BLACK DIAMOND WEAVE | 3201 |
| 1232 - NAPKIN OLIVE DIAMOND WEAVE | 4217 |
| 1232 - TABLE CLOTH 52X52 SANDLEWOOD | 455 |
| 1233 - TABLE CLOTH 52X114 SANDALWOOD | 513 |
| 1234 - TABLE CLOTH 61X61 SANDLEWOOD | 270 |
| 1235 - TABLE CLOTH 72X72 SANDLEWOOD | 375 |
| 1236 - TABLE CLOTH 85X85 SANDALWOOD | 302 |
| 1238 - TABLE CLOTH 130" ROUND SANDLEWOOD | 209 |
| 1239 - TABLE CLOTH 90" ROUND SANDLEWOOD | 85 |

| | |
|---|---|
| 1243 - TABLE CLOTH 52X114 ROSETTA | 232 |
| 1250 - NAPKIN DOVE GREY | 195 |
| 1266 - TABLE CLOTH 85X85 RASPBERRY | 42 |
| 1270 - NAPKIN ROSETTA | 300 |
| 1290 - NAPKIN WHITE W/ RED STRIPE | 5545 |
| 1300 - MAT SLATE 3 X 4 | 65 |
| 1301 - MAT SLATE 4 X 6 | 87 |
| 1302 - MAT SLATE 3 X 10 | 101 |
| 1307 - MAT NAVY 4X6 | 13 |
| 1308 - MAT NAVY 3X10 | 9 |
| 1317 - MAT RED 3 X 6 | 3 |
| 1318 - MAT RED 4 X 6 | 8 |
| 1319 - MAT RED 3 X 10 | 9 |
| 6401- TOWEL, MICROFIBER | 685 |

### SECTION 1.01(p) OTHER ASSETS:

Except as limited below, all remaining rights, if any, that may exist after Seller's rejection of that certain Second Amended and Restated Employment Agreement with D.W. "Doc" Wiener to the Non-Competition and Non-Solicit Agreement in Paragraph 14 of that employment agreement ("the **Wiener Contract**").  Provided however, Buyer shall be entitled to exercise only those rights and claims under the Wiener Contract arising from and after the Closing Date, with Seller reserving any and all rights and claims pertaining to and arising from the Weiner Contract prior to the Closing Date.

### SECTION 1.02 EXCLUDED ASSETS:

1. All Avoidance Actions;

2. All Insider Claims;

3. Cash in Seller's bank account as of the date of this Agreement [$_____,___.00] and such sums contained in the Seller's bank account on the day immediately preceding the Closing;

4. All insurance benefits, including rights and proceeds, arising from or relating to the Business claims and proceeds under the Liberty Mutual policy of insurance numbers BKS56461008 & EBU066321975.

5. All, insurance benefits, including rights and proceeds, arising from or relating to the Business claims and proceeds under the landlord's policy of insurance for the Leased Property.

6. All insurance benefits, including rights and proceeds, arising from or relating to the any claims and proceeds under the AIG (National Union Fire Insurance Company of Pittsburgh, PA) policy of insurance no. 41921410.

7. All insurance benefits, including rights and proceeds, arising from or relating to the any claims and proceeds under the Insurance Policy Nos. Commercial General Liability (BKS56461008), Automobile Liability (BAS56461008), Umbrella (EBU066321975), Workers Compensation (KWC1075435) and any and all insurance polices for the Seller issued for all periods prior to the Closing Date.

8. All claims and causes of action and Actions, as well as any defenses or offsets claimed with respect to the following:

   (a)  FP Holdings L.P. d/b/a Palms Hotel and Casino arising from or relating to the Laundry Services Agreement dated as of October 10, 2015;

   (b)  Nevada Property 1, LLC d/b/a The Cosmopolitan of Las Vegas arising from or relating to the Linen Services Agreement dated as of August 9, 2016; and

   (c)  The Excluded Contracts.

9. Southwest Gas Bond in the amount of $105,000.

10. Accounts Receivable greater than 90 days late.

11. All property on the Debtor's premises owned by EcoLab, Inc. as listed in and pursuant to that certain agreement with EcoLab dated April 1, 2014.

## SECTION 1.03(d) ASSUMED CONTRACTS:

1. Lease Agreement - 4501 Mitchell (Landlord is 13th Street Property LLC and 13th Street Properties North, LLC)
2. Computer Software Architects LLC - Linen Master Software
3. Southwest Gas Corporation Incremental Natural Gas Facilities Agreement
4. QTS Customer Payroll & HR Solutions
5. Aflac*
6. Health Partners Network – Health Coverage*
7. Principal – Dental Coverage*
8. United Healthcare – Life Coverage & Vision*

* For a period of 65 days following closing only.

20

### SECTION 3.02 CONSENTS:

[None]

## SECTION 3.07 MATERIAL CONTRACTS

1. Lease Agreement -4501 Mitchell (Landlord is Icon Pac Nevada Owner Pool 3 Nevada, LLC) - $8,442
2. Lease Agreement - 13th Street (Landlord is 13th Street Property LLC and 13th Street Properties North, LLC) - $0
3. AT&T - Tablet Computer- $0
4. Balboa Capital – Copier - $0
5. City Of North Las Vegas – Permit - $718,916.74
6. City Of North Las Vegas – Utilities - $154,069.95 pre-petition, $61,573.80 post
7. Computer Software Architects LLC - Linen Master Software - $0
8. De Lage Landen Financial Services, Inc. – Copier - $0
9. *Ecolab – Chemicals - $122,810.25
10. H&E Equipment Services - Forklift / Scissor Lift (Contract Has Buyout Value) - $20,952.63 post-petition
11. Penske Truck Leasing Co., LP – Vehicle / Trailer Leases - $67,694.39
12. New City It – Po System Support - $0
13. Windstream – Internet / Telephone Access - $0
14. Aflac - $0
15. Health Partners Network – Health Coverage - $0
16. Principal – Dental Coverage - $0
17. United Healthcare – Life Coverage & Vision - $0
18. Amtrust North America – Workers Comp 2017 - $0
19. First Insurance – Business Insurance - $0
20. Chem-Aqua, Inc. - Chemical Treatment – 30 Day Out - $3,541.68
21. Intelligent Technical Solutions - Internet / Phone Support - $0
22. Robert Smith - Employment Agreement, CFO - $0
23. Chris McLemore - Employment Agreement, President  - $0
24. Southwest Gas Corporation Incremental Natural Gas Facilities Agreement - $0
25. QTS Customer Payroll & HR Solutions - $0

**The forgoing vendor contracts identified with an \*, constitute Designated Contracts under Section 1.09 of the Agreement.**

### SECTION 3.10  REAL PROPERTY LEASE / SUBLEASE AGREEMENTS:

1)  Mitchell Property;

Identify breach and violation notices for the Leases:

1)  A claimed breach of non-encumbrance provision of Lease as a result of the City of North Las Vegas's lien on the Mitchell Property.

**SECTION 3.13 CUSTOMERS AND SUPPLIERS:**

1) **Customers: 2015 & 2016**

AVI RESORT AND CASINO
BAYSHORE SUITES
COLORADO BELLE
EDGEWATER
EL CORTEZ HSKP
GOLD STRIKE
GOLDEN GATE HOTEL & CASINO
HORIZON SPECIALTY HOSPITAL OF HENDERSON
M RESORT SPA & CASINO
MOUNTAIN'S EDGE HOSPITAL
OSCARS
PIONEER HOTEL AND GAMBLING HALL
R.B. PROPERTIES
RIVERSIDE RESORT RENTAL
SAPPHIRE
THE SERVICE COMPANIES
TOP GOLF
WHISKEY PETES TRUCKSTOP

2) **Suppliers: 2015 & 2016**

13TH STREET PROPERTIES, LLC
ADVANTAGE CAPITAL PARTNERS
AFLAC
ALL HOSE, INC
ALLPRO SERVICES, LLC
ALTERNATIVE OFFICE SYSTEM
AMAZON
AMTRUST
ANDREW S BILLIG, PA
ATLAS COPCO COMPRESSORS, LLC
AUTOMOTIVE WORKWEAR, INC
BALBOA CAPITAL
BARNETT & ASSOCIATES
BEARING BELT CHAIN
BEDSPREADS INC
BEST BUY
BRIGHTLIGHT HOLDINGS, LLC
BRIM LAUNDRY MACHINERY CO.,

INC.
C&L REFRIGERATION
CALDERONE INC
CHEF WORKS, INC.
CHEM-AQUA
CHEMTAINER LOS ANGELES
CHEMTREAT, INC
CLARK COUNTY ASSESSOR
CLARK COUNTY BUSINESS
LICENSE
COLMAC
COMPLETELY CLEAN
COMPUTER SOFTWARE
ARCHITECTS LLC
CONSOLIDATED INT'L CORP
CONSOLIDATED LAUNDRY
MACHINERY
CONSUMERS PIPE
CURTIS STEEL
DEPARTMENT OF AIR QUALITY
DESERT BOILERS & CONTROLS,
INC
DESTINATION, L.A. INC
ECOLAB
ELECTRICAL ENGINEERING &
EQUIP CO - 3E
ELLSWORTH & STOUT, LLC
EMI - ENERGY MECHANICAL
INSULATION
F J G EQUIPMENT CO., INC.
FIRST INSURANCE FUNDING CORP.
FLW, INC
GARNIER THIEBAUT INC
GLOBAL INDUSTRIAL
GOLDEN STAR
GRAINGER
GROVE MADSEN INDUSTRIES
H & E EQUIPMENT SERVICES
HEALTH PLAN OF NEVADA
HENDERSON ELECTRIC MOTORS,
INC
ICON PAC NEVADA OWNER POOL 3
NEVADA

IMPERIAL TEXTILE
INSURANCE OFFICE OF AMERICA
I-WIRE ELECTRICAL SERVICES
JENSEN USA INC
JIMMERSON HANSEN
JL LINEN RECOVERY, INC,
JMAC PLUMBING & AIR
CONDITIONING
K-1 CONSTRUCTION, INC
KLENKE'S THREAD ART
LANDRY'S INC
LARSON & ZIRZOW, LLC
LAVATEC LAUNDRY
LINCOLN NATIONAL LIFE
LOCKTON
MACHANIX FAB INC. OF NV
MCMASTER-CARR
MEDLINE
MEESE ORBITRON DUNNE CO.
MICHELLI MEASUREMENT GROUP,
LLC
MIP INC
MODROTO
MOTION INDUSTRIES, INC
MOUNT VERNON MILLS, INC/
RIEGEL
MOUNTVILLE MILLS INC
NATIONAL SWAMP COOLER, LLC
NEVADA DEPARTMENT OF
TAXATION
NEVADA HOTEL & LODGING
ASSOCIATION
NEW IMAGE DRY CLEANING
NV ENERGY
PARALLON
PENSKE
PHILIPPE PAGEAU GOYETTE
PREMIER DRY CLEANING &
LAUNDRY
PRINCIPAL FINANCIAL GROUP
PURVIS INDUSTRIES
PYRO
REED MANUFACTURING CO, INC
REGENT APPAREL

REM COMPANY
R. F. MACDONALD CO
SHAMRON MILLS
SHIMMER CLOTHING COMPANY
SOBEL WESTEX
SOFTCONTROL SYSTEMS INC.
SOUTHWEST GAS CORPORATION
SOUTHWEST LAUNDRY
EQUIPMENT LLC
SPRINT
STAHELI LAUNDRY SERVICES, LLC
STEPSAVER, INC
STORMS INDUSTRIES, INC
SURPLUS SALT
SWIFT ELECTRICAL SERVICES, INC
TALLEY MACHINERY
TEMPRITE AIR CONDITIONING
THE COMPHY CO., INC
THE LAUNDRY LIST
THERMAL ENGINEERING OF
ARIZONA
TICKET MEDIA, INC
TIFCO INDUSTRIES
TINGUE BROWN & CO
TMC CORP
TPM SERVICES, LLC
UNIPRESS CORP
UNITED CLEANERS SUPPLY, INC
UNITED MACHINE & TOOLS
VEGAS TICKETS
VELOCITY TRUCK RENTAL &
LEASING
VENUS GROUP
WAXIE SANITARY SUPPLY
WELL EQUIPMENT, INC.
WESTERN STATE DESIGN, INC
WINDSTREAM

Each Customer and Supplier identified in the below table with "*italics*" has canceled, terminated or otherwise been materially altered its relationship with the Business.

