Jeanette E. McPherson, Esq., NV Bar No. 5423
Schwartzer & McPherson Law Firm
2850 South Jones Blvd., Suite 1
Las Vegas, Nevada 89146-5308
Telephone:    (702) 228-7590
Facsimile:    (702) 892-0122
E-Mail:    bkfilings@s-mlaw.com

*Attorneys for Shelley D. Krohn, Trustee*

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>SUPERIOR LINEN, LLC,<br><br>                             Debtor | Case No. BK-S-16-15388-MKN<br>Chapter 7<br>**MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT WITH NEVADA PROPERTY 1, LLC DBA THE COSMOPOLITAN OF LAS VEGAS AND RD VII INVESTMENTS, LLC**<br><br>Date: July 10, 2019<br>Time: 9:30 a.m. |

Shelley D. Krohn, Trustee (the "Trustee"), by and through her counsel, Schwartzer & McPherson Law Firm, hereby files this Motion For Approval Of Settlement Agreement With Nevada Property 1, LLC dba The Cosmopolitan Of Las Vegas And RD VII Investments, LLC ("Motion"). This Motion is made and based upon Fed.R.Bankr. P. 9019, the Points And Authorities set forth herein, the Declaration of Shelley D. Krohn, Trustee ("Declaration"), the pleadings on file of which the Trustee respectfully requests that this Court take judicial notice, and any argument entertained at the hearing on this matter.

As set forth in the Motion, the Trustee seeks approval of the Settlement Agreement (the "Settlement Agreement") attached to the Declaration as **Exhibit "1."** The Settlement Agreement should be reviewed in its totality. In general, however, as set forth in the Settlement Agreement, subject to bankruptcy court approval, the Trustee has agreed to settle the claims in the Complaint as follows:

a)    payment to the estate by Nevada Property 1 dba The Cosmopolitan of Las Vegas

("Nevada Property 1" or the "Cosmopolitan") in the amount of $20,000.00 ("Settlement Amount"), with $10,000.00 of these funds being paid to RD VII Investments, LLC ("RD VII"), as lienholder;

    b)    allowance and amendment (through the Settlement Agreement) of Nevada Property 1's proof of claim in the general unsecured claim amount of $60,000.00, which amount includes the damage claims that Nevada Property 1 holds against the Debtor and its claim for payment of the Settlement Amount under 11 U.S.C. § 502(h); and

    c)    mutual releases of the claims in the complaint filed by the Trustee against Nevada Property 1, along with releases by RD VII.

## POINTS AND AUTHORITIES

### Facts

1. Superior Linen, LLC ("Superior Linen" or the "Debtor") filed for relief under Chapter 11 of the Bankruptcy Code on September 30, 2016 (the "Petition Date").

2. The Debtor's case was converted to one under Chapter 7 on August 21, 2017.

3. The Trustee, Shelley D. Krohn, is the duly appointed and acting Chapter 7 Trustee in the Debtor's bankruptcy case.

4. On September 30, 2018, the Trustee initiated this adversary proceeding against Nevada Property 1 by filing a Complaint For: (1) Breach Of Contract; (2) Breach Of Implied Covenant Of Good Faith And Fair Dealing; (3) Unjust Enrichment/Quantum Meruit; (4) 11 U.S.C. § 548(A)(1)(B); (5) 11 U.S.C. § 544 And NRS 112.180(1)(b); and (6) 11 U.S.C. § 550 ("Complaint").

5. As set forth in the Complaint, the Trustee claimed that Nevada Property 1 owed monies to the Debtor and had received transfers that are avoidable under 11 U.S.C. §§ 544, 548, and 550.

6. The Complaint alleges, in pertinent part, the following:

    a.    On or about August 9, 2016, Superior Linen entered into a Linen Services Agreement (the "Agreement"), with Nevada Property 1, LLC.

    b.    Under the Agreement, Nevada Property 1, which owns and operates a

casino resort on the Las Vegas Strip, engaged the Debtor as an independent contractor to provide laundry services on terms and conditions set forth therein.

  c. Under the Agreement, the Debtor was to consult with and provide to Nevada Property 1, laundry services (the "Services"). See **Exhibit 1** to the Complaint.

  d. Under the Agreement, the Debtor, among other things, covenanted to furnish its best skill and judgment in the performance of its duties and obligations, furnish efficient business administration and management, perform the Services in a proper and expeditious manner and in accordance with the Cosmopolitan's directives, and devote such time and manpower to the performance of the Services as may be reasonably required by the Cosmopolitan. See **Exhibit 1** to the Complaint, Agreement at para. 2.

  e. The Agreement provides that unless otherwise extended upon written agreement, the Agreement shall expire on the three year anniversary after August 9, 2016. See **Exhibit 1** to the Complaint, Agreement at para. 3(a).