**Customers: 2015 & 2016**

*ANDIRON*
*BEAUTY AND ESSEX*
*CHARTHOUSE*
*CHATEAU NIGHT CLUB*
*CHAYO*
*CHLOE & LAUREN ENTERPRISES*
*COSMOPOLITAN OF LAS VEGAS*
*EAT. RESTAURANT*
*FIREROCK STEAKHOUSE*
*GOLDEN NUGGET*
*HONEY SALT*
*HOWARD JOHNSONS*
*FP HOLDING L.P. D/B/A THE PALMS CASINO RESORT*
*LAUGHLIN RIVER LODGE*
*LAVO KITCHEN*
*LVS*

*MARCHE BACCHUS*
*MARQUEE*
*MGM GRAND LAUNDRY*
*MINT INDIAN BISTRO*

*MOUNTAINVIEW HOSPITAL*
*NEW IMAGE DRY CLEANERS*
*PALMS CASINO RESORT*
*PALMS PLACE HOTEL AND SPA*
*PANCHO'S RESTAURANT*
*PIEROS*
*RAILROAD PASS*
*RAILROAD CLEANERS D/B/A RRC COMMERCIAL INC.*
*RIVIERA HOTEL & CASINO*

*SICILIAN RISTORANTE*
*SKINNY FATS*
*SKINNY FATS-DEAN MARTIN*
*SOUTHERN HILLS*
*SPIEDINI RISTORANTE*
*TAHITI VILLAGE*

*TAO*
*THE JADE RESTAURANT*
*WYNDHAM DESERT BLUE*
*TREASURE ISLAND HOTEL AND CASINO*
*TROPICANA EXPRESS*
*TUSCANY SUITES AND CASINO*
*VIC & ANTHONY'S*
*YOU GOT IT MAID*

**Suppliers: 2015 & 2016**

*ACR MECHANICAL, INC.*
*BALTIC LINEN*
*BENJAMIN JONES*
*BRADSHAW, SMITH & CO., LLP*
*BRE/ PAC INDUSTRIAL REIT INC*
*CENTURY LINK*
*CITY OF NORTH LAS VEGAS*
*COHEN JOHNSON, LLC*
*INTELLIGENT TECHNICAL SOLUTIONS, INC*
*JAMES BARTON*
*LOVATO LAW FIRM, P.C.*
*M RESORT, LLC*
*PALMS CASINO*
*SCHWARTZ FLANSBURG PLLC*
*SNELL & WILMER*

## SECTION 3.14 BREACH STATUS OF ASSUMED CONTRACTS

1)      Lease Agreement - 4501 Mitchell (Landlord is 13th Street Property LLC and 13th Street Properties North, LLC) See description in Section 3.10 of these Disclosure Schedules above.

2)      Health Partners Network – Health Coverage. Due on May 1, 2017, Delinquent May 31, 2017.

3)      Principal – Dental Coverage Due on May 1, 2017, Delinquent May 31, 2017.

4)      United Healthcare – Life Coverage & Vision Due on May 1, 2017, Delinquent May 31, 2017.

### SECTION 3. 15 INTELLECTUAL PROPERTY:

The name "Superior Linen, LLC"

### SECTION 3. 17(b) PERMITS:

| License / Permit | Identifying Number and Expiration Date | Transferable / Not Transferrable |
| --- | --- | --- |
| **State of Nevada Business License** | Entity No. E0023152010-01 Expiration 01/31/2018 | Not Transferrable |
| **City North Las Vegas Business License** | License No. 99418 – Expiration 07/31/2017 | Not Transferrable |
| **Clark County Business License** | License No. 2000465-081-102 – Expiration 07/31/2017 | Not Transferrable |
| **Boiler/Pressure Vessel Operating Permit – Nevada Department of Business and Industry** | User Location No. 3476815 – Expiration 11/05/2016 | Not Transferrable |
| **Restricted Waste Management Permit – Southern Nevada Health District** | Permit No. PR0030021 Expiration 12/31/2017 | Not Transferrable |
| **Wastewater Contribution Permit – City of North Las Vegas** | Permit No. Class I Expiration 03/31/2020 | Not Transferrable |
| **Minor Source Permit - Clark County Department of Air Quality** | Source: 17210 Expiration August 16, 2017 | Not Transferrable |
| **1995 GMC Truck Nevada Vehicular License** | | Not Transferrable |

## SECTION 3. 18 LEGAL PROCEEDINGS:

1)     Except for the Bankruptcy Case, no other Legal Proceedings are pending in the name of or against Seller

### SECTION 3. 20 BENEFIT PLAN:

**[SELLER UPDATING THIS SCHEDULE]**

Qualified Benefit Plan:

1) None


Threatened Action Relating to Benefit Plan:

1) None

COBRA plan(s) and employee with COBRA or in a COBRA election period:

|   |   | Sierra Health | Principal Dental |
|---|---|---|---|
| 1) | Linda Rayne | x | |
| 2) | Michael Browne | x | x |
| 3) | Carlos Arellano | x | x |
| 4) | Stephen Edwards Jr | x | |
| 5) | Anthony Fraire | x | x |
| 6) | Jesse Fraire | | x |
| 7) | Adelaida Jackson | x | x |
| 8) | Oliver Guerrero | x | |
| 9) | DW Wiener | x | x |
| 10) | Lance Yamashita | x | x |

X denotes COBRA accepted
X denotes COBRA offered, no decision

Benefit Plan Changes:

1) Sierra Health renews May 1, 2017 with 3% increased premiums

34

### SECTION 3. 21(a) QUALIFIED BENEFIT PLAN:

| Name | Amount | Position | |
|------|--------|----------|---|
| McLemore, Chris | $ ███.23 | President | Biweekly |
| Smith, Robert | $ ███.38 | CFO | Biweekly |
| Cardoza, Olga | $ ███.62 | 1st Prod. Manager | Biweekly |
| Taboada, Hortencia | $ ███.38 | 1st Prod. Supervisor | Biweekly |
| Drake, Evangeline | $ ███.31 | Sr. Accountant | Biweekly |
| Goodrich, Jordon | $ ███.38 | Analyst | Biweekly |
| Calvert, Bradley | $ █.00 | AR/Billing | Hourly |
| Pierce II, Perry | $ ██.00 | Service Manager | Biweekly |
| Amaya, Juan Carlos | $ █.00 | Driver | Hourly |
| Blackwell, Kenneth | $ █.00 | Driver | Hourly |
| Brown, Derrick | $ █.00 | Driver | Hourly |
| Creecy, Jimi | $ █.00 | Driver | Hourly |
| Cruz Martinez, Marco | $ █.00 | Driver | Hourly |
| Davis, Andrea | $ █.00 | Driver | Hourly |
| Ellison, Chris | $ █.75 | Driver | Hourly |
| Gaspar, Mario | $ █.00 | Driver | Hourly |
| Monje, Robert | $ █.00 | Driver | Hourly |
| Sanchez, Luis | $ ██.00 | Driver | Biweekly |
| Soriano, Arturo | $ █.00 | Driver | Hourly |
| Tucker, Carlos | $ █.00 | Driver | Hourly |
| Velazquez, Pedro | $ █.00 | Driver | Hourly |
| Williams, Rufus | $ █.00 | Driver | Hourly |
| Kamakeeaina, Ron | $ ██.00 | Route/Inv. Supervisor | Biweekly |
| Perez, Mayra | $ █.00 | Inventory/Ragout | Hourly |
| Ramirez Sanchez, Ana | $ █.00 | Inventory/Ragout | Hourly |
| Adams, Taylor | $ █.60 | Route /Inventory | Hourly |
| Bowen, Kenneth | $ █.60 | Route /Inventory | Hourly |
| Fajardo, Jorge | $ █.00 | Route /Inventory | Hourly |
| Franco, Jvan | $ █.50 | Route /Inventory | Hourly |
| Plasencia, Luis | $ █.00 | Route /Inventory | Hourly |
| Ramirez, Ricardo | $ █.60 | Route /Inventory | Hourly |
| Torres-Rios, Norma | $ █.60 | Route /Inventory | Hourly |
| Flores, Victor | $ █.00 | Inventory Laughlin | Hourly |
| Limon, Teresa | $ █.00 | Inventory LV | Hourly |
| Alvarado Pena, Carlos | $ █.75 | 1st Shift Production | Hourly |

| | | | |
|---|---|---|---|
| Amador de Ruelas, Agustina | $ | .75 | 1st Shift Production | Hourly |
| Balandran, Janet | $ | .75 | 1st Shift Production | Hourly |
| Barboza De Araujo, Paula | $ | .75 | 1st Shift Production | Hourly |
| Cabrera De Vaquerano, Maria | $ | .75 | 1st Shift Production | Hourly |
| Carriedo, Veronica | $ | .25 | 1st Shift Production | Hourly |
| Castillo, Martha | $ | .00 | 1st Shift Production | Biweekly |
| Cortes, Griselda | $ | .25 | 1st Shift Production | Hourly |
| Cruz, Timoteo | $ | .25 | 1st Shift Production | Hourly |
| Duran, Maria | $ | .75 | 1st Shift Production | Hourly |
| Espinosa Molar, Esmeralda | $ | .25 | 1st Shift Production | Hourly |
| Flores De Nava, Maria | $ | .50 | 1st Shift Production | Hourly |
| Flores De Sandoval, Judith | $ | .75 | 1st Shift Production | Hourly |
| Garcia De Alcantar, Josefina | $ | .50 | 1st Shift Production | Hourly |
| Garcia, Karen | $ | .75 | 1st Shift Production | Hourly |
| Garcia, Martha | $ | .00 | 1st Shift Production | Hourly |
| Gaspar, Angelina | $ | .75 | 1st Shift Production | Hourly |
| Guillen-Madrigal, Maria | $ | .00 | 1st Shift Production | Biweekly |
| Hernandez, Guadalupe | $ | .75 | 1st Shift Production | Hourly |
| Jimenez, Honoria | $ | .50 | 1st Shift Production | Hourly |
| Leon, Mirian | $ | .25 | 1st Shift Production | Hourly |
| Leyva, Maria | $ | .75 | 1st Shift Production | Hourly |
| Maldonado, Lesly | $ | .25 | 1st Shift Production | Hourly |
| Martinez, Lucia | $ | .75 | 1st Shift Production | Hourly |

| Montes, Soledad | $ | .75 | 1st Shift Production | Hourly |
| Moreno, Rosio | $ | ).75 | 1st Shift Production | Hourly |
| Mungia-Juarez, Maria Del Rosari | $ | .75 | 1st Shift Production | Hourly |
| Muro, Roy | $ | .00 | 1st Shift Production | Biweekly |
| Ortiz, Christal | $ | .25 | 1st Shift Production | Hourly |
| Padron, Roberto | $ | .75 | 1st Shift Production | Hourly |
| Pena, Rosa | $ | .25 | 1st Shift Production | Hourly |
| Posadas, Claudia | $ | .25 | 1st Shift Production | Hourly |
| Pruna, Irene | $ | .75 | 1st Shift Production | Hourly |
| Ramirez, Elizabeth | $ | .75 | 1st Shift Production | Hourly |
| Ramirez, Guadalupe | $ | .75 | 1st Shift Production | Hourly |
| Reyes, Luisa | $ | .00 | 1st Shift Production | Biweekly |
| Rodriguez, Miguel | $ | ).75 | 1st Shift Production | Hourly |
| Rodriguez, Miguel | $ | .25 | 1st Shift Production | Hourly |
| Rodriguez, Raquel | $ | .75 | 1st Shift Production | Hourly |
| Rosales Ayala, Ricardo | $ | .00 | 1st Shift Production | Hourly |
| Senda, Maria | $ | .00 | 1st Shift Production | Biweekly |
| Soto De Perez, Herlinda | $ | .00 | 1st Shift Production | Hourly |
| Villalobos, Yosahandy | $ | .25 | 1st Shift Production | Hourly |
| Zavala, Mariano | $ | .25 | 1st Shift Production | Hourly |
| Zepeda De Lerena, Micaela | $ | .25 | 1st Shift Production | Hourly |
| Zuniga Montes, Aurora | $ | .25 | 1st Shift Production | Hourly |
| Arce Paredes, Gloria | $ | .25 | 2nd Shift Production | Hourly |

| | | | | |
|---|---|---|---|---|
| Arteaga Jimenez, Jhonatan | $ | .00 | 2nd Shift Production | Hourly |
| Aviles, Virginia | $ | .25 | 2nd Shift Production | Hourly |
| Ayala Rochin, Magnolia | $ | ▬▬ | 2nd Shift Production | Biweekly |
| Brown, Latashia | $ | .25 | 2nd Shift Production | Hourly |
| Carmona Campos, Crystal | $ | .25 | 2nd Shift Production | Hourly |
| Castaneda, Deysi | $ | .00 | 2nd Shift Production | Hourly |
| Chavez, Amelia | $ | .25 | 2nd Shift Production | Hourly |
| Cisneros Leon, Maria | $ | .25 | 2nd Shift Production | Hourly |
| Dean, Lou | $ | .25 | 2nd Shift Production | Hourly |
| Diaz, Rosa | $ | .25 | 2nd Shift Production | Hourly |
| Ferguson Jr, Kenneth Bernard | $ | .25 | 2nd Shift Production | Hourly |
| Garcia Silva, Isela | $ | .25 | 2nd Shift Production | Hourly |
| Gonzalez, Juana | $ | .25 | 2nd Shift Production | Hourly |
| Gonzalez, Maria | $ | ▬▬ | 2nd Shift Production | Biweekly |
| Gonzalez, Walter | $ | .25 | 2nd Shift Production | Hourly |
| Guerrero Maldonado, Alejandra | $ | .25 | 2nd Shift Production | Hourly |
| Hernandez Morga, Ana | $ | .75 | 2nd Shift Production | Hourly |
| Juarez, Angel | $ | .50 | 2nd Shift Production | Hourly |
| Malanog, Johny | $ | .25 | 2nd Shift Production | Hourly |
| Maldonado, David | $ | .25 | 2nd Shift Production | Hourly |
| Meadows III, Joe | $ | .25 | 2nd Shift Production | Hourly |
| Mendez Pacheco, Marta | $ | .25 | 2nd Shift Production | Hourly |
| Menjivar De | $ | .25 | 2nd Shift | Hourly |