  f. Under the Agreement, for and in consideration for providing the Services, the Cosmopolitan was required to pay the Debtor the fees set forth in its invoices as authorized by the Cosmopolitan. See **Exhibit 1** to the Complaint, Agreement at para. 3(b)(i).

  g. Under the Agreement, for and in consideration for entering into the Agreement, the Debtor agreed to pay Cosmopolitan a signing bonus in the form of a one-time payment of $150,000.00 (the "Signing Bonus"). See **Exhibit 1** to the Complaint, Agreement at para. 3(b)(ii).

  h. The Debtor paid, or was otherwise fully credited with, the Signing Bonus due under the Agreement.

  i. Under the Agreement, the Cosmopolitan was required to reimburse the Debtor for its costs, without mark-up, of its reasonable, direct, out-of-pocket expenses actually incurred during and in furtherance of the performance of the Services. See **Exhibit 1** to the Complaint, Agreement at para. 3(c).

  j. Under the Agreement, the Cosmopolitan could without cause terminate the Agreement by giving sixty days' written notice of termination to the Debtor, and in the event of

such termination, Cosmopolitan was to pay the Debtor for all the services it rendered and expenses it incurred up to and including the date of termination. See **Exhibit 1** to the Complaint, Agreement, para. 8.

  k. Under the Agreement, either the Debtor or the Cosmopolitan upon giving five days' prior written notice identifying specifically the basis for such notice, could terminate the Agreement for breach of a material term or condition of the Agreement, including, without limitation, any representation or warranty contained therein, provided the breaching party shall not have cured such breach within the five day period; and provided further, however, that no advance notice was required for a persistent failure of the Debtor to fulfill its obligations or in the event Debtor was unavailable for any reason to devote the time required to provide the Services. In the event of such termination, the Cosmopolitan was required to pay the Debtor for all Services rendered and expenses incurred by the Debtor up to an including the date of termination. See **Exhibit 1** to the Complaint, Agreement, para. 8.

  l. On December 19, 2017, Nevada Property 1 filed a proof of claim ("Proof of Claim"), which provides that it is asserting "[c]laims arising under or related to that certain Linen Services Agreement dated August 9, 2016, (including claims for breach of contract) listed on ECF 54 at page 50 and referred to with a reservation of rights in ECF 371, which was approved by this Court's order in ECF No. 373."

  m. Disputes arose between the Debtor and the Cosmopolitan under the Agreement.

  n. On February 27, 2017, the Cosmopolitan filed a Motion To Compel Rejection Or Assumption With Cure Of Executory Contract Or, In The Alternative, Motion To Terminate The Automatic Stay ("Compel Motion") [ECF 301], along with supporting declarations [ECF 302-304].

  o. In the Compel Motion, the Cosmopolitan alleged various grounds that it asserted entitled it to terminate the Agreement.

  p. The Debtor opposed the Compel Motion [ECF 354, 355, 361] and the Cosmopolitan filed a reply [ECF 364].

q. On March 16, 2017, the Debtor and the Cosmopolitan entered into a stipulation ("Stipulation") which resolved the Compel Motion; however, each party reserved "any and all of their respective rights, remedies, claims and defenses arising out of or related to the Agreement and this Stipulation." [ECF 371, p.2].

r. On March 17, 2017, an order approving the Stipulation was granted [ECF 373].

7. On November 16, 2018, Nevada Property 1 filed an answer and counterclaim for breach of contract.

8. On January 7, 2019, the Trustee filed a Motion To Dismiss Counterclaim ("Counterclaim Dismissal Motion"). [ECF 13]. As set forth in the Counterclaim Dismissal Motion, the Trustee sought dismissal of Nevada Property 1's counterclaim because the Trustee is not an "opposing" party as required pursuant to Fed.R.Bankr. P. 7013.

9. In addition, as established in the pleadings in Superior's estate case, RD VII has a lien on the Debtor's accounts [see ECF 401], or the monies recovered for the alleged breach of contract claims in the Complaint. However, RD VII does not have a lien on avoidable transfer actions under 11 U.S.C. §§ 544, 547, 548, 549, and 550, including a lien on the Trustee's claims in the Complaint under 11 U.S.C. §§ 544 and 548 ("Avoidable Transfer Claims").

10. The Trustee has reviewed and analyzed Nevada Property 1's defenses and their merit and the facts and circumstances arising around the claims in the Complaint. The Trustee has also considered RD VII's liens. Based upon this review, the Trustee has reached a settlement with Nevada Property 1, along with RD VII (the "Settlement Agreement"). As more fully set forth in the Settlement Agreement, subject to bankruptcy court approval, the Trustee has agreed to settle the claims in the Complaint as follows: a) payment to the estate in the amount of $20,000.00 (the "Settlement Amount"), with $10,000.00 being paid to RD VII, b) deeming Nevada Property 1's Proof of Claim amended and allowed as an amended general unsecured claim in the amount of Sixty Thousand Dollars ($60,000.00), which amount includes the damage claims that Nevada Property 1 holds against the Debtor and its claim for payment of the Settlement Amount under 11 U.S.C. § 502(h), and c) mutual releases of the claims in the Complaint, along with releases by RD

VII.