| Name | | Shift/Dept | Pay Type |
|---|---|---|---|
| Navarro, Maritza | $ | Production 2nd Shift | Hourly |
| Morrison, Charles | $ ⬛.00 | Production 2nd Shift | Hourly |
| Munoz Lopez, Celia | $ ⬛.25 | Production 2nd Shift | Hourly |
| Munoz, Alejandro, Jr | $ ⬛.25 | Production 2nd Shift | Hourly |
| Ochoa De Camacho, Adelina | $ ⬛.25 | Production 2nd Shift | Hourly |
| Pinto-Perez, Ricardo | $ ⬛.50 | Production 2nd Shift | Hourly |
| Ramirez Gonzalez, Luz | $ ⬛.25 | Production 2nd Shift | Hourly |
| Ramirez, Natividad | $ ⬛.00 | Production 2nd Shift | Hourly |
| Razo Becerra, Juana | $ ⬛.25 | Production 2nd Shift | Hourly |
| Resendi, Yoselin | $ ⬛.25 | Production 2nd Shift | Hourly |
| Rodriguez, Susana | $ ⬛.25 | Production 2nd Shift | Hourly |
| Sian Rojas, Ingrid Meliza | $ ⬛.00 | Production 2nd Shift | Hourly |
| Sian Rojas, Melany | $ ⬛⬛⬛ | Production 2nd Shift | Biweekly |
| Turner, Tiffany | $ ⬛.25 | Production 2nd Shift | Hourly |
| Villalobos, Maria De Lourdes | $ ⬛.00 | Production 2nd Shift | Hourly |
| Wilson, Melveen | $ ⬛.25 | Production 2nd Shift | Hourly |
| Zaragoza, Angel | $ ⬛.25 | Production 2nd Shift | Hourly |
| Zendejas-Garcia, Javier | $ ⬛.00 | Production 2nd Shift | Hourly |
| Aguilar, Jesus | $ ⬛⬛⬛ | 1st Shift Soil | Biweekly |
| Artiga, Henry | $ ⬛.75 | 1st Shift Soil | Hourly |
| Elam, Lawrence | $ ⬛.25 | 1st Shift Soil | Hourly |
| Garcia Correa, Raul | $ ⬛.00 | 1st Shift Soil | Hourly |
| Huizar Iboa, Jacinto | $ ⬛.25 | 1st Shift Soil | Hourly |
| Jimenez, Oscar | $ ⬛.25 | 1st Shift Soil | Hourly |
| Jones, Darlett Keione | $ ⬛.25 | 1st Shift Soil | Hourly |
| Ocegueda, Tomas | $ ⬛.75 | 1st Shift Soil | Hourly |
| Pleites, Santos | $ ⬛.75 | 1st Shift Soil | Hourly |
| Verdin Mencias, | $ ⬛.75 | 1st Shift Soil | Hourly |

Jose

| Name | Amount | Shift | Pay |
|---|---|---|---|
| Alcantar, Juan | $ ▮.00 | 2nd Shift Soil | Hourly |
| Alvarez -Torrez, Elizabeth | $ ▮.25 | 2nd Shift Soil | Hourly |
| Baca JR, Eugene | $ ▮▮▮ | 2nd Shift Soil | Biweekly |
| Barnes, Joshua | $ ▮.50 | 2nd Shift Soil | Hourly |
| Burks, Michael | $ ▮.25 | 2nd Shift Soil | Hourly |
| Carreon, Sergio | $ ▮.50 | 2nd Shift Soil | Hourly |
| Ibarra Mendoza, Irene | $ ▮.25 | 2nd Shift Soil | Hourly |
| James, Margaret | $ ▮.25 | 2nd Shift Soil | Hourly |
| Lopez, Joevany | $ ▮.25 | 2nd Shift Soil | Hourly |
| Ransey, Anthony | $ ▮.00 | 2nd Shift Soil | Hourly |
| Uribe, Jose | $ ▮.00 | 2nd Shift Soil | Hourly |
| Vira, Eleanor | $ ▮.25 | 2nd Shift Soil | Hourly |
| Alonzo, Edgar | $ ▮.00 | 1st Shift Tunnel | Hourly |
| Farias, Octavio | $ ▮▮▮ | 1st Shift Tunnel | Biweekly |
| Gonzalez Ortega, Rafael | $ ▮.00 | 1st Shift Tunnel | Hourly |
| Lerena, Antonio | $ ▮.00 | 1st Shift Tunnel | Hourly |
| Martinez, Isidro | $ ▮.00 | 1st Shift Tunnel | Hourly |
| Pacheco - Hernandez, Omar | $ ▮.00 | 1st Shift Tunnel | Hourly |
| Palacios - Servin, Juan | $ ▮.00 | 1st Shift Tunnel | Hourly |
| Quintero, Manuel | $ ▮.00 | 1st Shift Tunnel | Hourly |
| Rios Ruiz, Sergio | $ ▮▮▮ | 1st Shift Tunnel | Biweekly |
| Robles, Sebastian | $ ▮.00 | 1st Shift Tunnel | Hourly |
| Zenedejas Garcia, Noe | $ ▮.00 | 1st Shift Tunnel | Hourly |
| Becerril, Jessi | $ ▮.50 | 2nd Shift Tunnel | Hourly |
| Brown, Ledell | $ ▮.50 | 2nd Shift Tunnel | Hourly |
| Carrasco Ramirez, Adan | $ ▮.00 | 2nd Shift Tunnel | Hourly |
| Escageda, Omar | $ ▮▮▮ | 2nd Shift Tunnel | Biweekly |
| Gonzalez, Manuel | $ ▮▮▮ | 2nd Shift Tunnel | Biweekly |
| Hornsby, Marcus | $ ▮.50 | 2nd Shift Tunnel | Hourly |
| Jackson, Alvin | $ ▮.00 | 2nd Shift Tunnel | Hourly |
| Vazquez Alvarado, Oscar | $ ▮.00 | 2nd Shift Tunnel | Hourly |
| Williams, Avrian | $ ▮.00 | 2nd Shift Tunnel | Hourly |
| Brown, Elizabeth | $ ▮▮▮ | Garments | Biweekly |
| Brown, Ingreid | $ ▮.00 | Garments | Hourly |
| Elias, Emilia | $ ▮.75 | Garments | Hourly |
| Flores, Azucena | $ ▮.50 | Garments | Hourly |
| Foster, Kerry | $ ▮.25 | Garments | Hourly |

| | | | |
|---|---|---|---|
| Hampton, Krystal | $ ▮.75 | Garments | Hourly |
| Moore, Jessica | $ ▮.00 | Garments | Hourly |
| Adams, Carlos | $ ▮.00 | Janitor | Hourly |
| Bastida, Andres | $ ▮.25 | Janitor | Hourly |
| Chavez Rodriguez, Ezequiel | $ ▮.00 | Janitor | Hourly |
| Herrera, Miguel | $ ▮.00 | Janitor | Hourly |
| Mattos, Ivan | $ ▮.00 | Janitor | Hourly |
| Morrill, Jesse | $ ▮.25 | Janitor | Hourly |
| Bigelow, Michael | $ ▮.00 | Engineer | Hourly |
| De Leon Landero, Efrain | $ ▮.00 | Engineer | Hourly |
| Edwards Sr., Stephen | $ ▮ | Engineer | Biweekly |
| Guereca, Joshua | $ ▮.00 | Engineer | Hourly |
| Johnson, Jeremy | $ ▮ | Engineer | Biweekly |
| Mosier, Christopher | $ ▮.00 | Engineer | Hourly |
| Rios-Mora, Sergio | $ ▮.00 | Engineer | Hourly |

### SECTION 3. 22 TAXES:

1)    LLC 2016 extension filed, taxes have not been filed, but will be filed timely by Seller.
2)    Personal Property tax ~ $43,498.77
3)    Penalty to IRS for late filing payroll taxes for 3rd & 4th Qtr. 2016 & 1st Qtr. 2017 $58,662.42
4)    Penalty to IRS for late filing 2015 return $13,650.
5)    Payroll taxes Due 5/3/17 (~$51k), 5/17/17 (~$44k), 5/31/17 (~$43k) & 6/5/17 (~$21k)
6)    Modified Business Tax $22,906.27 (due 4/30/17) & 2nd Qtr. (not yet invoiced)

# EXHIBIT B

## SETTLEMENT AND RELEASE AGREEMENT

This SETTLEMENT AND RELEASE AGREEMENT (the "Agreement") is entered into as of May___, 2017 (the "Execution Date") by and between SUPERIOR LINEN, LLC, a Nevada limited liability company, as debtor and debtor in possession (the "Debtor" or "Superior Linen" as applicable); and the CITY OF NORTH LAS VEGAS, a Nevada municipal corporation (the "City" and together with the Debtor, the "Parties" or each as a "Party").

**Deleted:** among

**Deleted:** "); and ICON PAC NEVADA OWNER POOL 3, NEVADA, LLC, a Delaware limited liability company, as successor landlord (the "Landlord

**Deleted:** and the City

**Deleted:** ,"

**Formatted:** Font color: Auto

## RECITALS

A.    Superior Linen is a full service commercial laundry company providing the entire spectrum of laundry services to hotels and food and beverage managed restaurants and clubs.

B.    On or about July 26, 2011, Superior Linen, as tenant, entered into a Lease Agreement (as amended, the "Lease Agreement") with Prologis NA3, LLC, a Delaware limited liability company ("Prologis"), as original landlord, for a building located in the Nellis Industrial Park with an address of 4501 Mitchell Street, North Las Vegas, Nevada 89081 (as amended, the "Premises"). The Lease Agreement was later amended pursuant to that certain First Amendment to Lease dated as of June 22, 2012, and then again pursuant to that certain Second Amendment to Lease Agreement dated as of May 16, 2014. In or about 2015, Icon Pac Nevada Owner Pool 3, Nevada, LLC, a Delaware limited liability company, as successor landlord (the "Landlord") became the successor landlord of the Premises and assumed all rights, liabilities and remedies under the Lease Agreement in its then current form as amended.

**Formatted:** Underline

C.    Superior Linen is also obligated to pay certain sums to the City over time as and for wastewater/sewerage connection fees for industrial laundries as well as normal monthly utility charges. On or about July 30, 2014, the City and Superior Linen entered into a Confession of Judgment, which included certain repayment schedules and a settlement agreement with the City. On or about February 1, 2015, the City and Superior Linen entered into a Settlement Agreement and Release, which included an additional Confession of Judgment.

**Deleted:** "

D.    Prior to the Petition Date, Superior Linen defaulted on its payment arrangement(s) with the City, and thus the City recorded a Notice of Lien for Unpaid Utilities Charges against the Premises in the Official Records of the County Recorder, Clark County, Nevada on September 22, 2016 at Instrument 20160922-0000141 (the "Notice of Lien") in the amount of $893,667.33. The recordation of the Notice of Lien on the Premises is a breach of the Lease Agreement.

E.    On September 30, 2016 (the "Petition Date"), the Debtor filed its voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Nevada (the "Bankruptcy Court"), thereby commencing its bankruptcy case, Case No. 16-15388-mkn (the "Chapter 11 Case"). Debtor is authorized to operate its business and manage its property as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

F.    On January 24, 2017, the Bankruptcy Court entered an order granting an adequate assurance utility deposit to the City pursuant to section 366 of the Bankruptcy Code in the amount of $85,000.00 (the "Deposit"), which the Debtor has posted with the City and which

**Deleted:** 00042679

**Formatted:** Font: 8 pt

**Deleted:**

deposit remains unapplied as of the Execution Date.

G.    On February 1, 2017, the City filed a Proof of Claim, being Claim No. 33 in the amount of $905,387.08, and on that same date the Landlord filed its Proof of Claim, being Claim No. 34, in the amount of $902,179.93.

H.    The Debtor is indebted to the City for utility services, and wastewater/sewerage connection fees, among other items, in the total amount of $875,341.15, plus outstanding utility services bills through May 31, 2017 in the total amount of $154,814.00, plus additional monthly utility service amounts thereafter through the time the Transaction closes (the "Debtor Allocated Portion of the Final Utility Bills"). As of the Execution Date of this Agreement, the Landlord asserts a total cure claim under the Lease pursuant to section 365 of the Bankruptcy Code in the amount of $931,283.24, plus the Debtor Allocated Portion of the Final Utility Bills (collectively, the "Cure Obligation").

I.    Debtor is proposing to sell substantially all of its assets to Las Vegas Linen, LLC, a Nevada limited liability company (the "Buyer"), pursuant to section 363 of the Bankruptcy Code, which transaction also contemplates the assumption and assignment of the Lease by the Debtor to the Buyer pursuant to section 365 of the Bankruptcy Code (collectively, the "Transaction"). Pursuant to the terms and conditions of this proposed Transaction, which is subject to approval by the Bankruptcy Court, the Buyer has agreed to pay as an assumed liability the sum of $750,000.00 of the Cure Obligation owing to the City over time as set forth herein; provided, however, that, among other matters: (1) the Transaction is approved by the Bankruptcy Court as presented on or before May 30, 2017; (2) this Agreement is approved by the Debtor, the City, and the Bankruptcy Court on or before the approval of the Transaction; and (3) the Transaction Closes. In connection with the Transaction Close the $85,000 Deposit will become the property of the Buyer. Upon the execution of this Agreement the $85,000 Deposit will be posted for the benefit of the Buyer's account with the City.