11. The Trustee believes, in her reasonable business judgment, that the Settlement Agreement should be approved as it is in the best interest of the bankruptcy estate and its creditors. The Settlement Agreement reflects consideration given to the Nevada Property 1's defenses to the claims in the Complaint and the costs of litigation associated with establishing the claims in the Complaint.

## Memorandum of Law

**A.   Standard for Approval of the Settlement**

Fed.R.Bankr. P. 9019(a) provides that, after notice and a hearing, a Court may approve a Trustee's proposed settlement of a claim. Whether a compromise should be accepted or rejected lies within the sound discretion of the Court. In re Carson, 82 B.R. 847 (Bankr. S.D. Ohio 1987); In re Ericson, 6 B.R. 1002 (D. Minn. 1980); Knowles v. Putterbaugh (In re Hallet), 33 B.R. 564 (Bankr. D. Me. 1983); In re Mobile Air Drilling Co., Inc., 53 B.R. 605 (Bankr. N.D. Ohio 1985); In re Hydronic Enterprise, Inc., 58 B.R. 363 (Bankr. D. R.I. 1986).

The Ninth Circuit in Martin v. Kane (In re A & C Properties), 784 F.2d 1377, 1381 (9th Cir. 1986), cert. denied, 479 U.S. 854 (1986) has stated:

> In determining the fairness, reasonableness and adequacy of a proposed settlement agreement, the court must consider: (a) the probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

Id. (quoting In re Flight Transportation Corp. Securities Litigation, 730 F.2d 1128, 1135 (8th Cir. 1984)(citations omitted), cert. denied, 105 S.Ct. 1169 (1985)).

Notably, a court should refrain from substituting its own judgment for the judgment of the party charged with operation and maintenance of the estate. In re Carla Leather, Inc., 44 B.R. at 465. As the Second Circuit has stated, in reviewing a proposed settlement a court should not "decide the numerous questions of law and fact . . . but rather canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." In re W.T. Grant & Co., 699 F.2d 599, 608 (2d Cir. 1983), cert. denied, 464 U.S. 822 (1983). A "mini-trial" on the

merits of the underlying cause of action is not required and should not be undertaken by the bankruptcy court. In re Blair, 538 F.2d 849 (9th Cir. 1976); In re Walsh Construction, Inc., 669 F.2d 1325 (9th Cir. 1982).

Weighing the foregoing factors as set forth below, the Trustee believes that the Settlement Agreement satisfies the A & C Properties factors and is in the best interest of the estate and creditors.

**B.    Application Of A&C Properties Factors**

**1.    Probability of Success**

The complaint sets forth claims for breach of contract, including claims that Nevada Property 1 did not pay the amounts due the Debtor under the Agreement, breach of the implied covenant of good faith and fair dealing, and unjust enrichment/quantum meruit. The Complaint also sets forth fraudulent transfer claims with regard to the Signing Bonus, which was not paid by the Debtor, but which Nevada Property 1 credited against accounts receivable it owed the Debtor.

Prior to the Trustee's filing the Complaint, there had been significant disputes by the parties involving these claims. The Debtor had struggled to perform and provide services under the Agreement. As a result, Nevada Property 1 sought to terminate the Agreement, and ultimately a stipulation to terminate the Agreement was approved by the Court with the parties reserving their rights and claims under the Agreement. The Debtor attempted to settle its disputes with Nevada Property 1, but a resolution was not reached. The Debtor sought to recover monies from Nevada Property 1 for accounts receivable in the approximate amount of $116,000, along with the return of the Signing Bonus (which was deducted by Nevada Property 1 from the receivables to be paid to the Debtor), and recoup monies it had paid for property to be able to perform under the Agreement, including costs arising from the purchase or rental of hampers, spa linen, napkins, black tops, and Z racks, all totaling in excess of $300,000.00.

Nevada Property 1 denied that it was responsible for these items, arguing that the Debtor's failure to perform under the Agreement caused it damages arising from among other things, ongoing substandard cleaning of its linens, linen shortages, inconsistent and untimely delivery, and inventory loss. Nevada Property 1 further argues that the Signing Bonus was not required to

be repaid, and that it was not responsible for reimbursing the Debtor for expenses the Debtor incurred for purchasing property that the Debtor needed to be able to perform under the Agreement.