J.    Except as expressly set forth herein, and subject to the terms and conditions herein, the Parties, without conceding or admitting liability, have concluded that it serves their respective interests to avoid the expenditure of additional time, effort and resources in litigating their disputes and in continuing their various proceedings and litigation against or involving each other, and that they now wish to fully, finally and forever settle and compromise their claims and disputes against each other, including but not limited to any and all claims to attorney's fees, costs, and other expenses, and to release, discharge and terminate all claims, demands, controversies, suits, causes of action, damages, rights, warranties, liabilities and obligations, and which either have been asserted or which could be asserted against each other.

NOW, THEREFORE, in consideration of the promises, undertakings, payments, and releases stated in this Agreement, which the Parties acknowledge to be sufficient consideration, the Parties agree as follows:

1.    **Bankruptcy Court Approval.** The effectiveness of this Agreement is contingent upon the entry of an order authorizing and approving the Transaction and this Agreement and the Closing of the Transaction as contemplated by the Sale Motion. Within one (1) business day of the receipt of signatures on this Agreement and the Asset Purchase Agreement for the

Deleted: As of the Execution Date of this Agreement, the

Deleted: current

Deleted: due

Deleted: 1

Deleted: 55,942.10

Formatted: Underline

Formatted: Highlight

Deleted: ,

Deleted: the Landlord,

Deleted: 00042679

Formatted: Font: 8 pt

Deleted:

{00042879.DOCX; 1 UT-0047}    2

4830-2926-6505

Transaction, the Debtor shall file a motion with the Bankruptcy Court seeking to authorize and to approve this Agreement (the "Settlement Motion"), and shall use their commercially reasonable best efforts to obtain such approval of the same. The proposed form of Settlement Motion and Settlement Order must be in a form and substance reasonably acceptable to the Parties as well as the Buyer prior to it being filed with the Bankruptcy Court.

2.  **The Assumed Payment by the Buyer**.  Subject to the terms and conditions herein, the Debtor shall assume the obligation to repay the principal sum of up to $750,000 of the Cure Obligation to the City (the "Assumed Payment"), which shall thereafter be assumed by the Buyer pursuant to the terms and conditions of the Asset Purchase Agreement. The Assumed Payment shall be made on the payment schedule as attached hereto as **Exhibit 1**. The Assumed Payment shall be made as follows:

- Within five days of the Closing of the Transaction, the Buyer will make a payment of $60,000 to the City;

- The remaining amount of $690,000 shall accrue interest at the rate of 2.03% and shall be paid in full in thirty-six (36) equal monthly payments, with payments beginning as set forth in Exhibit 1.

- However, if the Buyer fails to make the first twenty-four (24) month payments on time, or otherwise defaulted on its obligations to the City, the City will be entitled to full repayment on the remainder of the amount owing at the end of the twenty-four (24) month period.

3.  **The Remaining Payment by the Debtor**.  Subject to the terms and conditions herein, the Debtor shall immediately pay to the City the balance of the Cure Obligation in excess of the $750,000 Assumed Payment, being the sum of $$280,155.10, plus the Debtor Allocated Portion of the Final Utility Bills, shall be paid by the Debtor directly from escrow from the Transaction and thus directly from the proceeds of sale received by the Debtor from the Buyer.

4.  **Confession of Judgment by Buyer**.  The Buyer and the City shall execute a Confession of Judgment in favor of the City containing the terms and conditions of this Agreement, and that Confession of Judgment is for security purposes only and shall not be filed or executed upon unless an Event of Default occurs that is not cured or not given an extended period of time to cure.  Further, AMCP Clean Acquisition Company LLC and AMCP Clean Subsidiary Holdco, LLC will execute a guaranty, guarantying the Buyer's obligation to the City (the "Guaranty").  The signed Confession of Judgment and Guaranty are attached hereto as **Exhibit 3** for reference.

5.  **City's Consent and Release of Current Lien(s)**.  In consideration of the payments and the assumption of liabilities in this Agreement, the City approves of, and waives any objection to the approval of the Transaction, the assumption of the Lease by the Debtor, the assignment of the Lease to the Buyer.  The City also agrees to release any and all existing liens on the Premises, which shall be effectuated by the City through the recordation of the Extinguishment and Release (the "Extinguishment & Release") attached hereto as **Exhibit 2** in the Official Records.  After the Transaction closes, the City shall have thirty (30) days to record

Deleted: ,

Deleted: has failed

Deleted: $181,283.25

Formatted: Widow/Orphan control, Keep with next

Deleted: Acquisition

Deleted:

Deleted: ¶
**Landlord's Consent**.  In consideration of the payments and assumed liabilities in this Agreement, the Landlord approves of, and waives any objection to the approval of the Transaction, the assumption of the Lease by the Debtor, the assignment of the Lease to the Buyer.  Nothing herein is intended or should be construed as a waiver or release of any obligations that may arise under the Lease from and after the Execution Date of this Agreement, which shall be the sole and exclusive responsibility of the Buyer.

Deleted: 00042679

Formatted: Font: 8 pt

Deleted:

the Extinguishment and Release. The City's release of lien shall be without prejudice to the default remedies provided under the City's municipal code, state law or elsewhere in this Agreement. Nothing herein is intended or should be construed as a waiver or release of any obligations that may arise under the Lease from and after the Transaction Closing, which shall be the sole and exclusive responsibility of the Buyer.

6.    **Events of Default for the Assumed Payment.**  Superior Linen or Buyer after assumption and assignment as applicable, shall be in default under this Agreement upon the occurrence and continuation of any one or more of the following events (the "Events of Default"):

a.    Superior Linen, or Buyer after the assumption and assignment of this Agreement, fails to timely make the payments contemplated in Section 2, above, or any other payment that comes due, and does not cure that failure within fifteen (15) days of being provided with written notice of such default,

b.    Buyer becomes insolvent or is the subject of any bankruptcy or other voluntary or involuntary proceeding in our out of court, for the adjustment of debtor-creditor relationships;

c.    Buyer dissolves or liquidates or is administratively suspended or dissolved. For the avoidance of doubt, any withdrawal, removal, transfer, or change in membership interests of the Buyer shall not be an Event of Default.

d.    Any governmental, judicial, or legal authority having jurisdiction over the Buyer or its business withdraws, suspends, or revokes any required approval, license, certificate, or permit and the withdrawal, suspension, or revocation remains in effect for a period of sixty (60) days (the "Initial Cure Period"). So long as Buyer begins within the Initial Cure Period and diligently takes steps to remove the cause of the withdrawal, suspension, or revocation, and the City, after meeting and consulting with the Buyer, and the City determines that the Buyer is reasonably likely to prevail, the Initial Cure period may be extended by a period not to exceed ninety (90) days.

7.    **Default Remedies.**  If an Event of Default occurs and remains uncured, and Buyer fails to comply with the conditions of this Agreement, any or all of the following may occur:

a.    All amounts of principal and interest under this Agreement shall be accelerated and immediately due and payable within five (5) Business Days of transmission of a written notice of default, presentment or demand for payment, protest or notice of nonpayment or dishonor or other notices or demands of any kind or character;

b.    Any outstanding amounts due and owing, at the option of the City, shall bear additional interest at an annual rate of 2.03% (the "Default Rate");

| Deleted: default rate |
| Deleted: 00042679 |
| Formatted: Font: 8 pt |
| Deleted: |

    **c.**    The City may record the Confession of Judgment and seek to enforce the Guaranties or otherwise execute the Confession of Judgment to satisfy any outstanding amounts due and owing, including amounts due for any default rate of interest; and

    **d.**    The City may pursue any of its other rights and remedies under the City's municipal code and/or state law, including recordation of a lien on the Premises for the amount that remains unpaid and any future or additional amounts owing to the City.

    **8.**    **Audit.**    The City may audit, no less than quarterly, then-current wastewater/sewerage flows, and after such audit, the City reserve the right to bill Buyer additional amounts for wastewater/sewerage connection fees for such percentage of additional wastewater/sewerage as may be discovered in any audit.  However, if an audit is conducted prior to May 1, 2018, the City agrees to initially pay for any additional fees if the Buyer posts a bond or provides a letter of credit for the amount of any such additional fees; in such event, the Buyer shall not be responsible for reimbursing the City for these additional wastewater/sewage fees until May 31, 2018. As long as wastewater is conveyed to the Clark County Water Reclamation District ("District"), Buyer will comply with the connection fee policy of the District.  In the event wastewater is rerouted and conveyed to the City's Water Reclamation Facility, Buyer will comply with the connection fee policy of the City.  In no event will Buyer have to pay additional connection fees for Equivalent Residential Units (ERU) already paid to the District. For the avoidance of doubt, Buyer will not be responsible for any wastewater/sewage connection fees incurred, accrued or billed prior to the Transaction Close. **Deposit.**  The City will maintain the $85,000 Deposit as security for water service pursuant to the City's municipal code.  Buyer will receive a refund of its $85,000 Deposit pursuant to the City's municipal code.

    **9.**    **No Prepayment Penalty.**    There shall be no pre-payment penalty if all or any part of the Assumed Payment is made in advance of the applicable due date.

    **10.**    **Attorneys' Fees and Costs for Agreement.**    Each of the Parties shall bear their own attorneys' fees and costs for the negotiation and preparation of this Agreement, and the related attachments.

    **11.**    **Effects of Non-Approval.**    If the Bankruptcy Court declines to approve either this Agreement or the Transaction or the Transaction does not Close, then (i) this Agreement will be null and void and of no force or effect; (ii) no Party shall have any obligations to any other Party arising out of this Agreement; and (iii) the Parties' respective rights and remedies with respect to all matters addressed by this Agreement will be fully reserved as they exist as of just prior to the Execution Date.

    **12.**    **Releases.**

    **a.**    **Debtor.**    Except for the obligations set forth in this Agreement, the City hereby fully releases, acquits and forever discharges the Debtor and its bankruptcy estate, and their respective employees, officers, directors, managers, members, agents, representatives, attorneys, predecessors, successors, insiders, affiliates, assigns, partnerships, corporations, and limited liability companies of and from any and all

| Deleted: ., |
| Deleted: and |

| Deleted: and the Landlord |
| Deleted: release, acquit |
| Deleted: discharge |
| Deleted: 00042679 |
| Formatted: Font: 8 pt |
| Deleted: |

claims, demands, causes of action, damages, costs, interest, expenses, attorneys' fees, liabilities, indemnities, duties and obligations of any kind or nature whatsoever, whether at law or in equity or statutory, whether known or unknown, suspected or unsuspected, fixed or contingent, arising out of any cause whatsoever occurring prior to the Execution Date of this Agreement.  For the avoidance of doubt, this Agreement shall also result in the immediate full and final satisfaction and expungement of the City's Proof of Claim in the Chapter 11 Case.

> **Deleted:** both the Landlord's and

> **Deleted:** Proofs

  **b.    City.**  Except for the obligations set forth in this Agreement, the Debtor and Buyer hereby fully releases, acquits and forever discharges the City, and its respective employees, officials, officers, directors, managers, members, agents, representatives, attorneys, predecessors, successors, insiders, affiliates, assigns, partnerships, corporations, limited liability companies, divisions, political subdivisions and legal entities of and from any and all claims, demands, causes of action, damages, costs, interest, expenses, attorneys' fees, liabilities, indemnities, duties and obligations of any kind or nature whatsoever, whether at law or in equity or statutory, whether known or unknown, suspected or unsuspected, fixed or contingent, arising out of any cause whatsoever occurring prior to the Execution Date of this Agreement.

> **Deleted:** <#>**Landlord.**  Except for the obligations set forth in this Agreement, the City and the Debtor hereby fully release, acquit and forever discharge the landlord, and its respective employees, officers, directors, managers, members, agents, representatives, attorneys, predecessors, successors, insiders, affiliates, assigns, partnerships, corporations, and limited liability companies of and from any and all claims, demands, causes of action, damages, costs, interest, expenses, attorneys' fees, liabilities, indemnities, duties and obligations of any kind or nature whatsoever, whether at law or in equity or statutory, whether known or unknown, suspected or unsuspected, fixed or contingent, arising out of any cause whatsoever occurring prior to the Execution Date of this Agreement.  For the avoidance of doubt, this does not in any way limit the ability of the City to renew its lien or record a new lien on the Premises upon default by the Buyer. ¶
> **City.**  Except for the obligations set forth in this Agreement, the Debtor and the Landlord hereby fully release, acquit and forever discharge

  **c.    Buyer.**  Except for the obligations set forth in this Agreement and those in the Asset Purchase Agreement for the Transaction, the Debtor and City hereby fully release, acquit and forever discharge the Buyer, and its respective employees, officials, officers, directors, managers, members, agents, representatives, attorneys, predecessors, successors, insiders, affiliates, assigns, partnerships, corporations, limited liability companies, divisions, parents, subs, and legal entities of and from any and all claims, demands, causes of action, damages, costs, interest, expenses, attorneys' fees, liabilities, indemnities, duties and obligations of any kind or nature whatsoever, whether at law or in equity or statutory, whether known or unknown, suspected or unsuspected, fixed or contingent, arising out of any cause whatsoever occurring prior to the Execution Date of this Agreement. For the avoidance of doubt, the City does not release the Buyer from its obligations as set forth in this Agreement and its future payment obligations to the City. Provided further for the avoidance of doubt, the releases granted to Buyer in this Agreement shall not release, amend, modify or waive any present or future obligations as set forth in the Asset Purchase Agreement for the Transaction with the Debtor.