After review of the provisions of the Agreement and filing the claims in the Complaint, the Trustee was fully informed of Nevada Property 1's defenses. In light of this information, the Trustee believes that the claims in the Complaint are weak and will be difficult and costly to establish.

First, the Debtor clearly had difficulty performing under the Agreement, and as a result, the Agreement was terminated. As a result of the inability to perform under the Agreement and provide sufficient and adequate linens for operations, Nevada Property 1 has substantial claims for direct and consequential damages. In addition, the Trustee recognizes that the claims and defenses are highly factual and subjective.

Second, recovery of expenses incurred by the Debtor for purchasing property to be able perform under the Agreement is highly uncertain. The provision in the Agreement pertaining to the reimbursement of expenses incurred by the Debtor does not necessarily include expenditures for equipment or goods needed, such as hampers or Z racks, to be able to provide the required services under the Agreement. Further, such expenditures do not otherwise appear to have been authorized for payment by Nevada Property 1.

Third, recovery of the Signing Bonus, which was not paid by the Debtor but was offset against monies owed by Nevada Property 1 to the Debtor, is unlikely. The Signing Bonus appears to be consideration given for awarding the Agreement to the Debtor, and this type of consideration is not unusual for the award of contracts by hotels in Las Vegas. In addition, the Agreement does not provide that the Signing Bonus may be returned, in full or in part, if the Agreement is short lived. Further, arguments of unjust enrichment will not be successful since a contract, the Agreement, was in place.

Further, as part of the Settlement Agreement, the Trustee has agreed to the allowance of a general unsecured claim in the amount of $60,000.00, which amount includes the damage claims that Nevada Property 1 holds against the Debtor and its claim for payment of the Settlement

Amount under 11 U.S.C. § 502(h). The Trustee believes this amount is fair and reasonable, and agreement on this claim avoids fees and expenses that might be incurred in liquidating Nevada Property 1's claim. Additionally, the Trustee has considered that it is probable that there will not be sufficient funds in this estate to make a distribution beyond Chapter 11 administrative claimants.

Lastly, with regard to the split of the settlement monies with RD VII, the Trustee submits that the proposed equal split is fair. That is, since the Trustee would not have likely been successful on her fraudulent transfer claims, the majority, if not all, of the settlement amount of $20,000 would be attributed to the breach of contract claims on which RD VII has a lien, but part of these monies should be paid to the estate for bringing these claims to the court for determination.

Based upon all of these considerations, the Trustee believes that the possibility of success on her claims is fair to poor.[1]

### 2. Difficulty of Collection

The Trustee believes that collection would not be difficult because Nevada Property 1 appears to have assets to pay a judgment that could be obtained by the Trustee. However, collection efforts would certainly require additional fees and costs to be incurred and could cause significant delay.

### 3. Complexity of Litigation and Expense, Inconvenience, and Delay

The anticipated litigation pertaining to the claims in the Complaint would likely not be complex but there would be delay due to the need to conduct extensive discovery. Further, there would be additional expense as a result of attorneys' fees and costs being incurred, and these fees and costs could be substantial due to the highly factual nature of the allegations.

### 4. Paramount Interest of Creditors

The Trustee has concluded that the proposed settlement in the amount of $20,000, with

---

[1] The Trustee notes that Las Vegas Linen, LLC, the purchaser of the Debtor's assets, had the option of purchasing the estate's claims (not including avoidable transfer actions) against Nevada Property 1 for $50,000.00, but it declined. See [ECF 535, para. 18].

$10,000 being paid to the estate and $10,000 being paid to RD VII as lienholder, is in the best interest of creditors. In her reasonable business judgment, the Trustee believes that the settlement is fair and reasonable. The Trustee has evaluated the claims under the Agreement and weighed the defenses that Nevada Property 1 has alleged and which appear to be valid, including regarding the quality and shortcomings of the work that was performed, or was to be performed, by the Debtor under the Agreement. In addition, the Trustee has considered the fees and costs that would likely be incurred in establishing the claims in the Complaint and evaluating the defenses, and believes that the estate would need to spend substantial fees and costs in pursuing these claims.

Further, the Trustee believes that the division of the settlement amount of $20,000.00 with RD VII is in the paramount interest of creditors. The Trustee attributes this settlement amount to the claims for which RD VII has a lien, yet she is recovering half of it.

## CONCLUSION

Based upon the foregoing, the Trustee requests that this Motion be granted and that the Settlement Agreement attached to the Declaration as **Exhibit "1"** be approved.

Dated this 24th day of May, 2019.

/s/ Jeanette E. McPherson
Jeanette E. McPherson, Esq.
Schwartzer & McPherson Law Firm
2850 S. Jones Blvd., Suite 1
Las Vegas, NV 89146
*Attorneys for Shelley D. Krohn, Chapter 7 Trustee*