> **Deleted:** <#>Buyer release from Debtor, City, and Landlord.  For the avoidance of doubt, the City does not release the Buyer from its obligations as set forth in this Agreement and its future payment obligations to the City. ¶

  **13.    Representations and Warranties.**  The Parties represent and warrant to each other the following:

  **a.    Due Authority.**  Subject to approval by the Bankruptcy Court, each person signing this Agreement on behalf of a Party represents and warrants that he or she is duly authorized and lawfully empowered to execute this Agreement on behalf of the Party for whom or which he or she purports to act and to bind such Party to the terms of this Agreement.  Subject only to approval by the Bankruptcy Court, the Parties hereby represent and warrant to each other that the execution, delivery and performance by each of them of this Agreement and the other filings and transactions referenced herein and made a part hereof are within the legal power of such Parties and have been duly authorized by all necessary action by the Parties.  Subject to the entry of the Settlement

> **Deleted:** 00042679

> **Formatted:** Font: 8 pt

> **Deleted:**

Order, this Agreement constitutes a legal, valid and binding obligation of each of the Parties hereto, enforceable against each of the Parties in accordance with its terms. Subject to the entry of the Settlement Order, all other filings and documents executed and delivered by any of the Parties to the Agreement shall, when executed by each such Party, constitute legal, valid and binding obligations of each Party thereto, enforceable against each such Party in accordance with their terms.

b.  **No Prior Assignments.** Each Party releasing any right or claim under this Agreement represents and warrants that such Party has not previously assigned, sold, or transferred any interest in such right or claim, is the sole owner thereof, and has the sole right to release the same as of the date of execution of this Agreement.

14.  **Notices.**  If any Party is required to give notice to another Party under this Agreement, notice shall be mailed to the addresses listed below as well as sent by email.  The addresses for notices to a Party are:

For Notice to the Debtor:
    Larson & Zirzow
    Attn.  Mathew C. Zirzow, Esq.
    850 E. Bonneville Ave.
    Las Vegas, NV 89101
    Email: mzirzow@lzlawnv.com

    -and-

    Superior Linen, LLC
    Attn.  Robert Smith
    4501 Mitchell Street
    Las Vegas, NV 89030
    E-mail: robert.smith@superlinen.com

For Notice to the City:
    Snell & Wilmer, L.L.P.
    Attn.  Robert Kinas, Esq.
    3883 Howard Hughes Parkway, Suite 1100
    Las Vegas, Nevada  89169
    Email: rkinas@swlaw.com

    -and-

    City of North Las Vegas
    Attn. City Attorney
    2250 Las Vegas Blvd., N. Suite 810
    North Las Vegas, NV 89030
    E-mail: moorem@cityofnorthlasvegas.com

For Notice to the Buyer:

Formatted: Spanish (Spain)

Formatted: Spanish (Spain)

Formatted: Font color: Auto

Formatted: Normal, Indent: Left: 0.5", First line: 0.5", Don't hyphenate

Formatted: No underline

Deleted: Landlord

Formatted: No underline

Deleted: 00042679

Formatted: Font: 8 pt

Deleted:

Fox Rothschild LLP
Attn: Brett Axelrod and Paul Labov
1980 Festival Plaza Drive
Suite 700
Las Vegas, NV 89135

-and-

Las Vegas Linen, LLC
Attn:
4501 Mitchell Street,
North Las Vegas, Nevada 89081

**15.    Cooperative Drafting.**  The Parties to this Agreement have participated jointly in the negotiation and preparation of this Agreement.  Accordingly, each Party agrees not to assert that any other Party is the sole or principal drafter of the Agreement.  Each Party also agrees not to assert that any canon of construction applicable to sole or principal drafters should be applied against the other Party.

**16.    Counterparts.**  This Agreement may be executed in counterparts by one or more of the Parties to this Agreement, and all counterparts, when executed, shall together constitute the final Agreement, as if one document had been signed by all the Parties.  Each counterpart, upon execution and delivery, shall be deemed a complete original, binding the Party or Parties that signed the counterpart upon the execution by all Parties to this Agreement.

**17.    Binding Effect.**  This Agreement shall be binding upon and inure to the benefit of the undersigned Parties and their respective predecessors, successors, assigns, agents, representatives, attorneys, heirs, executors, and administrators.

**18.    No Confidentiality.**  The Parties acknowledge and agree that this Agreement is required to be publically disclosed under applicable federal laws and regulations.

**19.    Construction.**  The descriptive headings of this Agreement are for convenience only and shall not affect the construction or interpretation of this Agreement.

**20.    Choice of Law/Forum.**  This Agreement shall be interpreted, construed, and enforced according to applicable federal law, or, in its absence, the laws of the State of Nevada.  The Parties agree that any legal actions between them regarding this Agreement shall be brought in the Bankruptcy Court, or to the extent the Bankruptcy Court lacks or refuses jurisdiction over such dispute, courts in and for the State of Nevada.  The Parties hereby consent to the jurisdiction of said court(s) in connection with any action or proceeding initiated concerning this Agreement and agrees that service by mail to the address specified herein shall be sufficient to confer jurisdiction in such courts.

**21.    Entire Agreement and Amendments.**  This Agreement constitutes the entire agreement and understanding between and among the undersigned Parties concerning the matters set forth herein.  This Agreement may not be amended or modified except by another written

{00042879.DOCX; 1 UT-0047}                              8

4830-2926-6505

---

**Sidebar markup annotations:**

Deleted:  Sylvester & Polednak¶
Attn.  Allyson Noto, Esq.¶
1731 Village Center Circle¶

Formatted: Font color: Black, Spanish (Spain)

Formatted: Normal, Indent: Left:  0.5", First line:  0.5", Don't hyphenate

Deleted: 89134

Formatted: Spanish (Spain)

Deleted: E-mail: allyson@sylvesterpolednak.com¶

Formatted: Spanish (Spain)

Deleted: _____¶
E-mail:  _____¶

Deleted: 00042679

Formatted: Font: 8 pt

Deleted:

instrument signed by the Party or Parties to be bound by the amendment or modification, or by their respective authorized attorney(s) or other representative(s). This Agreement is a novation of and supersedes and replaces any prior claims, rights, remedies and/or obligations of the Parties.

22.    **Reasonable Cooperation.**  The Parties agree to cooperate in good faith and in a commercially reasonable manner to effectuate all the terms and conditions of the Agreement, including doing or causing their agents and attorneys to do whatever is reasonably necessary to effectuate the signing, delivery, execution, filing, recording, and entry of any documents necessary to perform the terms of this Agreement.

23.    **Advice of Counsel.**  Each Party acknowledges that it has consulted with and obtained the advice of counsel before executing this Agreement, and that this Agreement has been explained to that Party by its counsel.

24.    **Severability**.  If any provision of this Agreement or the application of any provision of this Agreement to any person or circumstance is held invalid or unenforceable, only that provision shall be affected, and the remainder of this Agreement (or the application of that provision to other persons and circumstances) shall remain in full force and effect.

25.    **Time is of the Essence.**  Time is of the essence with respect to all obligations, deliveries, and payments under this Agreement.

**IN WITNESS WHEREOF**, the Parties have caused this Agreement to be executed by their duly authorized representatives on the dates indicated below.

**[Signature Pages Follow]**

| Deleted: 00042679 |
| Formatted: Font: 8 pt |
| Deleted: |

DEBTOR:

CITY:

| | Formatted Table |

SUPERIOR LINEN, LLC,
a Nevada limited liability company,
as debtor and debtor-in-possession:

CITY OF NORTH LAS VEGAS,
a Nevada municipal corporation:

By: _____

By: _____
      Dr. Qiong X. Liu, City Manager

Its: _____

Attest:

_____
      Catherine A. Raynor, MMC, City Clerk

| Deleted: LANDLORD:¶ |

| Deleted: ICON PAC NEVADA OWNER POOL 3, NEVADA, LLC, ¶<br>a Delaware limited liability company:¶<br>¶<br>¶<br>By: _____¶<br>¶<br>Its: _____¶ |

Approved as to Form:

By: _____
      Micaela Rustia Moore, City Attorney

BUYER:

| | Formatted: Spanish (Spain) |
| | Formatted Table |

LAS VEGAS LINEN, LLC:

By: _____

Its: _____

GUARANTOR:

GUARANTOR:

AMCP Clean Acquisition Company, LLC,
a Delaware limited liability company:

AMCP Clean Subsidiary Holdco LLC:

By: _____

By: _____

Its: _____

Its: _____

| Deleted: 00042679 |
| Formatted: Font: 8 pt |
| Deleted: |

## EXHIBITS

Exhibit 1 - Monthly Payment Schedule

Exhibit 2 - Extinguishment & Release

Exhibit 3 - Confession of Judgment and Guaranties

| Deleted: 00042679 |
| Formatted: Font: 8 pt |
| Deleted: |

# (EXHIBIT 1)

Superior Linen Payment Schedule

| | | | | |
|---|---|---|---|---|
| Loan Amount | 690,000.00 | | | |
| Term | 36 | | | |
| Interest | 2.03% | | | |

Monthly Payment    $19,772.42

| Scheduled Payment | Payment | Interest | Principal | Balance |
|---|---|---|---|---|
| | | | | 690,000.00 |
| 1 | 19,772.42 | 1,167.25 | 18,605.17 | 671,394.83 |
| 2 | 19,772.42 | 1,135.78 | 18,636.64 | 652,758.19 |
| 3 | 19,772.42 | 1,104.25 | 18,668.17 | 634,090.02 |
| 4 | 19,772.42 | 1,072.67 | 18,699.75 | 615,390.27 |
| 5 | 19,772.42 | 1,041.04 | 18,731.38 | 596,658.89 |
| 6 | 19,772.42 | 1,009.35 | 18,763.07 | 577,895.82 |
| 7 | 19,772.42 | 977.61 | 18,794.81 | 559,101.01 |
| 8 | 19,772.42 | 945.81 | 18,826.61 | 540,274.40 |
| 9 | 19,772.42 | 913.96 | 18,858.46 | 521,415.94 |
| 10 | 19,772.42 | 882.06 | 18,890.36 | 502,525.58 |
| 11 | 19,772.42 | 850.11 | 18,922.31 | 483,603.27 |
| 12 | 19,772.42 | 818.10 | 18,954.32 | 464,648.95 |
| 13 | 19,772.42 | 786.03 | 18,986.39 | 445,662.56 |
| 14 | 19,772.42 | 753.91 | 19,018.51 | 426,644.05 |
| 15 | 19,772.42 | 721.74 | 19,050.68 | 407,593.37 |
| 16 | 19,772.42 | 689.51 | 19,082.91 | 388,510.46 |
| 17 | 19,772.42 | 657.23 | 19,115.19 | 369,395.27 |
| 18 | 19,772.42 | 624.89 | 19,147.53 | 350,247.74 |
| 19 | 19,772.42 | 592.50 | 19,179.92 | 331,067.82 |
| 20 | 19,772.42 | 560.06 | 19,212.36 | 311,855.46 |
| 21 | 19,772.42 | 527.56 | 19,244.86 | 292,610.60 |
| 22 | 19,772.42 | 495.00 | 19,277.42 | 273,333.18 |
| 23 | 19,772.42 | 462.39 | 19,310.03 | 254,023.15 |
| 24 | 19,772.42 | 429.72 | 19,342.70 | 234,680.45 |
| 25 | 19,772.42 | 397.00 | 19,375.42 | 215,305.03 |
| 26 | 19,772.42 | 364.22 | 19,408.20 | 195,896.83 |
| 27 | 19,772.42 | 331.39 | 19,441.03 | 176,455.80 |
| 28 | 19,772.42 | 298.50 | 19,473.92 | 156,981.88 |
| 29 | 19,772.42 | 265.56 | 19,506.86 | 137,475.02 |
| 30 | 19,772.42 | 232.56 | 19,539.86 | 117,935.16 |
| 31 | 19,772.42 | 199.51 | 19,572.91 | 98,362.25 |
| 32 | 19,772.42 | 166.40 | 19,606.02 | 78,756.23 |
| 33 | 19,772.42 | 133.23 | 19,639.19 | 59,117.04 |
| 34 | 19,772.42 | 100.01 | 19,672.41 | 39,444.63 |
| 35 | 19,772.42 | 66.73 | 19,705.69 | 19,738.94 |
| 36 | 19,772.33 | 33.39 | 19,738.94 | 0.00 |

# (EXHIBIT 2)

**APN:** 140-06-210-001

**WHEN RECORDED MAIL TO:**
Matthew C. Zirzow, Esq.
Larson & Zirzow
850 E. Bonneville Ave.
Las Vegas, NV 89101

Space above this line is for Recorder's Use

## RELEASE AND EXTINGUISHMENT OF LIEN

This RELEASE AND EXTINGUISHMENT OF JUDGMENT LIEN (the "Release") is entered into as of May ___, 2017 (the "Execution Date") by THE CITY OF NORTH LAS VEGAS (the "City").

### RECITALS

A.     On September 22, 2016, the City recorded a Notice of Lien for Unpaid Utility Charges, recorded in the Official Records of the Clark County Recorder as Inst# 21060922-141 and thereby claiming a lien on the real property generally located at 4501 Mitchell Street, and more particularly described as NELLIS INDST PARK UNIT #1 PLAY BOOK 10 PAGE 76 LOT 6 BLOCK 7 & LOT 7 PT LOT 8 (the "Property") of the total sum of $893,667.33 for unpaid utilities services rendered to that Property (the "Lien"). The City claimed the lien arose pursuant to NRS 268.043 and North las Vegas Municipal Code § 13.23.090.

B.     On September 30, 2016 (the "Petition Date"), Superior Linen, LLC filed its voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), thereby commencing bankruptcy case, Case No. 16-15388-mkn (the "Bankruptcy Case") in the U.S. Bankruptcy Court for the District of Nevada (the "Bankruptcy Court").

C.     Pursuant to the terms and subject to the conditions as set forth in that certain Settlement Agreement and Release Agreement (the "Agreement") with the City, Superior Linen, LLC, as debtor and debtor in possession ("Superior Linen"), as tenant at the Property, and Icon Pac Nevada Owner Pool 3, Nevada, LLC, a Delaware limited liability company, as successor landlord and owner of the Property, which Agreement was approved by the Bankruptcy Court by order entered on May ___, 2017, the City hereby releases its Lien, but WITHOUT PREJUDICE TO, AND WITH A FULL RESERVATION OF THE RIGHTS AND REMEDIES AS PROVIDED FOR IN THE AGREEMENT, including but not limited to the re-imposition of the Lien or recordation of a new lien in the event of a default under the Agreement.

**NOW, THEREFORE,** in consideration of the promises, undertakings, payments, and releases stated in the Agreement, which is acknowledged to be sufficient consideration, the City, agrees as follows:

1

1.      The City hereby releases and extinguishes without prejudice and with a full reservation of its rights and remedies under the Agreement, which are incorporated herein, the Lien and the Notice of Lien referenced above on the Property.

2.      Nothing herein is intended or should be construed as altering or amending the Agreement.   This release is to effectuate the terms and conditions of the Agreement by extinguishing and releasing the foregoing Lien and Notice of Lien, and any associated liens that may have arisen and/or continue to exist or otherwise as a result of the recordation thereof, in favor of and to replace them with the obligations and claims as set forth in the Agreement.

Dated: _____, 2017.          CITY OF NORTH LAS VEGAS:

_____

**Notarization**

State of Nevada          )

County of Clark          )

This instrument was acknowledged before be on _____ by _____.

_____
Signature of notarial officer

4823-1428-2567

# (EXHIBIT 3)

Robert R. Kinas, Esq. (NV Bar No. 6019)
Blakeley E. Griffith, Esq. (NV Bar No. 12386)
SNELL & WILMER L.L.P.
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, NV 89169
Telephone: 702.784.5200
Facsimile: 702.784.5252
Email: rkinas@swlaw.com
        bgriffith@swlaw.com

*Attorneys for City of North Las Vegas*

## DISTRICT COURT

## CLARK COUNTY, NEVADA

| | |
|---|---|
| CITY OF NORTH LAS VEGAS, | Case No.: |
| Plaintiff, | Dept. No.: |
| v. | |
| LAS VEGAS LINEN LLC, | **CONFESSION OF JUDGMENT** |
| Defendant. | |

LAS VEGAS LINEN LLC ("Defendant" or "Las Vegas Linen"), a Nevada Limited Liability Company, hereby confesses judgment in favor of CITY OF NORTH LAS VEGAS ("Plaintiff" or "City of North Las Vegas"), in the amount of $750,000.00 including Plaintiff's taxable costs, and authorizes the Clerk of the Eighth Judicial District Court of the State of Nevada, in and for the County of Clark, to enter judgment for said sum upon filing of this Confession. This Confession of Judgment is for money justly due to Plaintiff in connection with a resolution and agreement with Plaintiff.

As part of that agreement, Plaintiff required Defendant to execute this Confession of Judgment. This Confession of Judgment is made and executed upon the condition that it shall not be filed, nor shall execution issue, so long as Defendant pays the amount required by the deadlines agreed upon in the agreement and remains current on its monthly water and wastewater

1  bills owed to Plaintiff while any amount under this Confession of Judgment remains due and

2  owing.

3        In the event that Plaintiff must file this Confession of Judgment, Plaintiff may do so only

4  after the expiration of a fifteen (15) day notice and cure period.  Interest shall accrue on the

5  unpaid balance of the judgment from the date of default at the rate of 4.06% per annum as agreed

6  between Plaintiff and Defendant.

7        This Confession of Judgment is made and executed upon the further condition that upon

8  full payment by Defendant, Plaintiff shall return to Defendant's counsel the original of this

9  Confession of Judgment and the entire action, claims, counterclaims, and the like, shall all be

10  dismissed with prejudice, each party to bear their own attorney fees and costs incurred.

11        DATED this ____ day of _____ 2017.

12                         LAS VEGAS LINEN, LLC

13

14                         By:_____

15                         Its:_____

16            [DEFENDANT'S VERIFICATION FOLLOWS]

17

18

19

20

21

22

23

24

25

26

27

28

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada  89169
702.784.5200

**VERIFICATION OF LAS VEGAS LINEN LLC**

STATE OF NEVADA     )
                            )
COUNTY OF CLARK     )

_____being first duly sworn, deposes and says:

That as the authorized representative of Las Vegas Linen LLC, a Nevada Limited Liability Company, I have read the foregoing Confession of Judgment and know the contents thereof and that the same is true on my own personal knowledge and belief, and that I understand and agree on behalf of Las Vegas Linen LLC, a Nevada Limited Liability Company, to the foregoing Confession of Judgment, and pursuant NRS 17.090, 17.100 and 17.110 acknowledge on behalf of Las Vegas Linen LLC, a Nevada Limited Liability Company, that the confessed amount arose from the facts stated above and the confessed amount therefore is just and due.

DATED this _____ day of _____ 2017.

_____

_____
SUBSCRIBED AND SWORN to before
me this _____ day of _____ 2017.

_____
NOTARY PUBLIC

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

- 3 -

**CONFESSION OF JUDGMENT APPROVED BY:**

SNELL & WILMER L.L.P.

_____
Robert R. Kinas, Esq.
Nevada Bar No. 6019
Blakeley E. Griffith, Esq.
Nevada Bar No. 12386
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, NV 89169

*Attorneys for Plaintiff City of North Las Vegas*

FOX ROTHSCHILD, LLP

_____
Paul Labov, Esq.
101 Park Avenue,Suite 1700
New York, NY 10178

*Attorney for Defendant Las Vegas Linen LLC*

- 4 -

## PAYMENT GUARANTY

THIS PAYMENT GUARANTY ("Guaranty") is made as of May __, 2017, by AMCP CLEAN ACQUISITION COMPANY LLC, a _____ limited liability company, and AMCP CLEAN SUBSIDIARY HOLDCO, LLC, a _____ limited liability company (collectively, jointly and severally, the "Guarantor"), whose address is set forth below, in favor of CITY OF NORTH LAS VEGAS ("City"), whose address is set forth below.

## FACTUAL BACKGROUND

A.    SUPERIOR LINEN, LLC, a Nevada limited liability company, as debtor and debtor in possession ("Superior Linen"); CITY OF NORTH LAS VEGAS, a Nevada municipal corporation ("City"); and LAS VEGAS LINEN, LLC ("Las Vegas Linen") a Nevada limited liability company, entered into a certain Settlement and Release Agreement dated as of May __, 2017 (the "Settlement Agreement").

B.    The Settlement Agreement provides that Las Vegas Linen will make certain payments to City, defined therein as the "Assumed Payment";

C.    Execution and delivery of this Guaranty by Guarantor is a condition to the execution and delivery of the Settlement Agreement by City.

## GUARANTY

1.    Guaranteed Obligations.    Guarantor hereby unconditionally and irrevocably, jointly and severally, guarantees to City and to its successors, endorsees and/or assigns, the full and prompt payment of the Assumed Payment in accordance with its terms when due, by acceleration or otherwise, together with all interest accrued thereon, and all other obligations of Buyer in connection with the Assumed Payment (the "Guaranteed Obligations").

2.    Guarantor's Liability.    Guarantor agrees, represents and warrants to City as follows:

(a)    Guarantor shall continue to be liable under this Guaranty and the provisions hereof shall remain in full force and effect notwithstanding (i) any modification, agreement or stipulation between Buyer and City, or their respective successors and assigns, with respect to the Settlement Agreement or the obligations encompassed thereby, including, without limitation, the Guaranteed Obligations; or (ii) City's waiver of or failure to enforce any of the terms, covenants or conditions contained in the Settlement Agreement or in any modification thereof; or (iii) any release of Buyer or any other guarantor from any liability with respect to the Guaranteed Obligations; or (iv) any release or subordination of any real or personal property then held by City as security for the performance of the Guaranteed Obligations.

(b)    Guarantor's liability under this Guaranty shall continue until all Guaranteed Obligations of Buyer to City have been satisfied.    Each Guarantor acknowledges that City may apply any payment made by Buyer to City to any obligation of Buyer to City under the terms of the Settlement Agreement in such amounts and such

1

manner as City may elect, regardless of whether such application complies with any instruction or designation given or made by Buyer with respect to such payment and agrees that any such application shall not in any manner reduce, extinguish or otherwise affect the liability of Guarantor hereunder.

(c)     Guarantor has and will continue to have full and complete access to any and all information concerning the Assumed Payment, the value of the assets owned or to be acquired by Buyer, Buyer's financial status and its ability to pay and perform the Guaranteed Obligations owed to City.  Guarantor further warrants and represents that it has reviewed and approved copies of the Settlement Agreement and is fully informed of the remedies City may pursue, with or without notice to Buyer, in the event of default under the Settlement Agreement.  So long as any of the Guaranteed Obligations remains unsatisfied or owing to City, Guarantor shall keep itself fully informed as to all aspects of Buyer's financial condition and the performance of the Guaranteed Obligations.

3.     Fair Consideration; Solvency.

(a)     Representations and Warranties. Guarantor represents and warrants to City that: (i) Guarantor is receiving fair consideration and reasonably equivalent value for its execution of this Guaranty; (ii) Guarantor is not now insolvent, nor will the execution of this Guaranty render Guarantor insolvent; (iii) the execution of this Guaranty will not leave Guarantor with unreasonably small capital or assets in order to conduct the business of Guarantor as it is currently conducted; (iv) the obligations incurred under this Guaranty have not been incurred with the intent to hinder, delay, or defraud present or future creditors; and (v) the execution of this Guaranty is not intended or believed by Guarantor to be an incurrence of an obligation or debt of Guarantor beyond Guarantor's ability to pay such obligation or debt as it becomes due.

(b)     Acknowledgements. Guarantor acknowledges that:  (i) the execution of this Guaranty by Guarantor is a necessary condition for City's agreement to enter into the Settlement Agreement; and (ii) City's agreement to enter into the Settlement Agreement is a substantial economic benefit to Buyer and, therefore, beneficial to Guarantor.

4.     Amount of Guaranty. In the event that, notwithstanding the representations, warranties and acknowledgements of Guarantor contained in Section 3 above, the incurring of the obligations under this Guaranty is found, by a final, non-appealable judgment or order of a court, to constitute a fraudulent conveyance under the Uniform Fraudulent Transfer Act (Nevada Revised Statutes ("NRS") Chapter 112), the United States Bankruptcy Code, or any similar statutes, as a result of the insolvency of the Guarantor on the date hereof, then the amount of the guaranty obligations of Guarantor pursuant to this Guaranty shall be reduced to $1.00 less than the amount that would otherwise make this Guaranty a fraudulent conveyance.  The limitation on the liability of Guarantor contained in this Section 4 shall not limit any right of City against Guarantor available at law or in equity, including, without limitation, rights of City against Guarantor based upon any inaccuracy of, or the failure of Guarantor to comply with, the provisions of Section 3 above.

2

5.    Independent Obligation.  The obligations of Guarantor hereunder are separate and independent of the obligations of Buyer and of every other guarantor of the Guaranteed Obligations, and a separate action or actions may be brought and prosecuted against Guarantor regardless of whether an action is brought against Buyer or any other guarantor or whether Buyer or any other guarantor is joined in any such action or actions, or whether City forecloses upon, sells or otherwise disposes of or collects any collateral securing any of the Guaranteed Obligations.  This Guaranty may be enforced against Guarantor at any time following the failure on the part of Buyer to pay and perform the Guaranteed Obligations.

6.    Nature of Guaranty.  The liability of Guarantor under this Guaranty is a guaranty of payment and not of collectability, and is not conditioned or contingent upon the genuineness, validity, regularity or enforceability of the Settlement Agreement or other instruments relating to the creation or performance of the Guaranteed Obligations or the pursuit by City of any remedies which it now has or may hereafter have with respect thereto under the Settlement Agreement, at law, in equity or otherwise.

7.    Guarantor Waivers.  Guarantor hereby fully and completely waives, releases and relinquishes:  (i) all notices to Guarantor, to Buyer, or to any other person, including, but not limited to, notices of the acceptance of this Guaranty, or the creation, renewal, extension, modification or accrual of any of the Guaranteed Obligations owed to City and, except to the extent set forth herein, enforcement of any right or remedy with respect thereto, and notice of any other matters relating thereto; (ii) diligence and demand of payment, presentment, protest, dishonor and notice of dishonor; (iii) any statute of limitations affecting Guarantor's liability hereunder or the enforcement thereof; (iv) all defenses and claims based on principles of suretyship and/or guaranty; (v) any "one action" or "anti-deficiency" law, including, without limitation, the benefits and provisions of NRS Section 40.430; and (vi) to the fullest extent permitted by applicable law, the benefits of NRS Section 40.495(4).  City may enforce this Guaranty upon the occurrence and during the continuation of a default or an Event of Default under the Settlement Agreement (as Event of Default is defined therein), notwithstanding the existence of any dispute between Buyer and City with respect to the existence of the default or performance of the Guaranteed Obligations or any counterclaim, set-off or other claim which Buyer may allege against City with respect thereto.  Moreover, Guarantor agrees that its obligations shall not be affected by any circumstances which constitute a legal or equitable discharge of a guarantor or surety.

8.    No Duty To Pursue Others.  Guarantor agrees that City may enforce this Guaranty without the necessity of resorting to or exhausting any security or collateral and without the necessity of proceeding against Buyer or any other guarantor, including without limitation, any other Guarantor named herein.  Guarantor hereby waives the right to require City to proceed against Buyer, to proceed against any other guarantor, including without limitation any other Guarantor named herein, to foreclose any lien on any real or personal property, to exercise any right or remedy under the Settlement Agreement, to pursue any other remedy or to enforce any other right.

9.    Authorization of City.  Guarantor authorizes City, without notice or demand, and without affecting Guarantor's liability hereunder, from time to time to: (a) amend, modify, or restate any instrument, document or agreement evidencing or relating to all or any portion of the

3

Guaranteed Obligations; (b) renew, compromise, extend, accelerate or otherwise change the time for payment of, or otherwise change the terms of the Guaranteed Obligations or any part thereof, including, without limitation, any increase or decrease of the rate of interest thereon or any late charge; (c) take and hold collateral as security for the payment of this Guaranty or the Guaranteed Obligations, and exchange, substitute, subordinate, enforce, waive and release any such collateral; (d) apply any and all payments from Buyer, Guarantor or any other guarantor, or recoveries from any collateral securing any of the Guaranteed Obligations, in such order or manner as City in its sole and absolute discretion may determine; (e) direct the order or manner of sale of any collateral securing any part of the Guaranteed Obligations as City in its sole and absolute discretion may determine; (f) release or substitute any one or more of the Buyer, Guarantor or any other guarantor, or acquire additional guarantors; and (g) assign its rights under this Guaranty in whole or in part.

10.    Waivers of Subrogation and Other Rights and Defenses.

(a)    Guarantor agrees that nothing contained herein shall prevent City from suing to collect the Assumed Payment or from exercising any rights available to it under the Settlement Agreement and that the exercise of any of the aforesaid rights shall not constitute a legal or equitable discharge of any of the Guarantors. Guarantor understands that the exercise by City of certain rights and remedies contained in the Settlement Agreement may affect or eliminate Guarantor's right of subrogation against Buyer and that Guarantor may therefore incur a partially or totally non-reimbursable liability hereunder; nevertheless, Guarantor hereby authorizes and empowers City to exercise, in its sole discretion, any rights and remedies, or any combination thereof, which may then be available to City, since it is the intent and purpose of Guarantor that the obligations hereunder shall be absolute, independent and unconditional under any and all circumstances.

(b)    Guarantor hereby waives, releases, and relinquishes any and all rights of reimbursement, contribution, and subrogation, which Guarantor may now or hereafter have against Buyer. Guarantor further agrees that, to the extent the waiver of its rights of subrogation as set forth herein is found by a court of competent jurisdiction to be void or voidable for any reason, any rights of subrogation Guarantor may have against Buyer or against any collateral or security shall be junior and subordinate to any right City may have against Buyer and to all right, title and interest City may have in any collateral or security.

(c)    To the extent any dispute exists at any time between or among any of the guarantors as to Guarantor's right to contribution or otherwise, Guarantor agrees to indemnify, defend and hold City harmless for, from and against any loss, damage, claim, demand, cost or any other liability (including reasonable attorneys' fees and costs) City may suffer as a result of such dispute.

(d)    If from time to time Buyer shall have liabilities or obligations to Guarantor, such liabilities and obligations and any and all assignments as security, grants in trust, liens, mortgages, security interests, other encumbrances, and other interests and rights securing such liabilities and obligations shall at all times be fully

4

subordinate with respect to (i) assignment as security, grant in trust, lien, mortgage, security interest, other encumbrance, and other interest and right (if any), (ii) time and right of payment and performance, and (iii) rights against any collateral therefor (if any), to payment and performance in full of the Guaranteed Obligations and the right of City to realize upon any or all security for such obligations. Guarantor agrees that such liabilities and obligations of Buyer to Guarantor shall not be secured by any assignment as security, grant in trust, lien, mortgage, security interest, other encumbrance or other interest or right in any property, interests in property, or rights to property of Buyer and that Buyer shall not pay, and Guarantor shall not receive, payments of any or all liabilities or obligations of Buyer to Guarantor until after payment and performance of the Guaranteed Obligations in full. If, notwithstanding the foregoing, Guarantor receives any payment from Buyer, such payment shall be held in trust by Guarantor for the benefit of City, shall be segregated from the other funds of Guarantor, and shall forthwith be paid by Guarantor to City and applied to payment of the Guaranteed Obligations, whether or not then due. To secure the Guaranteed Obligations, Guarantor grants to City a lien and security interest in all liabilities and obligations of Buyer to Guarantor, in any assignments as security, grants in trust, liens, mortgages, security interests, other encumbrances, other interests or rights securing such liabilities and obligations, and in all of Guarantor's right, title, and interest in and to any payments, property, interests in property, or rights to property acquired or received by Guarantor from Buyer in respect of any liabilities or obligations of Buyer to Guarantor.

11.    <u>Guarantor's Representations and Warrantees</u>.

(a)    <u>Authority</u>.    As an inducement to City to enter into the Settlement Agreement, Guarantor represents and warrants to City that the following statements are true, correct and complete.

(i)    Guarantor is duly formed, validly existing and in good standing under the laws of the state of its organization. Guarantor's correct legal name is set forth above. Guarantor has all requisite power and authority, rights and franchises to own and operate its properties, to carry on its business as now conducted and as proposed to be conducted, and to enter into and perform this Guaranty.

(ii)    Guarantor has made all filings and is in good standing in the State of Nevada and has made all filings as a foreign organization and is in good standing in each other jurisdiction in which the character of the property it owns or the nature of the business it transacts makes such filings necessary or where the failure to make such filings could have a materially adverse effect on the business, operations, assets or condition of Guarantor.

(iii)    The execution, delivery and performance of this Guaranty by Guarantor are within Guarantor's power and authority and have been duly authorized by all necessary action by Guarantor.

5

(iv)    The execution, delivery and performance of the Settlement Agreement by Guarantor will not violate (i) Guarantor's organizational documents or any other formation document, as applicable; (ii) any legal requirement affecting Guarantor or any of its property; or (iii) any agreement to which Guarantor is a party or by which it or any of its property is bound and will not result in or require the creation of any lien upon any of its property.

(v)    No approvals, authorizations or consents of any trustee or holder of any indebtedness or obligation of Guarantor are required for the due execution, delivery and performance by Guarantor of this Guaranty.

(vi)    This Guaranty has been duly executed by Guarantor, and is the legally valid and binding obligation of Guarantor, enforceable against Guarantor in accordance with its terms, except as enforceability may be limited by bankruptcy, insolvency, reorganization, moratorium or similar laws affecting creditors' rights generally and by general principles of equity.

(vii)    There exists no material violation of or material default by Guarantor and no event has occurred which, upon the giving of notice or the passage of time, or both, would constitute a material default with respect to (a) the terms of any instrument evidencing or securing any indebtedness of Guarantor, (b) any lease or other agreement affecting the Project to which Guarantor is a party, (c) any license, permit, statute, ordinance, law, judgment, order, writ, injunction, decree, rule or regulation of any Governmental Authority, or any determination or award of any arbitrator to or by which Guarantor may be subject or bound, or (d) any mortgage, instrument, agreement or document by which Guarantor or any of its property is bound which might materially and adversely affect the ability of Guarantor to perform its obligations under this Guaranty.

(viii)    There is no action, suit, investigation, proceeding or arbitration (whether or not purportedly on behalf of Guarantor) at law or in equity or before or by any foreign or domestic court or other governmental entity (a "Legal Action"), pending or, to the knowledge of Guarantor, threatened against or affecting Guarantor or any of its assets which could reasonably be expected to result in any material adverse change in the business, operations, assets or condition (financial or otherwise) of Guarantor or would materially and adversely affect Guarantor's ability to perform its obligations under this Guaranty.  There is no basis known to Guarantor for any such action, suit or proceeding.  Guarantor is not (a) in violation of any applicable law which violation materially and adversely affects or may materially and adversely affect its business, operations, assets or condition (financial or otherwise), (b) subject to, or in default with respect to, any other legal requirement that would have a materially adverse effect on its business, operations, assets or condition (financial or otherwise), or (c) in default with respect to any agreement to which it is a party or by which it is bound.  There is no Legal Action pending or, to the

6

knowledge of Guarantor, threatened against or affecting Guarantor questioning the validity or the enforceability of this Guaranty.

(ix)    Guarantor has good, sufficient and legal title to all properties and assets reflected in its most recent balance sheet delivered to City, except for assets disposed of in the ordinary course of business since the date of such balance sheet.

(x)    There is no fact known to Guarantor that materially and adversely affects the business, operations, assets or condition (financial or otherwise) of Guarantor which has not been disclosed in this Guaranty or in other documents, certificates and written statements furnished to City in connection herewith.

(xi)    All tax returns, extension filings, and reports of Guarantor required to be filed by it have been timely filed, and all taxes, assessments, fees and other governmental charges upon Guarantor or upon its properties, assets, income and franchises which are due and payable have been paid when due and payable.  Guarantor does not know of any proposed tax assessment against it or its property that would be material to its condition (financial or otherwise), and Guarantor has not contracted with any government entity in connection with such taxes.

(xii)    The financial statements and all financial data previously delivered to City relating to Guarantor are true, correct and complete in all material respects.  Such financial statements fairly present the financial position of the subject thereof as of the date thereof.  No material adverse change has occurred in such financial position.

(b)    <u>No Transfers of Assets</u>.  Guarantor has not and will not, without the prior written consent of City, sell, lease, assign, encumber, hypothecate, transfer or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein, other than in the ordinary course of Guarantor's business.

12.    <u>Notices</u>.  All notices, requests and other communications to any party hereunder shall be in writing (including electronic transmission, facsimile transmission or similar writing) and shall be given to such party at its address or facsimile number set forth on the signature pages hereof.  Each such notice, request or other communication shall be effective (i) if given by facsimile transmission, when transmitted to the facsimile number specified in this Section and confirmation of receipt is received, (ii) if given by mail, three (3) days after such communication is deposited in the mails with first class postage prepaid, addressed as aforesaid, (iii) if given by reputable overnight delivery service, when delivered, or (iv) if given by any other means, when delivered (or, in the case of electronic transmission, received) at the address specified below.

To City:        City of North Las Vegas

        _____

        _____

        _____

7

To Guarantor:  AMCP Clean Acquisition Company LLC

_____
_____
_____

AMCP Clean Subsidiary Holdco, LLC

_____
_____
_____

13.  <u>Successors and Assigns</u>.  This Guaranty shall be binding upon Guarantor, its successors and assigns and shall inure to the benefit of and shall be enforceable by City, its successors, endorsees and assigns.

14.  <u>Costs of Enforcement</u>.  If any or all of the Guaranteed Obligations are not paid when due, Guarantor agrees to pay all costs of enforcement and collection and preparation therefore (including, without limitation, reasonable attorneys' fees) whether or not any action or proceeding is brought (including, without limitation, all such costs incurred in connection with any bankruptcy, receivership, or other court proceedings (whether at the trial or appellate level)) together with interest thereon from the date of demand at the Default Rate (as defined in the Settlement Agreement).

15.  <u>WAIVER OF DEFENSES AND RELEASE OF CLAIMS</u>.  The undersigned hereby (i) represents that neither the undersigned nor any affiliate or principal of the undersigned has any defenses to or setoffs against any indebtedness or other obligations owing by the undersigned, or by the undersigned's affiliates or principals, to City or City's affiliates (the "<u>Obligations</u>"), nor any claims against City or City's affiliates for any matter whatsoever, related or unrelated to the Obligations, and (ii) releases City and City's affiliates, officers, directors, employees and agents from all claims, causes of action, and costs, in law or equity, known or unknown, whether or not matured or contingent, existing as of the date hereof that the undersigned has or may have by reason of any matter of any conceivable kind or character whatsoever, related or unrelated to the Obligations, including the subject matter of this Guaranty. The foregoing release does not apply, however, to claims for future performance of express contractual obligations that mature after the date hereof that are owing to the undersigned by City or City's affiliates.  The undersigned acknowledges that City has been induced to enter into or continue the Obligations by, among other things, the waivers and releases in this paragraph.

16.  <u>JURY WAIVER</u>. GUARANTOR WAIVES TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO WHICH GUARANTOR AND LENDER MAY BE PARTIES, ARISING OUT OF, IN CONNECTION WITH OR IN ANY WAY PERTAINING TO, THIS GUARANTY, THE NOTE OR ANY OF THE OTHER LOAN DOCUMENTS. IT IS AGREED AND UNDERSTOOD THAT THIS WAIVER CONSTITUTES A WAIVER OF TRIAL BY JURY OF ALL CLAIMS AGAINST ALL PARTIES TO SUCH ACTION OR PROCEEDINGS, INCLUDING CLAIMS AGAINST PARTIES WHO ARE NOT PARTIES TO THIS GUARANTY.  THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY MADE BY GUARANTOR, AND GUARANTOR HEREBY REPRESENTS THAT NO REPRESENTATIONS OF FACT OR OPINION HAVE BEEN MADE BY ANY INDIVIDUAL

8

TO INDUCE THIS WAIVER OF TRIAL BY JURY OR TO IN ANY WAY MODIFY OR NULLIFY ITS EFFECT. GUARANTOR FURTHER REPRESENTS AND WARRANTS THAT IT HAS BEEN REPRESENTED IN THE SIGNING OF THIS GUARANTY AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL, OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED BY INDEPENDENT LEGAL COUNSEL SELECTED OF ITS OWN FREE WILL, AND THAT IT HAS HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH COUNSEL. THIS PROVISION IS A MATERIAL INDUCEMENT TO LENDER TO PROVIDE THE FINANCING DESCRIBED HEREIN OR IN THE OTHER LOAN DOCUMENTS.

17.    Right of Setoff.  In addition to all liens upon, and rights of setoff against, the monies, securities or other property of Guarantor given to City by law, City shall have a lien and a right of setoff against, and Guarantor hereby grants to City a security interest in, all monies, securities and other property of Guarantor now or hereafter in the possession of or on deposit with City, whether held in a general or special account or deposit including any account or deposit held jointly by Guarantor with any other person or entity, or for safekeeping or otherwise, except to the extent specifically prohibited by law.  Every such lien, right of setoff and security interest may be exercised without demand upon or notice to Guarantor.  No lien, right of setoff, or security interest shall be deemed to have been waived by any act or conduct on the part of City, by any neglect to exercise such right of setoff or to enforce such lien or security interest, or by any delay in so doing.

18.    GOVERNING LAW; JURISDICTION.  THIS GUARANTY HAS BEEN DELIVERED IN NEVADA, AND SHALL BE CONSTRUED IN ACCORDANCE WITH AND GOVERNED BY THE LAWS OF THE STATE OF NEVADA, WITHOUT GIVING EFFECT TO CONFLICT OF LAWS PRINCIPLES. THE COURTS OF NEVADA, FEDERAL OR STATE, SHALL HAVE EXCLUSIVE JURISDICTION OF ALL LEGAL ACTIONS ARISING OUT OF THIS GUARANTY.  BY EXECUTING THIS GUARANTY, GUARANTOR CONSENTS AND SUBMITS TO THE JURISDICTION OF THE FEDERAL AND STATE COURTS OF NEVADA.

19.    No Third Party Beneficiaries.  This Guaranty is solely for the benefit of City, its successors, endorsees and assigns, and is not intended to nor shall it be deemed to be for the benefit of any third party, including Buyer.

20.    Severability.  If any provision of this Guaranty is unenforceable, the enforceability of the other provisions shall not be affected and they shall remain in full force and effect.

21.    Counterparts.  This Guaranty may be executed in counterparts, all of which executed counterparts shall together constitute a single document.

22.    Counsel.  Guarantor acknowledges that Guarantor has had adequate opportunity to carefully read this Guaranty and to consult with an attorney of Guarantor's choice prior to signing it.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK.]

IN WITNESS WHEREOF, Guarantor has executed this Guaranty as of the day and year first above written.

GUARANTOR:

AMCP CLEAN ACQUISITION COMPANY LLC,
a _____ limited liability company

By: _____
Name: _____
Title: _____

AMCP CLEAN SUBSIDIARY HOLDCO, LLC,
a _____ limited liability company

By: _____
Name: _____
Title: _____

10

# EXHIBIT C

# FIRST AMENDMENT
## TO ASSET PURCHASE AGREEMENT

**THIS FIRST AMENDMENT TO ASSET PURCHASE AGREEMENT** ("**First Amendment**") is entered into as of May __, 2017, by and between **SUPERIOR LINEN, LLC**, a Nevada limited liability company ("**Seller**"); and **LAS VEGAS LINEN LLC**, a Delaware limited liability company ("**Buyer**"). Seller and Buyer are referred to collectively herein as the "**Parties**" and each a "**Party**." Following the Petition Date (as defined below), the term Seller shall refer to Seller as a debtor-in-possession and include the Seller's estate.

## RECITALS

A.    Seller is engaged in the business of providing linen rental and laundry services to the hospitality and retail markets in Las Vegas, Nevada and the surrounding areas (the "**Business**").

B.    On September 30, 2016 (the "**Petition Date**") Seller filed its voluntary petition for relief under Chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Nevada (the "**Bankruptcy Court**"), which is pending as case number 16-15388-mkn (the "**Bankruptcy Case**");

C.    Seller and Buyer entered into that certain Asset Purchase Agreement dated May ___, 2017 for the acquisition of the Business upon the terms, conditions and obligations set forth therein (the "**Agreement**").

D.    Seller and Buyer have agreed to amend the Agreement as set forth herein.

**NOW THEREFORE**, in consideration of the foregoing recitals (incorporated herein by this reference) and the mutual promises of the parties set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Buyer and Seller amend the Agreement as follows:

1.    Section 1.01(c) of the Disclosure Schedules for the Agreement is hereby amended, restated and replaced in its entirety with the schedule set forth in Section 1.01(c) of the Disclosure Schedules attached hereto.

2.    Section 1.01 (d) of the Disclosure Schedules for the Agreement is hereby amended, restated and replaced in its entirety with the schedule set forth in Section 1.01(d) of the Disclosure Schedules attached hereto.

3.    Section 1.05 of the Agreement is hereby amended, restated and replaced in its entirety with the following:

**Section 1.05 Total Consideration.**    The aggregate consideration for the Purchased Assets shall be (a) One Million Eight Hundred Fifty Thousand Dollars

($1,850,000) in cash; (b) the amount of Two Hundred Dollars ($200.00) for each cart identified in Section 1.01(d) of the Disclosure Schedules, which shall be agreed to by Buyer and Seller at or prior to Closing up to Two Hundred Thousand Dollars ($200,000) (the sum of (a) inclusive with (b) being the "**Cash Purchase Price**" which shall be subject to adjustment pursuant to Section 1.09 below); plus (c) the assumption of the Assumed Liabilities (the "**Total Consideration**").

4.      Section 1.09 of the Agreement is hereby amended to include an additional sub-section "(d)" with the following:

(d)      <u>Palms Agreement Allocation</u>.

(i)      The Parties acknowledge and agree that (1) the Cash Purchase Price reflects in part the value associated with the Buyer's ability to service FP Holdings L.P. d/b/a The Palms Casino Resort ("**The Palms**") under that certain Laundry Services Agreement (Rental), between The Palms and Seller (the "**Palms Agreement**") following the Closing, (2) as of the date hereof, Seller has retained any and all claims against The Palms, including without limitation any such claims arising from or related to the Palms Agreement, as an Excluded Asset (collectively, the "**Palm Claims**"), and (3) as of the date hereof, the Seller is not servicing The Palms, and the Palms Agreement is not an Assumed Contract under the APA.

(ii)      The Parties hereby agree that (1) Two Hundred Twenty-five Thousand Dollars ($225,000.00) of the Cash Purchase Price (the "**Escrow Amount**") shall be paid to Seller to be held in escrow until it receives signed written instructions from the Buyer to release such funds as set forth below, and (2) following the Closing, Seller shall retain all of its rights to assert the Palm Claims against The Palms, except as set forth below.

(iii)      Seller shall retain and accrue any and all monetary and interest accrual on all sums due and owing to Seller under the Palms Agreement and shall in Seller's sole and absolute discretion initiate, maintain and prosecute, any and all claims against the Palms arising from or related to the Palms Claims.  Seller shall further have the sole and absolute right to compromise, settle, resolve and dismiss the Palms Claims upon terms, sums, conditions, reservations and agreements acceptable to Seller in its sole and absolute discretion.  Any and all sums paid in connection with the settlement of or a judgment from Palms Claims to Seller prior to the assignment of the Palm Claims as provided in Section 1.09(d)(iv) below, shall be retained by and for the sole and exclusive benefit of Seller.

(iv)      Following the Closing, the Buyer and/or one of its Affiliates shall seek to enter into a laundry servicing agreement with The Palms on terms satisfactory to Buyer in its sole discretion (the "**New Palms Agreement**").  In the event Buyer (or one of its Affiliates) enters into a New Palms Agreement within twelve (12) months following the Closing, Buyer shall promptly and within two (2) Business Days of such entry into a New Palms Agreement provide Seller with written notice thereof, whereupon (i) Seller shall retain the Escrow Amount, and (ii) the Palm Claims shall without any

further action automatically be deemed to be included in the Purchased Assets and acquired by Buyer (other than avoidance actions, which are Excluded Assets), and Seller shall take any reasonable action requested by Buyer to assign such Palm Claims to Buyer. In the event Buyer (or one of its affiliates) has not entered into a New Palms Agreement within twelve (12) months following the Closing, Buyer shall provide Seller with notice to such effect, whereupon Seller shall release the Escrow Amount to the Buyer.  The obligation, terms and provisions of this Section 1.09(d) shall survive Closing for a period of two (2) years.

     5.     Counterparts.  This First Amendment may be executed in any number of counterparts, each of which when executed and delivered shall be an original, but all such counterparts shall constitute one and the same agreement. Electronic, pdf and facsimile signatures shall have the same force and effect as original signatures.  Any signature page of this First Amendment may be detached from any counterpart without impairing the legal effect of any signatures thereon, and may be attached to another counterpart, identical in form thereto, but having attached to it one or more additional signature pages.

     6.     Full Force and Effect.  Except as expressly modified by this First Amendment, the Agreement remains unchanged and in full force and effect.

     **IN WITNESS WHEREOF**, the parties have executed this First Amendment as of the date first set forth above.

**Seller:**                                   **Buyer:**

**SUPERIOR LINEN, LLC,**             **LAS VEGAS LINEN LLC**, a Delaware
a Nevada limited liability company:    limited liability company:

 

                                       By: _____
By: _____  Name:
Name:   Robert E. Smith             Its:
Its:      Designated Responsible Person

**Amended and Restated Disclosure Schedules**

**SECTION 1.01(c) Customer Contracts:**

1.      Avi Resort and Casino, a Fort Mojave Indian Tribe Corporation, agreement dated June 19, 2015.
2.      B B + B, LLC, d/b/a Oscar's Beef Booze Broads*
3.      Bayshore Suites, LLC, Linen Services Agreement dated April 17, 2014.
4.      Cafe Latte*
5.      Golden Gate Casino, LLC, d/b/a Golden Gate Hotel & Casino Laundry Services Agreement dated August 3, 2016.
6.      THI of Nevada II at Desert Lane, LLC d/b/a Horizon Specialty Hospital of Henderson Laundry Services Agreement dated August 8, 2015.
7.      Ike Gaming, Inc., d/b/a El Cortez Hotel and Casino, agreement dated December 18, 2013, as amended.
8.      Jean Development Company, LLC, d/b/a Gold Strike Hotel and Gambling Hall Laundry Services Agreement dated August 1, 2015.
9.      LVGV, LLC, d/b/a M Resort Spa & Casino Laundry Services Agreement dated February 1, 2015.
10.     Marnell Gaming, LLC (f/b/o Colorado Belle Gaming, LLC and Edgewater Gaming, LLC) Laundry Services Agreement dated March 24, 2014.
11.     Vegas Hospital Care, LLC d/b/a Mountain's Edge Hospital, agreement dated March 26, 2015
12.     Nevada Property 1 LLC, dba The Cosmopolitan of Las Vegas, a Delaware limited liability company, Landry Services Agreement dated August 9, 2016.
13.     Pioneer Hotel and Gambling Hall, a Nevada corporation, agreement dated May 20, 2014.
14.     Plaza Hotel And Casino, LLC, d/b/a Plaza, a Nevada limited liability company, agreement dated August 13, 2011.
15.     Railroad Cleaners dba RRC Commercial, Inc., a California corporation, agreement dated April 25, 2016.
16.     R.B. Properties Inc., contracting as Bilbray Industries Inc., Linen Serives Agreement dated August 19, 2014.
17.     Riverside Resort and Casino, LLC, a Nevada limited liability company, agreement dated July 1, 2016.
18.     The Primmadonna Company, LLC, d/b/a Primm Valley Resort & Casino, Buffalo Bill's Resort & Casino, and Whiskey Pete's Hotel & Casino, a Nevada limited liability company, agreement dated February 2013, NO SPECIFIC DATE INCLUDED, as amended.
19.     The Service Companies, Inc.*
20.     Top Golf USA Las Vegas, LLC Rental Services Agreement dated March 21, 2016.

**All of the foregoing customer contracts constitute Designated Contracts under Section 1.09 of the Agreement.**

**    *Copy has not been provided to Buyer**

## Amended and Restated Disclosure Schedules

### SECTION 1.01(d) INVENTORY AND SUPPLIES:

| Inventory Description | Number of Items | Identifying Number: |
|---|---|---|
| **NEW AND USED LINEN** | See attached schedule on following page. | LOT |
| **CARTS** | 996 +/- carts including 50 confirmed carts located at the Cosmopolitan Hotel and within Buyer's Affiliate's possession and such other carts as identified by Seller and Buyer at Closing. | |

[Seller to add healthcare linen inventory]